**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Email:   ltfisher@bursor.com
         apersinger@bursor.com
         ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE CORTES, on Behalf of Himself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL CREDIT ADJUSTERS, L.L.C., <br><br> Defendant. | Case No.  2:16-cv-00823-MCE-EFB <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date:  October 20, 2016 <br> Time:  2:00 p.m. <br> Courtroom:  7 |

1

## I.    INTRODUCTION

2      Plaintiff Mike Cortes ("Plaintiff") seeks the certification of the proposed class in an

3 unusual, though certainly not unprecedented, procedural posture.  Defendant has failed to appear

4 and the Clerk of Court has entered default.  Dkt. 6.  Plaintiff concurrently seeks a default judgment

5 that awards Plaintiff and the putative Class statutory damages of $1,500 for every call made by

6 Defendant during the Class Period.  Defendant's failure to appear here is no accident, and, as

7 discussed in depth below, seems to be its modus operandi in civil litigation.  In 2016 alone,

8 Defendant has defaulted in at least nine cases filed in federal district courts around the country

9 alleging that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") and the

10 Telephone Consumer Protection Act ("TCPA").  *See* Krivoshey Decl. at ¶ 2, Ex. 1.  Congress and

11 the constitution give Plaintiff and absent class members their right to assert claims before this

12 Court.  A denial of class certification here would effectively eliminate any hope of recovery for

13 absent class members and embolden Defendant to continue shirking its obligations under the

14 Telephone Consumer Protection Act and this Court's rules and procedures.

15      The facts of this case are nearly identical to those before the court in *Whitaker v. Bennett*

16 *Law, PLLC*, 2014 WL 5454398 (S.D. Cal. Oct. 27, 2014).  In *Whitaker*, Judge Lorenz granted class

17 certification in a TCPA case where, like here, Defendant failed to appear and found that a "class

18 action is the most efficient vehicle to achieve an opportunity for classwide recovery while

19 minimizing the economic burden on [plaintiff's] putative class and promoting judicial economy."

20 *Whitaker*, 2014 WL 5454398 at *7.  Although a class in *Whitaker* was certified, the class may

21 ultimately receive no recovery because the defendant in that case either destroyed or lost all class

22 member records, including the identity of class members and the amount of calls at issue.  Here,

23 Plaintiff has narrowly tailored the class definition to specifically address ascertainability, the main

24 issue raised by Defendant's failure to appear.  As discussed *infra*, the proposed class is composed

25 solely of those persons who have received calls on their cellphones from Defendant and are current

26 or former subscribers of the PrivacyStar, Metro Block-It, Metro Name-ID, CallWatch, or Call

27

28

Detector cellphone applications (collectively, "Call Management Applications" or "CMAs").  By

obtaining CMA records, Plaintiff will be able to identity the number and identity of class members,

the number of calls at issue, and ensure that class members are only compensated for calls placed

within the four-year statute of limitations.[1]  *See* Rateliff Decl. at ¶¶ 4-6.  Thus, Plaintiff will be able

to prove statutory damages (set by the TCPA at $500.00 per call or $1500 per call for willful

violations) pursuant to Fed. R. Civ. P. 55(b)(2) even if Defendant were to destroy every relevant

document.

Plaintiff is concurrently seeking entry of default judgment on behalf of the proposed class.

Plaintiff proposes that the exact amount of damages will be inserted upon completion of post-

judgment discovery.

## II.  BACKGROUND

### A.    Background of the TCPA

On January 4, 2008, a Federal Communication Commission ("FCC") Declaratory Ruling

confirmed that autodialed and prerecorded voice messages to wireless numbers by a creditor (or on

behalf of a creditor) are only permitted if made with the "prior express consent" of the called party.

*FCC, In the Matter Of Rules And Regulations Implementing the Telephone Consumer Protection

Act of 1991: Request of ACA International For Clarification and Declaratory Ruling*, 07-232, ¶ 2

(2007) ("FCC RUL. 07-232").  The FCC clearly stated that "prior express consent is deemed to be

granted *only if* the wireless number was provided by the consumer to the creditor[.]"  *FCC RUL.

07-232*, ¶ 10.  These types of calls are prohibited because they are a greater nuisance and invasion

of privacy than live solicitation calls, and can be costly and inconvenient for the recipient. *FCC

RUL. 07-232*, ¶ 7.  Wireless customers are frequently charged for incoming calls whether they have

paid in advance or after the minutes are used.  *Id.*

Damages for violations of the TCPA are assessed on a per-call basis.  Each class member

may seek statutory damages from Defendant in amounts equal to $500 per negligent violation of

---

[1] Plaintiff served a subpoena to obtain such records from the CMAs on September 6, 2016.  Notice
of the subpoena was also served on Defendant on September 6, 2016.  *See* Krivoshey Decl. at ¶ 6.

the act, and $1,500 for each knowing or willful violation of the act.  47 U.S.C. § 227(c)(5).  Despite

the clear language of the statute, Defendant apparently chooses not to comply with the TCPA.

Plaintiff received at least 6 such calls, including calls using prerecorded messages, as alleged in his

complaint.[2]  Compl. ¶¶ 1, 13-16.  *See also* Ratecliff Decl. ¶ 4.  Plaintiff has a good faith basis to

believe that many other persons received identical phone calls in violation of the TCPA, as

discussed in more detail below.  Thus, all calls made by Defendant to Plaintiff and the putative

Class Members violated this Federal statute, and each putative Class Member is entitled to an

award of statutory damages.

**B.    Background Regarding Class Membership**

Plaintiff's proposed class definition is narrowly tailored to specifically address

ascertainability, the main issue raised by Defendant's failure to appear.  The proposed class is

composed solely of those persons who have received calls on their cellphones from Defendant and

are current or former subscribers of the PrivacyStar, Metro Block-It, Metro Name-ID, CallWatch,

or Call Detector cellphone applications.  Each of these Call Management Applications is

downloadable on each class member's cellular telephone.  *See gen*. Ratecliff Decl. ¶¶ 2-3.  The

CMAs have a few basic, overlapping functions. Id. at ¶ 3.  First, each CMA has the ability to alert

the user of when an incoming call is coming from a known telemarketer or debt collector.  *Id*.

Further, each CMA allows the user to file a complaint with the Federal Trade Commission ("FTC")

directly through the application concerning abusive debt collectors and telemarketers.  *See id*.

Critically, the CMAs also automatically record the time, duration, and date of each incoming call to

a user's cellular telephone from known or suspected debt collectors and telemarketers.  *Id*.  For

instance, Plaintiff is a Metro Block-It (one of the CMAs) subscriber and the Metro Block-It app has

a record of 6 incoming calls from Defendant's telephone number to Plaintiff's cellphone within the

proposed class period.  *Id*. at ¶ 4.  Metro Block-It identifies the telephone number used to call

---

[2] Although Plaintiff's Complaint alleges that he received 25 such calls, the records of Metro Block-It, discussed in more detail below, only show 6 calls *within the class period*.  To be conservative, only the six calls within the class period (as well as the calls of other Class members) are at issue here.

Plaintiff's cellphone, the date, duration, and time of each call, and identifies "National Credit Adjusters" as the entity making the call. *Id.* A record of the number of calls, the identity of the caller, and the date, time, and duration of each call could similarly be complied for each class member should the Court certify this action. *See id*. at ¶ 5.

The precise number of class members and damages (based on the amount of calls) is not known at this time because the proposed class definition includes class members that receive calls up until the date that the Court enters default judgment. However, Plaintiff will be able to identify and provide notice to each Class member and the amount of damages through the records of each CMA. From the period of April 20, 2012 to April 20, 2016, the four years prior to Plaintiff's filing of the complaint in this action, a review of the CMAs' records shows that 1,176 individual class members received one or more calls on their cellular phone from Defendant. *See id*. at ¶ 6. For this same time period, these 1,176 individuals received an average 4.49 calls to their cellphones from Defendant. *Id.* Thus, damages in this case would be roughly $6,735 per class member, at the $1500 TCPA statutory damages set point for willful violations of the TCPA.

## C.   Background of Defendant

On its website, Defendant describes itself as a debt collector "specializ[ing] in delinquent account receivables for a variety of industries including retail and financial services."[3] While Defendant advertises itself as "bring[ing] integrity and the highest standards of compliance to debt service,"[4] it does nothing of the sort. In November of 2015, New York City Mayor Bill de Blasio and the New York Department of Consumer Affairs announced landmark settlement and fines levied against Defendant National Credit Adjusters, one of the "most egregious offenders" for collecting "illegal payday loans" within the city, for violating a host of consumer protection laws related to debt collection.[5] 4,600 persons were eligible for refunds from Defendant in New York

---

[3] http://www.ncaks.com/
[4] *Id*.
[5] http://www1.nyc.gov/office-of-the-mayor/news/785-15/city-secures-2-3-million-fines-restitution-nearly-two-dozen-debt-collection-agencies

City alone under the settlement,[6] and Defendant was forced to pay $962,800 in restitution and an additional $345,000 in fines.[7]  Defendant was also banned from collecting debts in New York City for at least six years.[8]  Similarly, in 2013, in a suit filed by the Arkansas Attorney General, Defendant was forced to "end its efforts to collect more than $2.7 million on 5,810 loans" and additionally pay the state of Arkansas $200,000.[9]  The Arkansas suit likewise arose out of Defendant's unlawful debt collection practices.[10]  National Credit Adjusters has also been named as a defendant in a case by the Pennsylvania Attorney General, again for attempting to collect on "debts derived from illegal loans."[11]  Further, a very basic internet search of entering Defendant's name into the google search engine shows that there are a panoply of websites dedicated to consumer complaints, much like Plaintiff's in this case, regarding receiving harassing debt collection calls from Defendant.

While Defendant has not been able to escape the cross-hairs of government enforcement actions regarding its illegal debt collection practices, it has implemented a brazen strategy of simply ignoring civil litigation, including suits for the violation of the TCPA and the FDCPA, by failing to appear and defaulting.  Defendant's failure to respond to this action is no accident.  It is by design.  For instance, in 2016 alone, Defendant has defaulted in at least nine cases filed in federal district courts around the country alleging that Defendant violated the FDCPA and the TCPA.  *See* Krivoshey Decl., Ex. 1.  During this same time period, Defendant has continued pursuing claims in bankruptcy against alleged debtors.  *See id*., Ex. 2.

Defendant has been properly served and is on notice of this lawsuit, as discussed in depth in Plaintiff's Request for Entry of Default.  ECF No. 5.  Indeed, service of the Complaint and

---

[6] *Id*.
[7] http://www.insidearm.com/daily/collection-laws-regulations/collection-laws-and-regulations/new-york-city-announces-1-3-million-settlement-with-debt-collection-agency/
[8] *Id*.
[9] http://www.insidearm.com/daily/debt-buying-topics/debt-buying/state-ag-settles-with-debt-collector-of-payday-loans/
[10] *Id*.
[11] http://www.insidearm.com/daily/collection-laws-regulations/collection-laws-and-regulations/state-ag-launches-enforcement-action-against-payday-lender-and-affiliated-debt-collectors/

Summons in this action was effected by personal delivery to Defendant's Associate Legal Counsel, Nicholas Moore, at the address listed for Defendant's Registered Agent both on the California Secretary of State and the Kansas Secretary of State websites. *See id.* Mr. Moore even apparently files affidavits signed under penalty of perjury affirming that he is Defendant's Associate Legal Counsel in the select few cases where Defendant has chosen to appear. *See* Krivoshey Decl., Ex. 3. Further, a notice of subpoena to First Orion Corp., the parent company of the CMAs, was served on Defendant pursuant to Fed. R. Civ. P. 45 on September 6, 2016. Krivoshey Decl. at ¶ 6. Plaintiff has not heard from Defendant since, or at any point prior to, service of the subpoena. *Id.* There is no question that Defendant, and its counsel, have notice of this lawsuit and are intentionally choosing not to appear. Defendant's litigation "strategy" cannot be rewarded – it must face the consequences of its actions.

### III.  ARGUMENT

"A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met and that at least one of the requirements of Rule 23(b) have been met." *Melgar v. Zicam LLC*, 2016 WL 1267870, at *2 (E.D. Cal. Mar. 31, 2016). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Id.* "While the trial court has broad discretion to certify a class, its discretion must be exercised within the framework of Rule 23." *Id.*

"The dual purpose of Rule 23 is: (1) to promote judicial economy through the resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights." *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *3 (S.D. Cal. Oct. 27, 2014). "These interests are in close alignment with actions brought under the TCPA." *Id.* "Consistent with the facts in the present case, TCPA violations may easily result in many potential claims, while the amount recoverable by each individual plaintiff may be relatively small." *Id.* "Accordingly, there

1    are many examples of recent cases which have certified class actions brought under the TCPA."

2    *Id.* (citing *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W. 3d 577, 584 n. 5 (Mo. Ct. App.

3    2010) ("as of 2010, over fifty courts had certified TCPA class actions as appropriate under Rule

4    23") and *Myer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036 (9th Cir. 2012)).

5         "[E]ntry of default does not alter the Court's analysis for class certification." *Id.*

6    "Certification under Rule 23 remains a necessary procedural requirement in order for the class to

7    recover damages." *Id.* Where, as here, the Court has not yet entered default judgment against the

8    Defendant, "the Court may consider the pending motion for class certification." *Id.*

9         **A.**     **Plaintiff Fulfills the Requirements of Rule 23(a)**

10           **1.**     <u>**Numerosity**</u>

11         "The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that

12    joinder of all members is impracticable." *Melgar*, 2016 WL 1267870 at *3 (quotations omitted).

13    "The geographical disbursement of class members outside of one district increases the

14    impracticability of joinder, and when the class is large, numbers alone are dispositive." *Id.*

15    (quotations omitted). "At the same time, courts have been inclined to certify classes of fairly

16    modest size." *Id.* (citing *Jordan v. Los Angeles Cty.*, 669 F.2d 1311, 1319 (9th Cir. 1982) ("willing

17    to find numerosity for classes with thirty-nine, sixty-four, and seventy-one people"), *vacated on*

18    *other grounds*, 459 U.S. 810 (1982)).

19         Here, it cannot be disputed that the proposed Class is "so numerous that joinder of all

20    members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). As an initial matter, class members are

21    spread out throughout the entire country. Further, there are at least 1,176 class members, far more

22    than enough to meet the numerosity requirement. *See* Rateliff Decl. at ¶ 6; Newberg on Class

23    Actions, *No Strict Numerosity Threshold* § 3:12 (5th ed. 2011) ("As a general guideline, however,

24    ... a class of 40 or more members raises a presumption of impracticability of joinder based on

25    numbers alone.").

26

27

28   

2.    **Commonality**

"Under Rule 23(a)(2), commonality is established if there are questions of law or fact common to the class." *Melgar*, 2016 WL 1267870, at *3 (quotations omitted). "This requirement is construed permissively and can be satisfied upon a finding of 'shared legal issues with divergent factual predicates.'" *Id*. (quoting *Hanlon v. Chrysler Corp*., 150 F. 3d 1011, 1019 (9th Cir. 1998).

Judge Lorenz's analysis of the commonality prong in *Whitaker*, where the court certified a class after the defendant failed to respond, is equally applicable to the instant matter:

> The TCPA provides a cause of action for cellular telephone owners who receive unsolicited, automated phone calls, resulting in unwanted charges to their accounts. *See* Restrictions on Use of Tel. Equip., 47 U.S.C. § 227(b)(1).  The relevant inquiries for the purposes of this case are (1) whether or not [Defendant] used an ATDS or prerecorded or artificial voice message; (2) whether or not [Defendant] had prior express consent; (3) whether or not the calls were made for emergency purposes; and (4) whether or not [Defendant's] conduct was willful or negligent.  **The core issue to be resolved is whether or not [Defendant] used an ATDS or prerecorded or artificial voice message to make unsolicited calls.  This issue is common to all putative class members, and its resolution is central to the validity of each of their claims.**  The individualized issues of consent, emergency purposes, and intent as to each specific class member, are not sufficient to destroy commonality.  *See Myer*, 707 F. 3d at 1042 (the Ninth Circuit, in a similar TCPA class action, pointed to defendant's failure to prove the existence of any consenting debtors when refusing defendant's argument that the class was overbroad because it may include debtors who provided express consent).  **Generally, and especially so in consideration of [Defendant's] failure to respond in this matter, the information required to prove the subsequent individualized issues of consent, emergency purposes, and intent, are exclusively in the hands of the defendant.  It follows that [Defendant] must prove the existence of these abrogating factors, and the lack of [Plaintiff's] knowledge thereof should not be used to refuse class certification.**

*Whitaker*, 2014 WL 5454398, at *5 (citations omitted) (emphasis added).

3.    **Typicality**

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  The typicality requirement is "permissive" and requires only that the representative's claims are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.  "The claims of the named plaintiffs need not be identical to the claims of the class; they need only arise from

the same remedial and legal theories." *Arnold v. United Artists Theater Circuit, Inc*., 158 F.R.D. 439, 449 (N.D. Cal. 1994).

Here, there is no issue with regards to typicality, "as each class member's claim revolves exclusively around [Defendant's] conduct as it specifically relates to the alleged violations of the TCPA." *Whitaker*, 2014 WL 5454398, at *5. Here, like members of the proposed Class, Plaintiff is a Metro Block-It user who specifically sought to keep track of and prevent robo-callers like Defendant from calling his cellular phone. Plaintiff received at least 6 calls on his cellular telephone from Defendant, each of which was dialed using ATDS technology or an automated voice. *See* Rateliff Decl. at ¶ 4; Compl. ¶¶ 1, 13-16. "Prior to the calls at issue in this action, Plaintiff never had any contact with Defendant" and has "never consented in writing, or otherwise, to receive autodialed or prerecorded telephone calls from Defendant." Compl. ¶ 13. As all other members of the Class, Plaintiff's claim revolves around Defendant's violations of the TCPA. Rule 23(a)(3) is accordingly satisfied.

### 4. **Adequacy**

#### a. *Plaintiff Is an Adequate Class Representative*

The "due process touchstone of adequacy and fairness of representation must be judged in light of … the alternatives to class representation available." *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Rule 23 "requires adequate representation. The alternative may be none at all." *Id.* at n.26. Here, Plaintiff is an adequate representative because he is a member of the Class he seeks to represent, he shares the same claims and interests in obtaining relief as all other Class members, and he has no conflicts of interest with other Class members. *See, e.g.*, *Brown v. Brewer*, 2009 WL 1574556, at *4-*5 (C.D. Cal. May 29, 2009).

Plaintiff intends to, and to date has, fairly and adequately represent the interests of the Class. Plaintiff's individual and class claims arise from Defendant's same misconduct of violating the TCPA. Plaintiff also seeks remedies equally applicable to the Class. Plaintiff has no conflict of interest with the proposed Class and has demonstrated his adequacy through his participation

1    thus far in the litigation.  Further, given the expense and complexity of this litigation, the

2    alternative to representation by Plaintiff is no representation at all.  Plaintiff is clearly an adequate

3    representative.

4              b.        *Bursor & Fisher, P.A. Will Adequately Represent the*
                         *Class*
5
        Rule 23(g) requires that a district court appoint class counsel for any class that is certified.
6
*See* Fed. R. Civ. P. 23(g)(1)(A).  In appointing class counsel, Rule 23(g) lists four factors for
7
consideration: (1) the work counsel has done in identifying or investigating potential claims in the
8
action; (2) counsel's experience in handling class actions or other complex litigation and the type
9
of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that
10
counsel will commit to representing the class. Fed. R. Civ. P. 23(g).  In evaluating the adequacy of
11
counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and
12
resources.  The court may also look at the attorneys' demonstrated performance in the suit itself."
13
*In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002).  Plaintiff is represented in this case by
14
Bursor & Fisher, P.A., a prominent law firm with extensive experience in complex and class action
15
litigation.  *See* Krivoshey Decl. Ex. 4.  Bursor & Fisher has no conflicts of interest and intends to
16
continue to vigorously prosecute this action on behalf of Plaintiff and the Class.  These facts
17
demonstrate that Bursor & Fisher is adequate.  *See e.g., Melgar v. Zicam*, 2014 WL 5486676 (E.D.
18
Cal. Oct. 29, 2014).
19
        **B.        Plaintiff Fulfills the Requirements of Rule 23(b)(3)**
20
              **1.        Predominance**
21
        The "predominance inquiry tests whether proposed classes are sufficiently cohesive to
22
warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623
23
(1997).  "Rule 23(b)(3)'s predominance and superiority requirements were added to cover cases in
24
which a class action would achieve economies of time, effort, and expense, and promote …
25
uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or
26
bringing about other undesirable results."  *Vinole v. Countrywide Home Loans, Inc.*, 571 F. 3d 935,
27

28

944 (9th Cir. 2009) (quotations and citations omitted). "Accordingly, a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." *Id*. (quotations and citations omitted).

Here, as in *Whitaker*, the "claims brought by [Plaintiff's] putative [C]lass are unified under one narrow statute with explicit confines defining both liability and available damages." *Whitaker*, 2014 WL 5454398, at *6. "The central issue of [Defendant's] liability is whether or not they placed unsolicited, automated calls to the putative class member's cellular telephones, which predominates over the subsequent issues of intent and the existence or nonexistence of prior express consent with each individual call." *Id*. (citing U.S.C. § 227(b)(1). "Federal courts have recognized that individual issues will likely be present during class actions, but that such issues should not prevent class certification so long as they do not override the common question." *Id*. (citing cases). "The common question of [Defendant's] general liability dominates over individual questions which may exclude certain class members." *Id*.

At the class certification stage, the plaintiff must also establish that "damages … [can] feasibly and efficiently be calculated once the common liability issues are adjudicated." *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013). Further, damage calculations for individual class members do not defeat certification. *Leyva*, 716 F.3d at 514-15 (interpreting *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1435 (2013)); *Lindell v. Synthes USA*, 2014 WL 841738, at *13-*14 (E.D. Cal. Mar. 4, 2014). Here, damages determinations pose little, if any, complications because damages are defined by statute: $500 for each unlawful call, or $1500 for each willful call. *See* 47 U.S.C. § 227(b)(3)(C). Class members will be able to determine and prove the amount of damages by simply relying on the CMA It call logs, which specify the number, date, and time of each call from Defendant to each class member's cellphone. *See* Rateliff Decl. at ¶¶ 4-6. Accordingly, the Rule 23(b)(3) predominance requirement is satisfied.

2.     **Superiority**

Absent a class action, most class members in this case will not recover at all.  *See, e.g.,*
*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If
plaintiffs cannot proceed as a class, some – perhaps most – will be unable to proceed as individuals
because of the disparity between their litigation costs and what they hope to recover.").  As
explained by the Ninth Circuit:

> [The superiority] [d]etermination necessarily involves a comparative evaluation of the
> alternative mechanisms of dispute resolution.  In this instance, the alternative methods of
> resolution are individual claims for a small amount of consequential damages ….. litigation
> costs would dwarf potential recovery.  In this sense, the proposed class action is
> paradigmatic. A fair examination of alternatives can only result in the apodictic conclusion
> that class action is the clearly preferred procedure in this case.

*Hanlon*, 150 F.3d at 1023.  Further, "[c]lass action certifications to enforce compliance with
consumer protection laws are desirable and should be encouraged." *Ballard v. Equifax Check*
*Servs., Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) (quotations omitted).

The superiority prong is satisfied for the same reasons examined by Judge Lorenz in
*Whitaker*:

> A class action is the most efficient vehicle to achieve an opportunity for classwide recovery
> while minimizing the economic burden on [Plaintiff's] putative class and promoting
> judicial economy.  [Plaintiff's] TCPA claims present no unique difficulties that would make
> a class action any less desirable than other forms of adjudication.  Many courts have
> managed similar TCPA class actions, and the nature of a TCPA violation lends itself to
> classwide adjudication.  Additionally, in light of the facts that the TCPA does not provide
> for fee shifting and the statutory damages are limited to $500 or $1,500 per call, requiring
> the putative class members to adjudicate their claims independently would be too
> economically burdensome and would deprive many of a chance to recover under the law.
> *See generally* U.S.C. § 227.  Accordingly, [Plaintiff] has satisfied the Rule 23(b)(3)
> superiority requirement.

*Whitaker*, 2014 WL 5454398, at *7.

C.     **Ascertainability**

In the Ninth Circuit, "'[t]he requirement of an ascertainable class is met as long as the class
can be defined through objective criteria.'" *Forcellati v. Hyland's Inc*., 2014 WL 1410264, at *5
(C.D. Cal. Apr. 9, 2014) (quoting *Guido v. L'Oreal, USA, Inc*., 2013 WL 3353857, at *18 (C.D.
Cal. July 1, 2013)).  "A class definition is sufficient if the description of the class is definite enough
so that it is administratively feasible for the court to ascertain whether an individual is a member."

1

*Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011) (quotations omitted).  "It

2

is not fatal for a class definition to require some inquiry into individual records, as long as the

3

inquiry is not so daunting as to make the class definition insufficient."  *Id*.

4

Here, the Court and class members will easily be able to ascertain class membership.  The

5

identity of each class member can easily be ascertained through the records of the CMAs.  *See*

6

Rateliff Decl. at ¶¶ 4-6.  "Because the objective class definition[] allow[s] prospective plaintiffs to

7

determine whether they are class member with a potential right to recover, the class is

8

ascertainable."  *Melgar*, 2016 WL 1267870, at *6.

9

**D.     The Effect of Default and Default Judgment in This Matter**

10

Plaintiff seeks to certify the Class at this time in order to have the judgment entered on

11

behalf of the certified Class.  Class certification should be approved for the reasons submitted in

12

this motion and then the issue of default judgment should be addressed, in that order.  Unless the

13

Class is certified when the judgment is entered, it will effectively be a judgment only on behalf of

14

Plaintiff.  *See Whitaker*, 2014 WL 5454398, at *3 (holding that "the Court may consider the

15

pending motion for class certification" where "the Court has not yet entered default judgment").

16

Defendant should not be rewarded for its blatant tactics of avoiding adjudication on the merits of

17

Plaintiff's claims simply by ignoring the lawsuit (and the numerous similar lawsuits where

18

Defendant has failed to respond).  Plaintiff requests that if for any reason the Court is not inclined

19

to certify the Class at this time, that the Court permit Plaintiff to cure any deficiencies the Court

20

may find in his Class certification request and resubmit his motion before entry of default

21

judgment.

22

**IV.  CONCLUSION**

23

For the reasons set forth above, Plaintiff requests that the Court certify the Class defined

24

herein, appoint Plaintiff as Class Representative, and Bursor & Fisher as Class Counsel.

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF          13
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:16-CV-00823-MCE-EFB

Dated:  September 7, 2016

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____*/s/ Yeremey Krivoshey*_____
        Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            apersinger@bursor.com
            ykrivoshey@bursor.com


**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION
CASE NO. 2:16-CV-00823-MCE-EFB

14