**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email:   ltfisher@bursor.com
         apersinger@bursor.com
         ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE CORTES, on Behalf of Himself and all Others Similarly Situated,<br><br>                        Plaintiff,<br>     v.<br><br>NATIONAL CREDIT ADJUSTERS, L.L.C.,<br><br>                        Defendant. | Case No.  2:16-cv-00823-MCE-EFB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**<br><br>Date: October 20, 2016<br>Time:  2:00 p.m.<br>Courtroom:  7 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 2:16-CV-00823-MCE-EFB

## I. INTRODUCTION

Plaintiff Mike Cortes ("Plaintiff") seeks default judgment that awards Plaintiff and the putative Class statutory damages of $1,500 for every call made by National Credit Adjusters, L.L.C. ("Defendant") during the Class Period to each Class Member. Because of the default, there has been no discovery taken to date, so the total dollar amount is still to be obtained from subsequent post-judgment discovery.

Plaintiff filed this class action against Defendant alleging repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").[1] *See* Compl. at ¶¶ 13-16, 32-41 (ECF No. 1). Plaintiff alleges that Defendant called his cellular telephone without his prior consent, and even after Plaintiff requested that Defendant stop calling him, in violation of the TCPA. Plaintiff alleges that some of these calls consisted of dead air and prerecorded messages. *Id*. at ¶¶ 13-14. Research into Defendant's business practices revealed that Defendant's TCPA violations against Plaintiff were not an isolated incident and made this lawsuit suitable for class treatment.

The facts of this case are nearly identical to those before the court in *Whitaker v. Bennett Law, PLLC*, Case No. 13-cv-3145-L (NLS) (S.D. Cal. Jan. 26, 2016) (Dkt. 14) ("Whitaker II"), where, like here, the defendant failed to appear and the plaintiff sought class certification of a TCPA class, the entry of default judgment as to liability, and holding the entry for default judgment as to damages in abeyance until post-judgment discovery. As discussed at length in Plaintiff's concurrent motion for class certification, Judge Lorenz granted class certification in that case. *See gen. Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398 (S.D. Cal. 2014) ("Whitaker I") (granting class certification). After granting class certification, Judge Lorenz granted default judgment and request of damages at $500 per call, established liability for the TCPA violations, and granted six months of post-judgment discovery, including third party discovery, to determine the appropriate amount of damages to be awarded against the defendant. *See* Whitaker II, at 8.

---

[1] The Complaint also alleges violations of the Fair Debt Collection Practices Act ("FDCPA"). *See* Compl. at ¶¶ 42-48. As described in Plaintiff's motion for class certification, and herein, Plaintiff is only seeking default judgment regarding claims based on the TCPA and seeks certification of a narrow class based on the TCPA.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES         1
CASE NO. 2:16-CV-00823-MCE-EFB

1   Defendant's failure to appear here is no accident, and, as discussed in depth below, seems
2   to be its modus operandi in civil litigation. In 2016 alone, Defendant has defaulted in at least nine
3   cases filed in federal district courts around the country alleging that Defendant violated the Fair
4   Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA").
5   *See* Krivoshey[2] Decl. at ¶ 2, Ex. 1. Defendant's violations of the TCPA, like its failure to appear in
6   this case and the many similarly unanswered cases around the country, is willful. Congress and the
7   constitution give Plaintiff and absent class members their right to assert claims before this Court.
8   A denial of default judgment here would effectively eliminate any hope of recovery for absent
9   class members and embolden Defendant to continue shirking its obligations under the Telephone
10  Consumer Protection Act and this Court's rules and procedures. Plaintiff obtained Defendant's
11  default, and now has no other alternative but to seek a default judgment.

12  When damages are a known amount, as in a breach of contract action, it is simple to
13  compute such damages and present the evidence thereof to the Court. But here those damages
14  cannot be known presently because of Defendant's failure to appear and because the proposed
15  Class definition includes Class members that receive calls up until the date that the Court enters
16  default judgment. To resolve this issue, like the plaintiff in *Whitaker II*, Plaintiff proposes
17  deferring the exact dollar damages calculation, as is permitted under Rule 55(b)(2), until it can be
18  ascertained and presented to this Court. Plaintiff believes this can be easily accomplished by
19  conducting post-judgment discovery to learn the number of Class members and calls made, as
20  discussed in detail below. Once those damages are been determined, the dollar amount can
21  supplement the default judgment.

## II.  BACKGROUND

### A.  Background of the TCPA

On January 4, 2008, a Federal Communication Commission ("FCC") Declaratory Ruling
confirmed that autodialed and prerecorded voice messages to wireless numbers by a creditor (or on
behalf of a creditor) are only permitted if made with the "prior express consent" of the called party.

---

[2] The Krivoshey Declaration is filed in support of the concurrently filed Plaintiff's motion for class certification.

*FCC, In the Matter Of Rules And Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International For Clarification and Declaratory Ruling*, 07-232, ¶ 2 (2007) ("FCC RUL. 07-232"). The FCC clearly stated that "prior express consent is deemed to be granted *only if* the wireless number was provided by the consumer to the creditor[.]" *FCC RUL. 07-232*, ¶ 10. These types of calls are prohibited because they are a greater nuisance and invasion of privacy than live solicitation calls, and can be costly and inconvenient for the recipient. *FCC RUL. 07-232*, ¶ 7. Wireless customers are frequently charged for incoming calls whether they have paid in advance or after the minutes are used. *Id.*

Damages for violations of the TCPA are assessed on a per-call basis. Each class member may seek statutory damages from Defendant in amounts equal to $500 per negligent violation of the act, and $1,500 for each knowing or willful violation of the act. 47 U.S.C. § 227(c)(5). Despite the clear language of the statute, Defendant apparently chooses not to comply with the TCPA. Plaintiff received at least 6 such calls, including calls using prerecorded messages, as alleged in his complaint. Compl. ¶¶ 1, 13-16. *See also* Rateliff Decl.[3] ¶ 4.[4] Plaintiff has a good faith basis to believe that many other persons received identical phone calls in violation of the TCPA, as discussed in more detail below. Thus, all calls made by Defendant to Plaintiff and the putative Class Members violated this Federal statute, and each putative Class Member is entitled to an award of statutory damages.

**B.   Background Regarding Class Membership and Damages**

As discussed in Plaintiff's Motion for Class Certification, Plaintiff's proposed class definition is narrowly tailored to specifically address ascertainability and questions regarding the amount of damages, the main issue raised by Defendant's failure to appear. The proposed class is composed solely of those persons who have received calls on their cellphones from Defendant and are current or former subscribers of the PrivacyStar, Metro Block-It, Metro Name-ID, CallWatch,

---

[3] The Rateliff Declaration is filed in support of the concurrently filed Plaintiff's motion for class certification.
[4] Although Plaintiff's Complaint alleges that he received 25 such calls, the records of Metro Block-It, a call management application discussed in detail below, only shows 6 calls *within the class period*. To be conservative, only these six calls (as well as the calls of other Class members) are at issue here.

or Call Detector cellphone applications (collectively, "Call Management Applications" or "CMAs"). Each of these Call Management Applications is downloadable on each class member's cellular telephone. *See gen*. Rateliff Decl. ¶¶ 3-6. The CMAs have a few basic, overlapping functions. *Id*. First, each CMA has the ability to alert the user of when an incoming call is coming from a known telemarketer or debt collector. *Id*. Further, each CMA allows the user to file a complaint with the Federal Trade Commission ("FTC") directly through the application concerning abusive debt collectors and telemarketers. *See id*. Critically, the CMAs also automatically record the time, duration, and date of each incoming call to a user's cellular telephone from known or suspected debt collectors and telemarketers. *Id*. For instance, Plaintiff is a Metro Block-It subscriber (one of the CMAs) and the Metro Block-It app has a record of 6 incoming calls from Defendant's telephone number to Plaintiff's cellphone within the proposed class period. *Id*. at ¶ 4. Metro Block-It identifies the telephone number used to call Plaintiff's cellphone, the date, duration, and time of each call, and identifies "National Credit Adjusters" as the entity making the call. *Id*. A record of the number of calls, the identity of the caller, and the date, time, and duration of each call could similarly be complied for each class member should the Court certify this action. *See id*. at ¶ 5.

The precise number of class members and damages (based on the amount of calls) is not known at this time because the proposed class definition includes class members that receive calls up until the date that the Court enters default judgment. However, Plaintiff will be able to calculate the amount of damages through the records of each CMA. *See id*. at ¶ 5.[5] From the period of April 20, 2012 to April 20, 2016, the four years prior to Plaintiff's filing of the complaint in this action, a review of the CMAs' records shows that 1,176 individual class members received one or more calls on their cellular phone from Defendant. *See id*. at ¶ 6. For this same time period, these 1,176 individuals received an average 4.49 calls to their cellphones from Defendant. *Id*. Thus, damages

---

[5] Plaintiff served a subpoena to obtain such records from the CMAs on September 6, 2016. Notice of the subpoena was also served on Defendant on September 6, 2016. *See* Krivoshey Decl. at ¶ 6.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES                                    4
CASE NO. 2:16-CV-00823-MCE-EFB

in this case would be roughly $6,735 per class member, at the $1,500 TCPA statutory damages set point for willful violations of the TCPA.[6]

### C. Background of Defendant

On its website, Defendant describes itself as a debt collector "specializ[ing] in delinquent account receivables for a variety of industries including retail and financial services."[7] While Defendant advertises itself as "bring[ing] integrity and the highest standards of compliance to debt service,"[8] it does nothing of the sort. In November of 2015, New York City Mayor Bill de Blasio and the New York Department of Consumer Affairs announced landmark settlement and fines levied against Defendant National Credit Adjusters, one of the "most egregious offenders" for collecting "illegal payday loans" within the city, for violating a host of consumer protection laws related to debt collection.[9] 4,600 persons were eligible for refunds from Defendant in New York City alone under the settlement,[10] and Defendant was forced to pay $962,800 in restitution and an additional $345,000 in fines.[11] Defendant was also banned from collecting debts in New York City for at least six years.[12] Similarly, in 2013, in a suit filed by the Arkansas Attorney General, Defendant was forced to "end its efforts to collect more than $2.7 million on 5,810 loans" and additionally pay the state of Arkansas $200,000.[13] The Arkansas suit likewise arose out of Defendant's unlawful debt collection practices.[14] National Credit Adjusters has also been named as a defendant in a case by the Pennsylvania Attorney General, again for attempting to collect on

---

[6] The TCPA sets statutory damages at a *floor* of $500 per unlawful call. 47 U.S.C. § 227(c)(5)(B). The Court has discretion to award "not more than 3 times the amount" if the Court finds that "the defendant willfully or knowingly" violated the TCPA. 47 U.S.C. § 227(c)(5)(C). Although Plaintiff requests that damages are set at $1500 per call due to Defendant's willful conduct described herein, Plaintiff recognizes that the Court may, in its discretion, set damages at any point between $500 to $1,500.
[7] http://www.ncaks.com/
[8] *Id.*
[9] http://www1.nyc.gov/office-of-the-mayor/news/785-15/city-secures-2-3-million-fines-restitution-nearly-two-dozen-debt-collection-agencies
[10] *Id.*
[11] http://www.insidearm.com/daily/collection-laws-regulations/collection-laws-and-regulations/new-york-city-announces-1-3-million-settlement-with-debt-collection-agency/
[12] *Id.*
[13] http://www.insidearm.com/daily/debt-buying-topics/debt-buying/state-ag-settles-with-debt-collector-of-payday-loans/
[14] *Id.*

"debts derived from illegal loans."[15]  Further, a very basic internet search of entering Defendant's name into the google search engine shows that there are a panoply of websites dedicated to consumer complaints, much like Plaintiff's in this case, regarding receiving harassing debt collection calls from Defendant.

While Defendant has not been able to escape the cross-hairs of government enforcement actions regarding its illegal debt collection practices, it has implemented a brazen strategy of simply ignoring civil litigation, including suits for the violation of the TCPA and the FDCPA, by failing to appear and defaulting.  Defendant's failure to respond to this action is no accident.  It is by design.  For instance, in 2016 alone, Defendant has defaulted in at least nine cases filed in federal district courts around the country alleging that Defendant violated the FDCPA and the TCPA.  *See* Krivoshey Decl. at ¶ 2, Ex. 1.  During this same time period, Defendant has continued pursuing claims in bankruptcy against alleged debtors.  *See id.*, Ex. 2.

Defendant has been properly served and is on notice of this lawsuit, as discussed in depth in Plaintiff's Request for Entry of Default.  ECF No. 5.  Indeed, service of the Complaint and Summons in this action was effected by personal delivery to Defendant's Associate Legal Counsel, Nicholas Moore, at the address listed for Defendant's Registered Agent both on the California Secretary of State and the Kansas Secretary of State websites.  *See id.*  Mr. Moore even apparently files affidavits signed under penalty of perjury affirming that he is Defendant's Associate Legal Counsel in the select few cases where Defendant has chosen to appear.  *See* Krivoshey Decl., Ex. 3.  Further, a notice of subpoena to First Orion Corp., the parent company of the CMAs, was served on Defendant pursuant to Fed. R. Civ. P. 45 on September 6, 2016.  Krivoshey Decl. at ¶ 6.  Plaintiff has not heard from Defendant since, or at any point prior to, service of the subpoena.  *Id.*  There is no question that Defendant, and its counsel, have notice of this lawsuit and are intentionally choosing not to appear.  Defendant's litigation "strategy" cannot be rewarded – it must face the consequences of its actions.

---

[15] http://www.insidearm.com/daily/collection-laws-regulations/collection-laws-and-regulations/state-ag-launches-enforcement-action-against-payday-lender-and-affiliated-debt-collectors/

### III. PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT JUDGMENT SHOULD BE GRANTED PENDING FURTHER PROOF OF THE AMOUNT OF DAMAGES

#### A.    The Legal Standard for Default

A default judgment is appropriate where the defendant "has received actual or constructive notice of the filing of the action and failed to answer." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).  Entry of default judgment is completely at the discretion of the trial court.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  Although default judgment may be entered on the papers alone, if the court believes more information is necessary to ascertain damages, it may call for a hearing on the matter.  *Pope v. United States*, 323 U.S. 1, 12 (1944).

In determining whether default judgment is appropriate, Courts utilize the following *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.  "In applying these *Eitel* factors, the factual allegations of the complaint are taken as true, except those relating to the amount of damages." *Whitaker II*, at 3.  A review of these factors reveals that default judgment should be granted, pending only a supplemental hearing on the exact amount of the number of Class members and calls made within the Class period, and, thus, the amount of statutory damages.

#### B.    Plaintiff's and the Putative Class' Prejudice would be Significant

Under the first *Eitel* factor, a plaintiff is prejudiced if he would be denied the right to judicial resolution of his claims in the absence of default judgment. *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  That is certainly the case here, as Plaintiff and the Class has no recourse other than judgment by default.  Without a default judgment to resolve his claims, Plaintiff and the Class would receive no possibility of compensation from Defendant for its TCPA violations.

1    Plaintiff received numerous harassing automated calls from Defendant using an autodialer
2    *and* an artificial voice without his express written consent and despite the fact that he asked
3    Defendant to stop calling.  Compl. at ¶¶ 13-16.  A review of CMA records shows that Defendant
4    likewise called other Class members roughly 4.5 times per Class member within the Class period,
5    without including the calls made after the filing of Plaintiff's Complaint.  *See* Rateliff Decl. at ¶ 6.
6    It would be unfair to reward Defendant's illegal behavior by not enforcing a default judgment
7    against it.

8    Without entry of a conditional default judgment in this matter, the Class will receive
9    absolutely no relief for Defendant's unlawful acts.  Truly, the prejudice would lie wholly with
10   Plaintiff and his Class members.  Plaintiff and the putative Class have no other means to resolve
11   their claims.  This element is fulfilled.

### C.  Plaintiff's Claim is Meritorious and Sufficiently Pled

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the liberal pleading standards of Rule 8.  *Danning v. Lavine*, 572 F.2d 1386, 1388-89 (9th Cir. 1978).  Plaintiff fulfills both of these elements which weigh in favor of a default judgment.

A plaintiff need do nothing further to prove the facts of his case than to appropriately plead the elements of his claim in his complaint.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  The factual allegations of the complaint (except as to the amount of damages) are taken as true upon entry of default.  *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

Plaintiff's Complaint plainly states that Defendant did the very act that the TCPA prohibits: call him on his cell phone using *both* an artificial voice and using an autodialer (and for non-emergency purposes).  Compl. at ¶¶ 13-16; 47 U.S.C. §227(b)(1)(A)(iii).  Plaintiff alleges that some of the calls consisted "solely of prerecorded messages" while others consisted of "dead air" or a "pause" before eventually connecting to a live person.  *Id*. at ¶ 14.  *See, e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) ("[T]hese general

allegations are sufficiently bolstered by specific descriptions of the 'telltale' pause after plaintiff picked up each call until the agent began speaking, which suggests the use of a predictive dialing system, and thus renders plausible the conclusory allegation that an ATDS was used."); *Connelly v. Hilton Grant Vacations Co.*, 2012 WL 2129364, at *4 (S.D. Cal. June 11, 2012) (holding that plaintiffs adequately alleged the use of an ATDS when they claim that "the calls had a delay prior to a live person speaking to Plaintiffs"). The fact that Defendant continued to call despite Plaintiff's requests that they stop, as well as Defendant's failure to respond to Plaintiff's allegations herein, indicates that Defendant's violations of the TCPA were knowing and willful. *Id.* ¶ 4.

### D. The Sum of Money at Stake in this Matter

In determining the fourth *Eitel* factor, whether the sum of money at stake is reasonable, the Court must consider the amount of money sought in relation to the seriousness of Defendant's conduct. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Here, the TCPA itself sets statutory damages of $500 per call, which can be trebled up to $1,500 for each knowing or willful violation. These statutory damages are presumptively reasonable.

The damage award here could be substantial. While Plaintiff cannot yet provide an exact total damage value for the Court, so long as the basis for the statutory damages presented to the Court is reasonable, this element is satisfied. Large damage awards will not deter a court from approving default judgment when that award is warranted by a Defendant's wrongdoings. *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003); *Commodity Futures Trading Comm'n v. White Pine Trust Corp.*, 2007 WL 1754819 (S.D. Cal. Apr. 20, 2007). *See also* Whitaker II, at 6, 8 ("Because [plaintiff] and the class seek statutory damages [pursuant to the TCPA], the Court deems them reasonable with respect to the seriousness of [the defendant's] conduct, as they have been deemed appropriate by Congress.").

As discussed above, through discovery of the CMAs, Plaintiff will be able to determine the precise amount of calls made within the Class period and the exact amount of Class members. This approach to ascertaining damages will arrive at a number that is 100% commensurate with the

harm caused by Defendant. In light of Defendant's flagrant violations of the TCPA, providing Plaintiff and Class Members with statutory damages for knowing and willful violations is just.

### E. There is No Dispute of Material Facts

As to the fifth *Eitel* factor, courts hold there are no outstanding issues of material fact when a defendant fails to appear for its lawsuit. Particularly when the complaint is pled sufficiently, "no genuine dispute of material facts would preclude granting [Plaintiff's] motion." *Pepsico*, 238 F. Supp. 2d at 1177; *see Geddes*, 559 F.2d at 560. That is the case here. Plaintiff has filed a complaint that properly alleges violations of the TCPA. Defendant has failed to appear. There can be no issue of material fact when Defendant has not appeared in the action and simply has not contested the complaint's allegations.

### F. Defendant's Failure is Not Due to Excusable Neglect

There is no excusable neglect under the sixth *Eitel* factor. Defendant was properly served with the complaint and summons exactly as required under Rule 4. ECF No. 4. Despite this, Defendant has failed to appear in this action at all since it was served with the summons and complaint on April 25, 2016. There is no excusable neglect here.

### G. Public Policy Considerations Favoring a Decision on its Merits

The seventh *Eitel* factor of public policy is also satisfied. Although "[c]ases should be decided upon their merits whenever reasonably possible," this is not a requirement. *Eitel*, 782 F.2d at 1472. The existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. at 1177 (citation omitted). Defendant's failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.* Plaintiff has no reasonable choice here but to pursue her default judgment as her only recourse. This element also suggests a default judgment here is proper.

## IV. CONCLUSION

Plaintiff's hands are tied. His only available remedy is a default judgment on behalf of himself and all of the putative Class members. Plaintiff requests that this Court approve his motion for default judgment for damages at the rate of $1,500 per call, with the understanding that this

1  judgment will be supplemented with the amount of damages at a later date once the number of calls
2  has been ascertained.

Dated: September 7, 2016                      Respectfully submitted,

                                               **BURSOR & FISHER, P.A.**

                                               By*:*     */s/ Yeremey Krivoshey*
                                                       Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        apersinger@bursor.com
        ykrivoshey@bursor.com


**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*