**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Email:    ltfisher@bursor.com
             ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE CORTES, on Behalf of Himself and all Others Similarly Situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>NATIONAL CREDIT ADJUSTERS, L.L.C.,<br><br>                    Defendant. | Case No. 2:16-cv-00823-MCE-EFB<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DAMAGES AND COSTS** |

## I. INTRODUCTION

Defendant's Opposition to Plaintiff's Motion for Damages and Costs does not address almost any of the points and arguments made in Plaintiff's opening brief. Defendant does not proffer a single word regarding why or how it defaulted in at least 121 cases filed in federal courts. Defendant does not adequately address the fact that it was served a total of *four* times in this case, entirely ignoring receiving service of a subpoena on September 6, 2016. Defendant does not contend that Plaintiff's damages calculation is somehow inaccurate or that Defendant did not make the calls in question. Defendant does not contest that Congress has determined that a minimum of $500 per call made in violation of the TCPA is reasonable. Defendant does not address the issue of trebled damages. Defendant does not address whether costs should be awarded, or whether Plaintiff's calculation of costs is appropriate. Accordingly, each of these arguments are deemed waived.

Instead, Defendant spends almost the entirety of its brief discussing *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986) factors and, in light of those factors, urges the Court to decline awarding any damages whatsoever. But *Eitel* is wholly irrelevant and has no bearing on the damages analysis. Courts look to the *Eitel* factors to determine whether default judgment as to *liability* is appropriate in the first place. Once, as here, courts determine that the *Eitel* factors support entry of default judgment, courts conduct a wholly independent analysis of calculating damages. *See* 8/2/2017 Memorandum and Order, ECF Doc. No. 10, at 10-11. *See also, e.g., Righetti v. Authority Tax Servs.*, LLC, 2015 WL 4089799, at *2-4 (N.D. Cal. July 6, 2015) (first applying *Eitel* factors in determining whether to enter default judgment and then conducting a wholly separate analysis in determining the appropriate amount of damages). Here, the Court has already held that the *Eitel* factors support an entry of default judgment, class notice has been sent out, the notice period is over, and classwide liability has been deemed entered. Defendant never filed a motion for reconsideration. Defendant has not cited a single case where *Eitel* was applied at the damages phase, or made any argument of why it would make sense to do so here. Accordingly, nearly the entirety of Defendant's brief can be disregarded as moot and irrelevant.

## II.   THE COURT SHOULD ENTER AN AWARD OF DAMAGES AND COSTS AS PRESCRIBED BY THE TCPA

### A.   Plaintiff's Motion Is Timely

Although not supported by any case law, and not mentioned anywhere in Defendant's "Argument" portion of its opposition brief, Defendant argues in the introduction that Plaintiff's motion for damages and costs is premature.  *See* Def's Br. At 1-2.  Defendant argues that the Court "should not consider the instant motion until a decision is rendered on NCA's pending motion" to set aside the default judgment as to liability.  *See id.*, at 2.

Defendant's attempt to stop the litigation and impending damages award at the eleventh hour is improper and not supported by any case law.  Notably, Defendant has not filed a motion to stay this case.

This case has been pending since April 20, 2016.  *See* Class Action Complaint, ECF Doc. No. 1.  On August 2, 2017, the Court entered judgment as to liability and held in abeyance the issue of damages "until after discovery has been conducted" and stated that it would supplement its judgment order "with the appropriate damages amount at a later date, upon motion from Plaintiff." 8/2/2017 Memorandum and Order, ECF Doc. No. 10, at 12.  Over the next year, Plaintiff worked as diligently as possible to obtain discovery needed to identify class members, identify the number of calls and damages at issue, and to provide notice.  Plaintiff moved for approval of a notice plan on February 13, 2018.  *See* ECF Doc. No. 15.  Pursuant to the Court's August 3, 2018 Order approving Plaintiff's notice plan, notice was sent out on August 10, 2018.  *See* Declaration of Tina Chiango Regarding Notice to the Class, ECF Doc. No. 29-3, at ¶ 5.  Now that the notice period is over, judgment as to liability as to the entire class has been entered.  *See* 8/3/2018 Order, ECF Doc. No. 20, at 1.  Accordingly, after more than two and a half years of litigation, after taking extensive discovery (including expert discovery) and pursuant to the Court's orders in this case, the time is ripe to determine the amount of damages and costs to award to absent class members and Class Counsel.

Of course, the Court must still make a ruling concerning Defendant's motion to set aside the default judgment.  There is no reason, however, that rulings on Defendant's motion and

Plaintiff's present motion could not be made simultaneously and, if necessary, in the same written order.  Defendant's motion to set aside the default has no merit and should not be permitted to be used as a tool to delay the entry of damages and costs any further.

### B.   Defendant Does Not Dispute The Amount Of Damages Or Costs

As discussed in Plaintiff's opening brief, "[a] default judgment may be entered without a hearing on damages when the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. Oct. 29, 2998).  In TCPA cases, the calculation is remarkably simple, as the Court need only "determine the number of TCPA violations the plaintiff has established" and "determine the appropriate amount of damages to be awarded, including whether the damages should be trebled."  *See Drew v. Lexington Consumer Advocacy*, 2016 WL 9185292, at *10-11 (N.D. Cal. Aug. 11, 2016); *Righetti*, 2015 WL 4089799, at *3 ("In this particular case, the Plaintiff's burden to prove up the amount of damages is minimal because the TCPA provides for the award of statutory damages in the amount of $500 for each TCPA violation.").

Here, Plaintiff identified 25,108 calls Defendant made with its alleged autodialer, and, accordingly seeks, at a minimum, $12,554,000 pursuant to the TCPA (25,108 calls x $500 per call), or $37,662,000 should the Court determine that trebled damages are appropriate (25,108 calls x $1,500 per call).  In its opposition, Defendant does not argue that Plaintiff's calculation is in any way inaccurate or that these calls were not made.  Accordingly, Defendant has waived any argument that the damages amount is not "capable of ascertainment from definite figures."  Indeed, Defendant admits that Plaintiff's "damages calculation is based on the statutory amount Congress has deemed appropriate for a TCPA violation." *See* Def's Br., at 7.

Defendant's sole argument regarding the amount of Plaintiff's requested damages award rests on the improper argument that the dialer Defendant used to make each of the 25,108 does not meet the requirements of an ATDS pursuant to the TCPA.  *See id*.  This argument has no place in the damages analysis.  Plaintiff alleges that the dialer Defendant used meets the requirements of an

1  ATDS, an allegation that has been deemed admitted by virtue of Defendant's failure to respond or
2  appear for more than two years. *See Taylor Made Golf Co., Inc.*, 175 F.R.D. at 661 ("Upon entry
3  of default, factual allegations in the complaint relating to liability are automatically taken as true,
4  but allegations regarding the amount of damages are not."). Further, the Court has entered
5  judgment as to liability on the issue of whether Defendant's dialer constitutes an ATDS.

6  Had judgment as to liability not been entered (and had Defendant not failed to respond), the
7  issue of whether Defendant's dialer is an ATDS would have required significant fact and expert
8  discovery and would have been an issue to be determined at summary judgment or trial. Instead,
9  Defendant hopes to convince the Court that, as a matter of law, its dialer does not meet the TCPA's
10 ATDS definition by submitting one self-serving declaration from an attorney working for the
11 Defendant. Now is not the time to make such factual determinations.[1]

12 Defendant also states in passing that the proposed damages award "would financially
13 devastate NCA." *See* Def's Br. At 7. As an initial matter, Defendant does not provide the Court
14 with a single internal or bank statement concerning its finances in support of this blank assertion,
15 or provide any other figures concerning its revenue, cash flow, *etc*.[2] Further, Defendant has
16 pointed to now law that Defendant's financial condition is relevant to the damages determination
17 when default judgment as to liability has been entered. The Court has already held that the
18 TCPA's $500 per call, and $1500 per call for willful violations, provisions are "reasonable." *See*
19 8/2/2017 Memorandum and Order, ECF Doc. No. 10, at 11. Defendant appears to agree. *See*
20 Def's Br. At 7 ("the damages calculation is based on the statutory amount Congress has deemed

---

[1] Plaintiff further addressed Defendant's merit's related issues in Plaintiff's Opposition to Defendant's Motion to Set Aside Default, ECF Doc. No. 25, at 7-8.

[2] National reporting concerning Defendant suggests that the damages award requested would not, as Defendant claims, be "financially devastat[ing.]" For example, Reuters reported that the Consumer Financial Protection Bureau ("CFPB") recently found that Defendant "wrongfully collected roughly $50 million" in consumer debt, of which the CFPB's lawyers wanted to return about $45 million. *See* Patrick Rucker, *Exclusive: Trump official quietly drops payday loan case, mulls others – sources* (Mar. 23, 2018), https://www.reuters.com/article/us-usa-cfpb-payday-exclusive/exclusive-trump-official-quietly-drops-payday-loan-case-mulls-others-sources-idUSKBN1GZ1A9.

appropriate for a TCPA violation").  There is no reason to disturb the Court's reasoned decision at this juncture.

In his motion, Plaintiff also asked that the Court order Defendant to pay $12,104.70 in costs reasonably incurred in this litigation.  Defendant does not contest that the costs figure is accurate, or that, as the prevailing party, Plaintiff is entitled to costs.  Accordingly, such arguments have been waived and the Court should award costs in full.

**C.     Defendant Was Properly Served Multiple Times**

Although not relevant to the damages analysis, Defendant again argues that it did not receive proper service in this action.  *See* Def's Br. at 7-8.  This is categorically false.

As discussed in Plaintiff's opening brief, Defendant received actual and constructive notice on at least four separate occasions.  First, on March 28, 2016, Defendant received a copy of Plaintiff's demand letter and an unfiled version of the Complaint.  *See* Def's Br. at 8.  Defendant does not contest receiving these documents.

Second, on April 21, 2016, Defendant received a *filed* copy of the Complaint from its outside counsel on April 21, 2016.  Defendant admits that it received this filed copy of the Complaint on that date.  *See id.*

Third, on April 25, 2016, Defendant was personally served with the Summons and filed Complaint.  Service was effected by a private process service company through personal delivery to Defendant's Associate Legal Counsel, Nicholas Moore, at the address listed for Defendant's Registered Agent on the Kansas Secretary of State website, and at Defendant's entity address on the California Secretary of State website.  *See* Krivoshey Decl., ¶¶ 3-4, Ex. A.  Defendant argues in passing that Nicholas Moore "is not NCA's registered agent for service of process in California (or Kansas where NCA is located)."  But this argument is nonsensical.  Defendant National Credit Adjusters, L.L.C.'s registered agent in Kansas is National Credit Adjusters, L.L.C., located at 327 W. 4th Ave., Hutchinson, KS 67501, the same place listed as its entity address on California Secretary of State's website.  *See* https://www.kansas.gov/bess/flow/main?execution=e1s5.  Nicholas Moore, Defendant's Associate Legal Counsel was served at 327 W. 4th Ave.,

Hutchinson, KS 67501 in his capacity as counsel and agent for the Defendant, and not at some other location or in his individual capacity. Defendant admits that Nicholas Moore is authorized to receive service at this location on behalf of the Defendant, as it states that Mr. Moore "will at times receive process at NCA's Kansas office." *See* Def's Br. at 7-8. This represents the best notice practicable and is proper.

Further, Mr. Moore's apparent misplacement, destruction, or loss of the service documents is not "excusable neglect," but rather malpractice. *See* Def's Br. at 7. Defendant's purported administrative "errors" do not somehow make service in this case improper. *See Cohen v. Murphey*, 222 F.R.D. 416, 417–18 (N.D. Cal. 2004) (holding defendant's conduct was culpable and refusing to set aside default where failure to answer was due to the defense attorney's computer system malfunction); *Pretzel & Stouffer v. Imperial Adjusters, Inc.,* 28 F.3d 42, 45 (7th Cir.1994) ("Mis-calendaring a date is certainly a plausible mistake, but it is the attorney's mistake and he and his client are responsible for the consequences."); *Connecticut Nat'l. Mortgage Co. v. Brandstatter,* 897 F.2d 883, 884 (7th Cir.1990) (holding that "routine back-office problems" do not "rank high in the list of excuses for default").

Fourth, on September 6, 2016, Defendant was again served with official documents in this litigation, as Plaintiff served Defendant with a copy of the notice of subpoena to First Orion pursuant to Fed. R. Civ. P. 45. Krivoshey Decl. ¶ 6, Ex. B (Proof of Service). Defendant is entirely silent as to having been served these documents.

Indeed, the topics that Defendant does *not* address are most telling. In Plaintiff's motion for damages, Plaintiff provided the Court a list of *121 cases* filed in federal courts in which National Credit Adjusters was named as a defendant and failed to respond. *See* Krivoshey Decl. ¶ 8, Ex. C. Plaintiff argued that Defendant's failure to respond in this case was part of a calculated strategy Defendant plays out in courts across the country. *See gen*. Plaintiff's Mot., at 1-2, 5-6. Defendant typically waits to see if the plaintiffs in these cases move for entry of default and damages, and only then appears either to beg for relief from the judgment or to seek an individual settlement. That was precisely Defendant's tactic in this case, except that it waited too long, a class

has already been certified, notice to class members has already been sent out, and judgment as to liability has already been determined. Remarkably, Defendant does not say a single word regarding Plaintiff's central charge of what amounts to intentional malpractice and abuse of the federal court system. Defendant does not come up with a justification for its conduct because it cannot – its conduct is inexcusable.

### D. The *Eitel* Factors Are Irrelevant, And, In Any Case, Support Entry Of Damages And Costs

As discussed in Plaintiff's opening brief, the Court has already analyzed each of the *Eitel* factors to be considered upon entry of default judgment and found that the factors favored granting default judgment. *See* Memorandum and Order, ECF Doc. No. 10, at 10-11; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Instead of addressing any of the arguments made in Plaintiff's opening brief, nearly the entirety of Defendant's opposition brief argues that the Court should once again consider the *Eitel* factors. *See* Def's Br. at 2-10. However, Defendant never filed a motion for reconsideration, and has not even attempted to address the requirements of Local Rule 230(j) regarding Applications for Reconsideration. Further, the *Eitel* factors have no bearing whatsoever on the issues of damages, as they concern whether default judgment should be entered in the first instance, and not the amount of damages that should be entered once default judgment is in place. To the extent that the Court considers the *Eitel* factors relevant, Plaintiff refers the Court to Plaintiff's Opposition to Defendant's Motion to Set Aside Default, ECF Doc. No. 25, at 3-13, where Plaintiff addresses Defendant's related argument that the Court should set aside the default.

### III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court award a minimum of $12,554,000 for the class TCPA violations, and, if deemed appropriate, award treble damages up to $37,662,000. Plaintiff also asks that the Court order Defendant to pay $12,104.70 in costs reasonably incurred in this litigation.

| | |
|---|---|
| Dated: January 3, 2019 | Respectfully submitted, |
| | **BURSOR & FISHER, P.A.** |
| | By: */s/ Yeremey Krivoshey* <br>     Yeremey Krivoshey |
| | L. Timothy Fisher (State Bar No. 191626)<br>Yeremey Krivoshey (State Bar No. 295032)<br>1990 North California Boulevard, Suite 940<br>Walnut Creek, CA  94596<br>Telephone: (925) 300-4455<br>Facsimile:  (925) 407-2700<br>E-Mail: ltfisher@bursor.com<br>        ykrivoshey@bursor.com |
| | **BURSOR & FISHER, P.A.**<br>Scott A. Bursor (State Bar No. 276006)<br>888 Seventh Avenue<br>New York, NY 10019<br>Telephone: (212) 989-9113<br>Facsimile:  (212) 989-9163<br>E-Mail: scott@bursor.com |
| | *Attorneys for Plaintiff* |