**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:   ltfisher@bursor.com
           ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (SBN 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail:  scott@bursor.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE CORTES, on Behalf of Himself and all Others Similarly Situated,<br><br>                          Plaintiff,<br>      v.<br><br>NATIONAL CREDIT ADJUSTERS, L.L.C.,<br><br>                          Defendant. | Case No.  2:16-cv-00823-MCE-EFB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  April 30, 2020<br>Time:  2:00 p.m.<br>Courtroom:  7 |

**TABLE OF CONTENTS**

**PAGE(S)**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND ...................................................................... 2

       A.     Litigation and Discovery ......................................................................... 2

       B.     The 13-Month Settlement Process ........................................................... 6

III.   LEGAL STANDARD FOR PRELIMINARY APPROVAL ............................... 9

IV.    THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ......... 10

       A.     Strength of Plaintiff's Case, the Specific Risks of This Litigation, and Risks of Maintaining a Class Action ........................................... 11

       B.     The Amount Offered in Settlement ....................................................... 13

       C.     The Extent of Discovery and Status of Proceedings ............................. 16

       D.     Experience and Views of Counsel ......................................................... 16

V.     THE COURT SHOULD PROVISIONALLY CERTIFY THE 2016 CALIFORNIA CLASS ................................................................................. 17

VI.    THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE ..................... 19

VII.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................ 18, 19

*Barani v. Wells Fargo Bank, N.A.*,
  2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...................................................... 16

*Blair v. CBE Group, Inc.*,
  309 F.R.D. 621 (S.D. Cal. 2015) ....................................................................... 13

*Bottoni v. Sallie Mae, Inc.*,
  2013 WL 1231279 (N.D. Cal. Nov. 21, 2013) ................................................... 15

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................... 10

*Case v. French Quarter III LLC*,
  2015 WL 12851717 (D.S.C. July 27, 2015) ...................................................... 15

*Charvat v. Travel Servs.*,
  2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ............................................................ 15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................. 11

*Cosgrove v. Citizens Auto. Fin., Inc.*,
  2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) .................................................... 15

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................................. 14

*Cullen v. Whitman Med. Corp.*,
  197 F.R.D. 136 (E.D. Pa. 2000) ........................................................................ 15

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) ............................................................................. 12

*Farrell v. Bank of Am., N.A.*,
  327 F.R.D. 422 (S.D. Cal. 2018) ....................................................................... 15

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................... 11

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................ 14

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................ 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................... passim

*Hashw v. Dep't Stores Nat'l Bank*,
  182 F. Supp. 3d 935 (D. Minn. 2016) ...................................................... 14

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ........................................................ 14

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ...................................... 15

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ...................................... 12

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................. 16

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .................................................................... 10

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .......................................................... 9, 10

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................... 9

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) .............................................................. 14

*Lo v. Oxnard European Motors, LLC*,
  2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ...................................... 16

*Malta v. Federal Home Loan Mortg. Corp.*,
  2013 WL 444619 (S.D. Cal. Feb. 5, 2013) .......................................... 16

*Munday v. Navy Federal Credit Union*,
  2016 WL 7655807 (C.D. Cal. Sep. 15, 2016) ...................................... 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .......................................................... 10, 11

*Orloff v. Syndicated Office Sys., Inc.*,
  2004 WL 870691 (E.D. Pa. Apr. 22, 2004) .......................................... 15

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ................................................................................ 10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................. 16

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................................... 14

*Slaven v. BP Am., Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ........................................................... 17

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................. 18

*Torres v. Taboack, Bernstein & Reiss LLP*,
  2017 WL 281878 (E.D.N.Y. Jan. 23, 2017) ........................................ 15

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ........................................................................... 17

*Whitaker v. Bennett Law, PLLC*,
  2015 WL 12434306 (S.D. Cal. Jan. 25, 2015) ................................ 11, 12

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ...................................... 14

**RULES**

Fed. R. Civ. P. 23 .................................................................... passim

Fed. R. Civ. P. 34 ........................................................................... 8

Fed. R. Civ. P. 55 ......................................................................... 12

Fed. R. Civ. P. 55(a) ...................................................................... 3

**OTHER AUTHORITIES**

H. Newberg & Conte, 1 Newberg on Class Actions § 3.10 (1992) ................. 17

Newberg on Class Actions § 11.25 (1992) ......................................... 9

## I.  INTRODUCTION

After a full-day mediation with Martin Quinn, Esq., at JAMS, and more than a calendar year of contentious follow-on settlement negotiations and discovery, the parties have executed a class Settlement Agreement.  The Settlement Agreement states that Defendant National Credit Adjusters, L.L.C. ("NCA" or "Defendant") will pay **$1,800,000** into a non-reversionary fund to pay for the settlement of all claims in this action, including the costs of notice and administration, any attorney's fees, costs, and expenses, and incentive award for the Plaintiff.  *See* Settlement ¶ 2.28.  After accounting for notice costs, attorney's fees and expenses, and incentive award, Settlement Class Members[1] will receive cash payments on a *pro rata* basis from the amount remaining in the Settlement Fund, such that the entirety of the Settlement Fund shall be exhausted. *Id*. ¶ 5.02.  Critically, because the parties are in possession of contact information for virtually every single Settlement Class Member, Class Members will not have to submit claims to receive a benefit – they will receive a *pro rata* share of the Settlement *automatically*.  *Id*. ¶ 5.03.

Further, all Settlement Class Members who have an existing debtor account owned by NCA that has an outstanding balance will receive a credit on that account equal to the amount of the outstanding balance, such that the debt of each such Settlement Class Member will be waived (the "Debt Waiver").  *Id*. ¶ 5.04.  4,927 out of 5,154 Settlement Class Members are eligible to receive the Debt Waiver (the remaining 227 class members do not have any outstanding debt but will still receive the cash award).  *Id*.  The aggregate amount of the Debt Waiver will be **$4,996,500.88**.  *Id*. As with the cash award, Settlement Class Members eligible for the Debt Waiver will receive it *automatically* – they do not need to submit claims.  *See id*.

The Settlement Agreement defines the Settlement Class to consist of two separate classes:

The "**Certified Class**": All persons within the United States who: (a) are current or former subscribers of the Call Management applications; (b) and received one or more calls; (c) on his or her cellular telephone line; (d) made by or on behalf of Defendant National Credit Adjustors, LLC (NCA); (e) for whom NCA had no record of prior express written consent; (f) and such phone call was made with the use of an artificial or prerecorded voice or with the use of an automatic telephone dialing

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement.  *See* Krivoshey Decl., Ex. 1.  The Settlement and its exhibits are attached as Exhibit 1 to the Declaration of Yeremey Krivoshey ("Krivoshey Decl."), filed herewith.

system as defined under the TCPA; (g) at any point that begins April 21, 2012 until August 2, 2017; and

The "**2016 California Class**": All persons (a) in California; (b) called by or on behalf of Defendant; (c) between January 1, 2016 through December 31, 2016; (d) regarding a purported debt owed; (e) using an artificial or prerecorded voice or an automatic telephone dialing system as defined under the TPCA

*Id*. ¶ 2.25.  The Court certified the "Certified Class" on August 3, 2018.  ECF No. 20, at 2; Settlement ¶¶ 1.05, 1.06, 2.25.  The Certified Class consists of 3,932 class members, who, in the aggregate, will receive $3,530,375.64 in waived debt.  Settlement ¶ 5.04.  The 2016 California Class consists of 1,222 persons, who, in the aggregate, will receive $1,466,125.24 in waived debt. *Id*.  Collectively, the Debt Waiver will amount to $4,996,500.88.  *Id*.  Members of the Certified Class and the 2016 California Class are collectively referred to as Settlement Class Members.

The monetary benefits afforded to Settlement Class Members far exceed the relief provided to class members in typical settlements of actions brought under the Telephone Consumer Protection Act ("TCPA").  Indeed, because there are only 5,154 Settlement Class Members, the $6.8 million in combined cash and debt relief afforded by the Settlement entitles Settlement Class Members to an average of **$1,319 per person** in value – an amount virtually unmatched in consumer class actions.  Accordingly, this Court should preliminarily approve the Settlement.

Plaintiff now requests this Court to enter an order in the form of the Proposed Preliminary Approval Order.  That Order will: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Class, designate Plaintiff as Class Representative, and appoint Bursor & Fisher, P.A. as Class Counsel; (3) appoint RG/2 Claims Administration LLC as the Settlement Administrator and establish procedures for giving notice to members of the Class; (4) approve forms of notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (5) set a date, time and place for a final approval hearing.

## II.   PROCEDURAL BACKGROUND

### A.   Litigation and Discovery

Plaintiff filed this class action against Defendant National Credit Adjusters, L.L.C. on April 20, 2016, alleging violations of the TCPA and the Fair Debt Collection Practices Act ("FDCPA"). *See* Compl. at ¶¶ 13-16, 32-48 (ECF No. 1).  Plaintiff alleged that, in the early part of 2016,

Defendant called his cellular telephone without his prior consent in violation of the TCPA using an autodialer and prerecorded messages. *Id*. at ¶¶ 13-14.

On April 25, 2016, Plaintiff served Defendant with the Summons and Complaint. *See* ECF No. 4 (executed summons). Because Defendant failed to timely respond or make an appearance in this action, Plaintiff sought for the Clerk to enter default pursuant to Fed. R. Civ. P. 55(a) on June 8, 2018. ECF No. 5. The Clerk entered default that same day. ECF No. 6.

On September 7, 2016, Plaintiff filed a motion for class certification and motion for default judgment. Because of Defendant's failure to appear, Plaintiff sought certification of a class of persons that could be identified through third-party discovery. As discussed in the motion for class certification, Plaintiff sought to certify a class of those persons who have received calls on their cellphones from Defendant and are current or former subscribers of the PrivacyStar, Metro Block-It, Metro Name-ID, CallWatch, or Call Detector cellphone applications (collectively, "Call Management Applications" or "CMAs"). Critically for purposes of identifying class members, the CMAs automatically record the time, duration, and date of each incoming call to a user's cellular telephone from known or suspected debt collectors and telemarketers. *See* 9/6/2016 Declaration of Matt Rateliff, ECF No. 7-3, at ¶ 3. For instance, Plaintiff was a Metro Block-It (one of the CMAs) subscriber and the Metro Block-It app had a record of 6 incoming calls from Defendant's telephone number to Plaintiff's cellphone within the class period. *Id*. at ¶ 4. Accordingly, Plaintiff asked that the Court grant class certification and default judgment but hold the issue of damages in abeyance until after Plaintiff was able to take third-party discovery to ascertain the precise number of class members and calls that violated the TCPA.[2]

On August 2, 2017, the Court issued an order granting class certification and entering default judgment against Defendant. ECF No. 10, at 12. The Court held the issue of damages in abeyance and retained jurisdiction over the matter to supplement the judgment with the appropriate damages at a later time. *Id*. The Court also ordered Plaintiff to file a status report every sixty days from the date of its order, updating the Court as to the status of the case and the composition of the

---

[2] Plaintiff did not seek certification of the FDCPA claim.

1   class. *Id.*  Plaintiff has since filed status reports on September 29, 2017, November 30, 2017,

2   December 20, 2017, January 29, 2018, March 30, 2018, May 29, 2018, July 31, 2018, and

3   September 26, 2018, as well as supplemental status reports on August 23, 2019 and December 6,

4   2019.  *See* ECF Nos. 11, 12, 13, 14, 17, 18, 19, 26,[3] 43, 45.

5          Even before the Court granted class certification, Plaintiff used his best efforts to identify

6   class members and the number of phones calls at issue through third-party and expert discovery.

7   Plaintiff served subpoenas on First Orion Corp. (the parent company of the CMAs) in September

8   2016 and September 2017.  Krivoshey Decl. ¶ 8.  As discussed in the November 30, 2017 Status

9   Report, Plaintiff obtained a declaration from Matt Rateliff, a representative of First Orion, that

10  specifies each of the class members' telephone numbers dialed by the Defendant within the class

11  period.  *Id.*, Ex. 3 [11/28/2017 Declaration of Matt Rateliff].  However, Mr. Rateliff was not able to

12  provide the identity of or contact information for the customary users of those cell phone numbers,

13  as First Orion did not require the users of its cell phone management applications to provide such

14  information upon downloading the cellphone applications.  *See id.* 1, at 1 ("PrivacyStar does not

15  collect or have the subscriber name for each phone, and licenses to PrivacyStar applications are

16  associated only with the subscriber's phone number.").

17         Because First Orion did not have class member information sufficient to provide notice,

18  Plaintiff retained Randall Snyder, an expert in the telecommunications field.  Krivoshey Decl., Ex.

19  4 (12/15/2017 Declaration of Randall A. Snyder).  Mr. Snyder opined that "the identities and

20  contact information of potential Class members who were called by Defendant, at any point in

21  time, can be definitively and clearly ascertained based solely on their cellular telephone numbers.

22  Furthermore, [t]he ability to do so is a straightforward administrative process."  *Id.*, at ¶ 29.  Mr.

23  Snyder proposed ascertaining the identity of class members through a third-party information

24  service company called Diaz Reus & Targ LLP ("DRRT").  *See id.*, at ¶ 21.  Plaintiff then

25  separately retained DRRT (since renamed as the "Class Experts Group" or "CEG") to perform the

26  analysis Mr. Snyder describes in his report.

27  _____
    [3] Plaintiff stopped filing status reports after September 26, 2018 because Defendant had appeared
28  in the action.

CEG obtained the name and contact information for the vast majority of class members. *See* Krivoshey Decl., Ex. 5 (2/13/2018 Declaration of Anya Verkhovskaya).  In fact, CEG reported that it identified the name and address information of the subscribers for 78 percent of the telephone numbers specified in Matt Rateliff's declaration, *i.e.* 78 percent of class members (in the "Certified Class").  *Id.*, at ¶ 10.  Thus, by obtaining CMA records, Plaintiff was able to identity the number and identity of class members in the Certified Class and the number of calls at issue.

On February 13, 2018, after conducting the aforementioned discovery, Plaintiff filed a motion (1) for approval of a notice plan pursuant to Fed. R. Civ. P. 23(c)(2)(8), (2) for a slight modification of the class definition to include class period end-date, and (3) seeking for the Court to hold default judgment in abeyance or set it aside for the duration of the notice period.  ECF No. 15.  Plaintiff sought for the Court to hold judgment in abeyance out of an abundance of caution after discovering two cases holding that even where the defendant defaults, class notice must still be provided prior to entering judgment.  *Id.*, at 1.

On August 3, 2018, the Court granted Plaintiff's motion, modified the class definition, held judgment in abeyance for duration of the notice period, and approved Plaintiff's proposed forms of notice – using a combination of post-card notices and a long-form notice posted on a dedicated website.  ECF No. 20.  The Court certified a Class defined as:

> All persons within the United States who (a) are current or former subscribers of the Call Management Applications; (b) and received one or more calls; (c) on his or her cellular telephone line; (d) made by or on behalf of Defendant: (e) for whom Defendant had no record of prior express written consent; (f) and such phone call was made with the use of an artificial or prerecorded voice or with the use of an automatic telephone dialing system as defined under the TCPA; (g) at any point that begins April 21, 2012 until and including August 2, 2017.

*Id.*  As discussed above, the class certified on August 3, 2018 is referred to in the Settlement as the "Certified Class."  The Court ordered Plaintiff to provide notice within seven days of its order.  *Id.* On August 10, 2018, Plaintiff timely sent out notice pursuant to the Court's order.  *See* 9/26/2018 Status Report, ECF No. 26, at 1; 11/19/2018 Declaration of Tina Chiango Regarding Notice to the Class, ECF No. 29-3, at ¶ 5.

On August 16, 2018, Defendant appeared for the first time in this action.  ECF Nos. 21, 22.  Then, on September 4, 2018, Defendant filed its Motion to Set Aside Default, for Leave to File an Answer and Affirmative Defenses, and to Vacate August 2, 2017 Memorandum and Order.  ECF No. 23.  Defendant's main arguments were that (1) it purportedly had no record of ever being served, and that (2) it has a complete defense to the TCPA because it does not use an "automatic telephone dialing system" ("ATDS") within the meaning of the TCPA and never used a prerecorded or an artificial voice.  *See id.*  Plaintiff filed his opposition on September 20, 2018.  ECF No. 25.  Defendant filed its reply on September 27, 2018.  ECF No. 27.

On November 20, 2018, Plaintiff filed a Motion for Damages and Costs, seeking for the Court to award damages on behalf of the class as the notice period had lapsed.  ECF No. 29.  Specifically, pursuant to the TCPA, Plaintiff sought $500 per each (or, in the alternative, $1,500 if the Court determined that trebling was appropriate) of the 25,108 calls at issue, for a total of $12,554,000.  *Id.*  Defendant filed its opposition on December 27, 2018.  ECF No. 31.  Plaintiff filed his reply on January 3, 2019.  ECF no. 32.

On January 10, 2019, the Court, on its own motion, set Defendant's motion to set aside default judgment for hearing on February 7, 2019.  ECF No. 33.  On February 6, 2019, the Court vacated all pretrial deadlines and the February 7, 2019 hearing date on stipulation by the parties, as the parties had reached a settlement.  *See* ECF No. 35.

### B.      The 13-Month Settlement Process

On January 18, 2019, the parties participated in an all-day mediation with Martin Quinn, Esq., at JAMS in San Francisco, CA.  Krivoshey Decl. ¶ 11.  While the parties were unable to reach an agreement at the mediation, the parties earnestly continued settlement discussions.  On February 5, 2019, two days before the parties were set to appear regarding Defendant's motion to set aside default judgment, the parties executed a binding Term Sheet setting out an agreement to settle all claims in this action on a class basis.  However, the parties' settlement discussions leading up to the execution of the present Settlement were very contentious and spanned more than a calendar year.  *Id.*

The February 5, 2019 Term Sheet had two critical, material terms that provided the basic framework to settle this case on a class basis. Pursuant to the Term Sheet, Defendant agreed to create 1) a non-reversionary cash settlement fund ("Cash Fund") of $1,800,000 and 2) to waive the debt of all class members who had an existing debt account ("Debt Waiver"). The Term Sheet explicitly stated that "the total amount of Debt Waiver will exceed $5,000,000," and further stipulated that Defendant would provide Plaintiff with sufficient information to confirm the precise total amount of the Debt Waiver. The Term Sheet stipulated that the parties would execute a full, written settlement agreement that would be submitted to the Court for approval. *Id.* ¶ 12.

After executing the Term Sheet, the parties spent months drafting and exchanging redlines to a full settlement agreement. The parties filed multiple stipulations seeking extensions of the Local Rule 160 deadline. On August 19, 2019, seven and a half months after executing the Term Sheet, Defendant informed Plaintiff for the first time that it would only be able to provide $1,479,023 of the Debt Waiver – only <u>29.6 percent</u> of the amount of the Debt Waiver agreed upon in the Term Sheet. According to Defendant, the other roughly 70 percent of the Debt Waiver "had to be excluded" because it belonged to one of Defendant's affiliates which was now "in receivership." Accordingly, Defendant sought to modify the terms of the settlement agreement to decrease the Debt Waiver by over 70 percent of the agreed-upon amount. Defendant stated that it was attempting to get in touch with the receiver to attempt to release the affected debt so that it could be included as part of the settlement. *Id.* ¶ 13.

Plaintiff informed Defendant that such a material change to the Term Sheet was not acceptable. Accordingly, Plaintiff requested information concerning the identity of the purported trustee that was handling the affiliate that was "in receivership," the case name concerning the receivership, and data concerning class member accounts that were affected by the receivership. On September 19, 2019, counsel for Defendant responded – "We cannot get the trustee to respond. We are trying." – and provided no further information. Upon further follow-up, on September 23, 2019, counsel for Defendant stated that they did "not have" the name of the trustee (because their client was purportedly "handling that piece"), and again provided no further information. On

October 4, 2019, Defendant's counsel again reiterated that they still did not have any information about the identity of the trustee, as they were "having some problems with the client." *Id*. ¶ 14.

Having had no luck getting any responsive information or data from Defendant for many weeks, on October 4, 2019, Plaintiff served written Requests for Production pursuant to Fed. R. Civ. P. 34 concerning the aforementioned settlement issues. On October 8, 2019, counsel for Defendant emailed counsel for Plaintiff, stating, "I think we have some good news – the receivership has ended and NCA is now able to move forward with the settlement of all of the original accounts. NCA is (re) assembling the account data to get the specific details on the number of accounts and total value to be included in the debt waiver. We are expecting to have that answer in about a week." *Id*. However, Defendant did not provide any more information for about a month. On November 4, 2019, Defendant stated that the total amount of the Debt Waiver is in fact $3,530,265.64, still roughly $1.5 million short of the agreed-on $5 million. *Id*. ¶ 15.

Over the course of the next four months, the parties negotiated ways that Defendant could meet its obligation of providing a $5 million Debt Waiver. Through the parties' investigation, they were able to locate the 1,222 members of the "2016 California Class" that had an aggregate $1,466,125.24 in debt owed to Defendant. Thus, collectively, the members of the Certified Class and the 2016 California Class have $4,996,125.24 in debt owed to Defendant. *Id*. ¶ 16.

On February 20, 2020, the parties filed a Joint Stipulation permitting Plaintiff to file an Amended Complaint, which he filed that same day. ECF No. 47, 48. The Amended Complaint formally added allegations regarding the 2016 California Class, and sought for Plaintiff to be appointed to represent members of the 2016 California Class. *See* ECF No. 48 at ¶¶ 24, 25. Defendant produced documents sufficient to identify all 1,222 members of the 2016 California Class, including their home address information. Krivoshey Decl. ¶ 17.

The parties executed the Settlement on March 12, 2020. As discussed above, the Settlement now largely tracks the initial Term Sheet the parties executed on February 5, 2019, as it provides a non-reversionary $1.8 million cash fund, as well as $4,996,125.24 in Debt Waiver – an

amount Class Counsel considered adequate to satisfy Defendant's obligation to provide $5 million in debt relief.  *See* Settlement ¶¶ 1.10, 1.11, 2.08, 5.04; Krivoshey Decl. ¶ 18.

### III.  LEGAL STANDARD FOR PRELIMINARY APPROVAL

Approval of class action settlements involves a two-step process.  First, the Court must make a preliminary determination whether the proposed settlement appears to be fair and is "within the range of possible approval."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  If so, notice can be sent to class members and the Court can schedule a final approval hearing where a more in-depth review of the settlement terms will take place.  *See Manual for Complex Litigation, 3d Edition,* § 30.41 at 236-38 (hereafter, the "Manual").

The purpose of preliminary approval is for the Court to determine whether the parties should notify the class members of the proposed settlement and proceed with a fairness hearing.  *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *Id.* (*quoting* NEWBERG ON CLASS ACTIONS § 11.25 (1992).

Additionally, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  One such standard is the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor*, 516 F.3d at 1101.

> Beginning with the first [pretrial] conference, and from time to time throughout the litigation, the court should encourage the settlement process. The judge should raise the issue of settlement at the first opportunity, inquiring whether any discussions have taken place or might be scheduled. As the case progresses, and the judge and counsel become better informed, the judge should continue to urge the parties to consider and reconsider their positions on settlement in light of current and anticipated developments.

*Manual*, § 23.11 at 166.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v.*

1  *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at

2  arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re*

3  *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, the Court's role is to ensure

4  that the settlement is fair, reasonable, and adequate.  *See In re Syncor* 516 F.3d at 1100.

5         Beyond the public policy favoring settlements, the principal consideration in evaluating the

6  fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the

7  benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare

8  the terms of the compromise with the likely rewards of litigation."  *Protective Committee for*

9  *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

10  That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated

11  between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

12  judgment that the agreement is not the product of fraud or overreaching by, or collusion between,

13  the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to

14  all concerned."  *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688

15  F.2d 615, 625 (9th Cir. 1982).

16         In evaluating preliminarily the adequacy of a proposed settlement, particular attention

17  should be paid to the process of settlement negotiations.  Here, the negotiations were conducted by

18  experienced class action counsel and included the involvement of Martin Quinn, Esq., of JAMS, a

19  highly skilled and experienced mediator.  Thus, counsel's assessment and judgment are entitled to

20  a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion.  *Boyd*

21  *v. Bechtel Corp.*, 485 F. Supp. 610, 622–23 (N.D. Cal. 1979).

22  **IV.  THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE**

23         Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

24  only after a hearing and on finding that it is fair, reasonable, and adequate."  When making this

25  determination, the Ninth Circuit has instructed district courts to balance several factors: (1) the

26  strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

27  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

28

in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the

experience and views of counsel. *Hanlon*, 150 F.3d at 1026;[4] *Churchill Vill., L.L.C. v. Gen. Elec.*,

361 F.3d 566, 575 (9th Cir. 2004). Here, the balance of these factors readily establishes that the

proposed settlement should be preliminarily approved.

### A.   Strength of Plaintiff's Case, the Specific Risks of This Litigation, and Risks of Maintaining a Class Action

In determining the likelihood of plaintiffs' success on the merits of a class action, "the

district court's determination is nothing more than an amalgam of delicate balancing, gross

approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations

omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator

arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

*Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

Here, Class Counsel engaged in an arms-length negotiation with Defendant's counsel, and

were thoroughly familiar with the applicable facts, legal theories, and defenses. Although Plaintiff

and his counsel believe that Plaintiff's claims have merit, they also recognize that they would face

significant risks moving forward. Critically, this is a novel case that presented a lot of uncertainty.

Plaintiff is not aware of a single case where a plaintiff was able to recover (in addition to simply

getting a default judgment order) a <u>single dollar</u> on behalf of a certified class in a case where the

defendant defaulted. For instance, in *Whitaker v. Bennett Law, PLLC*, 2015 WL 12434306, at *4

(S.D. Cal. Jan. 25, 2015), a case the Court relied on heavily in granting Plaintiff's motion for class

certification and default judgment, the plaintiff was able to obtain class certification and default

judgment as to liability. *See* 8/2/17 Memorandum and Order, ECF No. 10, at 5-11 (citing *Whitaker*

*passim*). However, when it came time to collect and ascertain the amount of damages, the plaintiff

discovered that the defendant liquidated its assets and effectively disposed of all class member

evidence. *See Whitaker v. Bennett Law, PLLC*, Order Denying Without Prejudice *Ex Parte*

Application to Designate an Amount of Damages in the Judgment; And Order to Show Cause, ECF

---

[4] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval, and will be addressed at the appropriate time.

No. 24 (S.D. Cal. May 27, 2016).  Given the lack of evidence or available funds, Judge James Lorenz ordered the plaintiff to show cause why the class should not be decertified.  *See id.*, at 3. The plaintiff filed a notice of voluntary dismissal two weeks later.  *See id.*, ECF No. 25.

Further, the strength of Plaintiff's case was tied to the fact that the Court entered judgment as to liability due to Defendant's default.  However, final judgment had not been entered, as the Court had not entered a damages amount.  Further, as of the time that Defendant finally filed an appearance in August 2018, the Court modified its default judgment order to hold judgment as to liability in abeyance for the duration of the notice period.  8/03/2018 Order, ECF No. 20.  Then, while the judgment was in abeyance, Defendant filed a motion to set aside the default, which the Court clearly had discretion to do pursuant to Fed. R. Civ. P. 55.  Although Plaintiff disagreed that Defendant satisfied the "good cause" standard necessary to set aside default, Plaintiff was nevertheless wary of the Ninth Circuit's statement that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."  *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

If the Court's default judgment and class certification orders were set aside, Plaintiff would have effectively had to start the case over from scratch after more than two years of litigation.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").  As discussed at length in Defendant's motion to set aside the default, Defendant would have presented vigorous defenses, contending that (1) it had prior express consent to call Plaintiff, (2) that Defendant placed its calls using a "Human Call Initiator" system, and not an ATDS pursuant to the TCPA, and that (3) Defendant's dialing system lacks the capacity to make calls using prerecorded messages or artificial voice.  *See* Defendant's Memorandum of Points and Authorities in Support of Motion to Set Aside Default, ECF No. 23-1, at 9-12 (citing many cases in support of its position).  A finding in Defendant's favor on any of these factors would have been a death-knell to this case – as to both the Certified Class and the 2016 California Class.  Even if Plaintiff was able to show that Defendant's dialers were ATDS, that Defendant used a prerecorded message or

artificial voice, and that Defendant lacked consent to call Plaintiff, Defendant would still have strenuously opposed any renewed motion for class certification.  In the debt collection context, obtaining class certification is exceedingly difficult.  *See, e.g., Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (denying class certification in debt-collection TCPA case due to individualized issues of prior express consent).  Thus, had Plaintiff taken the risk of going the distance and lost on any of these issues, class members would not have received any relief.

To be sure, there is a chance that the Court would have denied Defendant's motion to set aside default and entered damages in Plaintiff's and class members' favor.  Even then, the Court's order would immediately be subject to appeal.  Further, as discussed above, Plaintiff's sought $12,554,000 (without trebling) in damages in his motion for damages.  Here, the Settlement Agreement provides for $6.8 million in benefits, or roughly 50 percent of Plaintiff's likely best-case scenario.  Obtaining 50 percent of a "best case" scenario is surely an excellent outcome.  Further, through prolonged settlement discussions, it became clear that Plaintiff would never have been able to recover $12 million from Defendant in the first place, as it could not possibly afford to pay a judgment of that size.  Krivoshey Decl. ¶ 19.  Instead, Plaintiff would likely have been forced to fight for scraps against other creditors in bankruptcy and may have recovered far less than the $6.8 million made available by the Settlement Agreement.  Class Counsel is confident that, looking objectively at the merits of the case and likelihood of recovery at trial or by order of the Court, that the Settlement Agreement is the best outcome for class members in this instance.

**B.      The Amount Offered in Settlement**

The proposed Settlement provides $6.8 million in monetary benefit to Settlement Class members.[5]  First, Defendant will create a $1,800,000 non-reversionary settlement fund, which will be used to pay all attorney's fees, expenses and costs, notice and administrative expenses, Plaintiff's incentive award, and pay cash awards to all Settlement Class Members that could be identified, as discussed above.  After the deduction of attorney's fees, expenses and costs, notice

---

[5] Technically, the Settlement provides $6,796,500.88 in monetary benefits (the aggregate of the $4,996,500.88 Debt Waiver and the $1,800,000 cash fund).  Plaintiff cites the $6.8 million figure as a rounded number.

and administrative expenses, Plaintiff's incentive award, Settlement Class Members will receive the balance of $1,800,000 to be distributed on a *pro rata* basis.  Considering that there are only 5,154 total Settlement Class Members, that means that Settlement Class Members may get approximately $100 per person in cash, or more (the specific amount depends on the amount of attorney's fees, expenses, costs, and incentive award to be awarded by the Court, plus notice and administration costs).  Further, Settlement Class Members who have an existing debtor account owned by NCA and/or its related or affiliated entities that has an outstanding balance will have the entirety of the debt waived.  Defendant's records show that 4,927 are eligible to receive the debt waiver.  In sum, Defendant will waive $4,996,500.88 worth of debt relief, meaning that eligible Settlement Class Members will receive an average of $1,014 in debt relief, in <u>addition</u> to the cash award.  Better yet, the cash and debt relief awards will be automatic – Settlement Class Members do not have to submit claims or fill out any paperwork to receive benefits under the Settlement.

The anticipated cash and debt relief payouts are extremely high when compared with other TCPA class settlements, especially considering that the settlement was made possible through more than two years of litigation following Defendant's default.  *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving $20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving $33.20 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ("$34.60 per claimant recovery"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ($13.75 per class member recovery); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class actions) (omitting quotation marks and citations); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also in line with other TCPA settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant);

*Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a "*pro rata* settlement award distribution of $48.37").

In evaluating the financial value of the Settlement Agreement, the Court should consider the combined sum of the $1.8 million cash fund and the $5 million in debt relief, or $6.8 million *See Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422, 430-431 (S.D. Cal. 2018) (calculating $29.1 million in debt relief as part of the $66.6 million total monetary value created by the settlement, and explaining that debt relief is not illusory); *Bottoni v. Sallie Mae, Inc.*, 2013 WL 1231279, at *7 (N.D. Cal. Nov. 21, 2013) ("Other courts have recognized the value of debt relief and included it as part of the settlement fund."); *Cosgrove v. Citizens Auto. Fin., Inc.*, 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011) ("Other courts have included debt forgiveness as part of a settlement fund, but the Court does not consider this a non-monetary award, such as a coupon, that "deserve[s] careful scrutiny to ensure that it ha[s] actual value to the class." The Court finds that debt forgiveness provides a valuable award to class members.") (quoting Fed. R. Civ. P. 23, Advisory Committee's Note) (citation omitted); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at * 16 (S.D.N.Y. Nov. 26, 2002) (awarding attorney's fees of 28% of the total settlement consideration, which included credit notes class members could use to reduce debt owed to defendants); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 147 (E.D. Pa. 2000) (finding it reasonable to award fees based on the total value of the settlement, which included the forgiveness of debt for students who were delinquent in paying back their loans); *Torres v. Taboack, Bernstein & Reiss LLP*, 2017 WL 281878, at *2 (E.D.N.Y. Jan. 23, 2017) ("Although approximately $2.4 million is provided in the form of debt reduction rather than cash payments, the benefit is no less worthy of consideration for it constitutes money that remains tin the pockets of the class members rather than being paid out."); *Case v. French Quarter III LLC*, 2015 WL 12851717, at *10 (D.S.C. July 27, 2015) ("Plaintiffs' Counsel obtained a beneficial result for the class members, including a settlement fund of $4,129,640, three hundred timeshare interval units at the French Quarter with an approximate value of $3,600,000, and debt forgiveness of approximately $4,232,000. The total value of the settlement package is estimated at $11,961,640, a substantial recovery for the class."); *Orloff v. Syndicated*

*Office Sys., Inc.*, 2004 WL 870691, at *2, *7 (E.D. Pa. Apr. 22, 2004) (holding that the settlement provided $437,000 in economic benefit the Class, even though 100 percent of the $437,000 was in the form of debt relief).

Further, the proposed method of claims distribution – *pro rata* payouts – has repeatedly been recognized as a proper and just method of claims distribution in other TCPA class settlements. *See Barani v. Wells Fargo Bank, N.A.,* 2014 WL 1389329 at *7 (S.D. Cal. Apr. 9, 2014); *Malta v. Federal Home Loan Mortg. Corp.*, 2013 WL 444619, at *7 (S.D. Cal. Feb. 5, 2013); *Munday v. Navy Federal Credit Union*, 2016 WL 7655807, at *8 (C.D. Cal. Sep. 15, 2016); *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *1 (S.D. Cal. Dec. 15, 2011).

## C. The Extent of Discovery and Status of Proceedings

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, through discovery, Plaintiff has been able to ascertain the precise number of class members, the identity (and contact information) of the class members, the dates of calls to the class members, and the number of times that class members were called. Defendant has also identified the name and functionality of its dialing system, and provided financial records sufficient to ascertain its financial welfare and potential future revenue. Accordingly, Class Counsel has analyzed information that enabled them to assess the likelihood of success on the merits and make as fully-informed of a decision as was possible for any pre-trial settlement.

## D. Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Krivoshey Decl. Ex. 2 (firm resume of Bursor

& Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

## V.  THE COURT SHOULD PROVISIONALLY CERTIFY THE 2016 CALIFORNIA CLASS

Plaintiff moves for the Court to certify the 2016 California Class for settlement purposes.[6] The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  For the reasons below, the 2016 California Class meets the requirements of Rule 23(a) and (b).

Numerosity:  The 2016 California Class is comprised of 1,222 persons, easily satisfying the numerosity requirement under Rule 23(a)(1).  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21.").

Commonality:  Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  *See* Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class members' claims "depend on a common contention," "capable of class-wide resolution … meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met here.  H. Newberg & Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992).  Common issues include whether Defendant's dialing system constitutes an automatic telephone dialing system under the TCPA, whether Defendant used an artificial or prerecorded voice, and whether Defendant had prior express consent to make the calls.  *See* 8/2/17 Memorandum and Order, ECF No. 10 at 7-8 (discussing commonality in context of Certified Class).

---

[6] The Court has already certified the Certified Class on August 3, 2018.  ECF No. 20.  The membership of the Certified Class is 100 percent coextensive with the class the Court certified on August 3, 2018.

1   Typicality:  Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical

2   of the claims … of the class."  *See* Fed. R. Civ. P. 23(a)(3).  In short, to meet the typicality

3   requirement, the representative plaintiffs simply must demonstrate that the members of the

4   settlement class have the same or similar grievances.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

5   161 (1982).  The claims of the named Plaintiff here are typical.  *See* Cortes Decl., ¶ 6.  Like

6   members of the 2016 California Class, Plaintiff alleges he received calls from Defendant made

7   using an autodialer in "early 2016" without his prior express consent.  *See* Amended Class Action

8   Compl., ECF No. 48, at ¶ 1; *id.* ¶ 25.

9   Adequacy:  The final requirement of Rule 23(a) is set forth in subsection (a)(4) which

10   requires that the representative parties "fairly and adequately protect the interests of the class."  *See*

11   Fed. R. Civ. P. 23(a)(4).  A plaintiff will adequately represent the class where: (1) plaintiffs and

12   their counsel do not have conflicts of interests with other class members; and (2) where plaintiffs

13   and their counsel prosecute the action vigorously on behalf of the class.  *See Staton v. Boeing Co.*,

14   327 F.3d 938, 958 (9th Cir. 2003).  Class Counsel have vigorously and competently pursued the

15   Class Members' claims.  Moreover, the named Plaintiffs and Class Counsel have no conflicts of

16   interests with the Class.  *See* Cortes Decl., at ¶¶ 2-6.  *See id.*  Indeed, the Court has already found

17   that Class Counsel is adequate to represent the Certified Class.  *See also* Krivoshey Decl. Ex. 2

18   (firm resume of Bursor & Fisher, P.A.).  Accordingly, Rule 23(a)(4) is satisfied.

19   Predominance:  The proposed Class is well-suited for certification under Rule 23(b)(3)

20   because questions common to the Class Members predominate over questions affecting only

21   individual Class Members.  Predominance exists "[w]hen common questions present a significant

22   aspect of the case and they can be resolved for all members of the class in a single adjudication."

23   *Hanlon*, 150 F.3d at 1022.  As the U.S. Supreme Court has explained, when addressing the

24   propriety of certification of a settlement class, courts take into account the fact that a trial will be

25   unnecessary and that manageability, therefore, is not an issue.  *Amchem Prods., Inc. v. Windsor*,

26   521 U.S. 591, 620 (1997).  In this case, common questions of law and fact exist and predominate

27   over any individual questions, including (in addition to whether this settlement is reasonable (*see*

28

*Hanlon*, 150 F.3d at 1026-27)), *inter alia*:  (1) whether Defendant's dialer constitutes an automatic telephone dialing systems under the TCPA, (2) whether Defendant used an artificial or prerecorded voice, (3) whether Defendant had prior express consent, and (4) availability of damages under the TCPA.  *See* ECF No. 10, at 9 (discussing predominance in certifying Certified Class).

Superiority:  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members.  *See id.*, at 9-10 (discussing superiority prong).  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Moreover, since this action will now settle, the Court need not consider issues of manageability relating to trial.  *See Amchem*, 521 U.S. at 620.  Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

## VI.  THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."   Fed R. Civ. P. Rule 23(e)(1).

When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows Class Members to decide whether to opt out of or participate in the class and/or to object to the Settlement and argue against final approval by the Court.  *Id.*  The proposed notice program here informs the Class of their rights and includes a comprehensive plan for direct notice to virtually every single Class Member, a settlement website, and constitutes the best notice practicable under the circumstances.  *See gen*. Wickersham Decl. ¶¶

6-12.  The Court previously approved notice to the Certified Class on August 3, 2018 by ordering the notice administrator to send a post-card by regular mail and to post the long-form class notice on a dedicated website.  ECF No. 20, at 2.  Plaintiff proposes sending notice to Class Members in the same manner – sending Class Members post-cards and posting a copy of the long-form notice on a dedicated settlement website.  As discussed above, because Defendant has provided contact information for 100 percent of the members of the 2016 California Class, 100 percent of these class members will receive direct notice.  *See* Wickersham Decl. ¶ 8(b).  The post-card and long-form notices are in virtually the same format as approved by the Court on August 3, 2018.  Because the Settlement benefits will be provided automatically – *i.e.*, pro-rated checks will be sent out, and a Debt Waiver applied – there is no need for Class Members to receive or submit any claim forms.

The notice accurately informs Class Members of the terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections and to opt out of the class.  Additionally, the notice provides information on how Class Members can object and opt out of the Class and to send those objections to the Court, information on how Class Members may access the case docket through the Court's Public Access to Court Electronic Records ("PACER"), and the contact information of Class Counsel.  *See* Exs. B &C to the Wickersham Declaration.  The Notice Administrator will also cause to be disseminated the notice to public officials required by the Class Action Fairness Act ("CAFA").  *Id*. ¶ 7.

On August 3, 2018, the Court directed R/G2 to administer the notice to class members following class certification.  ECF No. 20, at 2.  R/G2 followed the Court's instructions and successfully implemented the notice plan.  The Court should again appoint R/G2 as Settlement Administrator, as it has experience with the Class List and administering notice to Class Members.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court grant preliminary approval to the Settlement, provisionally certify the 2016 California Class, approve the proposed notice plan, appointed R/G2 as settlement administrator, and enter the Proposed Preliminary Approval Order in the form submitted herewith.

Dated:  March 23, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      /s/ Yeremey Krivoshey
          Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*