1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                           EASTERN DISTRICT OF CALIFORNIA

10

11   MIKE CORTES, on behalf of himself          No.  2:16-cv-00823-MCE-EFB
     and all others similarly situated,
12
                    Plaintiff,
13                                               **MEMORANDUM AND ORDER**
            v.
14
     NATIONAL CREDIT ADJUSTERS,
15   L.L.C.,

16                  Defendant.

17

18         Plaintiff Mike Cortes ("Plaintiff") brought a class action lawsuit against Defendant

19   National Credit Adjusters, L.L.C. ("Defendant") for violations of the Telephone Consumer

20   Protection Act ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692

21   et seq. ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, Cal.

22   Civ. Code §§ 1788 et seq. ("Rosenthal Act").  Presently before the Court is Plaintiff's

23   Motion for Preliminary Approval of Class Action Settlement, which Defendant does not

24   oppose.  ECF Nos. 49, 52.  For the reasons set forth below, Plaintiff's Motion is

25   GRANTED.[1]

26   ///

27   _____

28         [1] Because oral argument would not be of material assistance, the Court ordered this matter
     submitted on the briefs.  E.D. Local Rule 230(g).

                                            1

1

**BACKGROUND**

2

3

    **A.**    **Class Action Allegations**

4

        Beginning in 2016, Plaintiff alleges that Defendant made at least 25 calls to his

5

cell phone using an autodialer and/or artificial or prerecorded voice.  First Amended

6

Complaint, ECF No. 48, ¶ 1 ("FAC").  These calls occurred almost daily and continued

7

after Plaintiff instructed Defendant to stop calling him.  Id.  Plaintiff claims that he had no

8

contact with Defendant prior to these phone calls, he did not consent to receive such

9

phone calls, and that he never provided his phone number to Defendant.  Id. ¶ 13.

10

Defendant told Plaintiff that the calls were attempts to collect a consumer debt that

11

Plaintiff purportedly owed.  Id. ¶ 15.

12

    **B.**    **Procedural History**

13

        On April 20, 2016, Plaintiff, on behalf of himself and others similarly situated,

14

initiated the present action by filing a Class Action Complaint.  ECF No. 1.  Plaintiff

15

alleges the following causes of action:  (1) Knowing and/or Willful Violations of the

16

TCPA; (2) Violations of the TCPA; (3) Violations of FDCPA; and (4) Violations of the

17

Rosenthal Act.  Defendant was served with the summons and complaint, but it did not

18

file an answer.  ECF No. 4.  On June 8, 2016, Plaintiff moved for an entry of default due

19

to Defendant's failure to timely respond or make an appearance, and the Clerk of the

20

Court entered default the same day.  ECF Nos. 5, 6.

21

        Plaintiff filed a motion for class certification and motion for default judgment in

22

September 2016, both of which were unopposed.  ECF Nos. 7, 8.  On August 2, 2017,

23

the Court granted Plaintiff's motion for class certification, appointed Plaintiff as "Class

24

Representative" and Plaintiff's counsel as "Class Counsel" but granted default judgment

25

on Plaintiff's TCPA claim only.  ECF No. 10.  The Court further held the issue of

26

damages in abeyance and retained jurisdiction to assess damages and supplement the

27

judgment with the appropriate damages amount.  Id. at 12.

28

*///*

1    Plaintiff later filed a Motion for Approval of Notice Plan, Setting Aside Default

2    Judgment for Duration of Notice Period, and Modification of Class Definition.  ECF

3    No. 15.  On August 3, 2018, the Court granted Plaintiff's Motion and certified the

4    following class ("Certified Class"):

5         All persons within the United States who:  (a) are current or
          former subscribers of the Call Management applications;
6         (b) and received one or more calls; (c) on his or her cellular
          telephone line; (d) made by or on behalf of Defendant; (e) for
7         whom Defendant had no record of prior express written
          consent; (f) and such phone call was made with the use of an
8         artificial or prerecorded voice or with the use of an automatic
          telephone dialing system as defined under the TCPA; (g) at
9         any point that begins April 21, 2012 until and including
          August 2, 2017.
10

11   ECF No. 20.  Plaintiff was ordered to "cause a copy of the Post-Card notice to be sent by

12   regular mail to all [identified] Class Members" and "cause a copy of the long-form class

13   notice to be posted on a dedicated website together with links to certain case

14   documents . . ." Id.

15   On August 16, 2018, Defendant appeared in this action for the first time and

16   subsequently filed a Motion to Set Aside Default, Leave to File an Answer and

17   Affirmative Defenses, and to Vacate this Court's August 2, 2017, Order.[2]  ECF Nos. 21–

18   23.  On January 18, 2019, the parties participated in mediation but were unable to reach

19   an agreement.  Krivoshey Decl., ECF No. 49-2, ¶ 11.  The parties eventually executed a

20   binding Term Sheet agreeing to settle the claims on a class basis, but further

21   negotiations were contentious and spanned more than a year.  Id.  The Term Sheet

22   provided that Defendant would (1) create a non-reversionary cash settlement fund of

23   $1,800,000 ("Cash Fund"); (2) waive the debt of all class members who had an existing

24   debt account ("Debt Waiver"), which exceeded $5,000,000; and (3) provide Plaintiff with

25   information to confirm the precise amount of the Debt Waiver.  Id. ¶ 12.

26   ///

27   _____

28        [2] On February 6, 2019, this Court vacated all pretrial deadlines and the hearing date for
     Defendant's Motion pursuant to a stipulation by the parties on grounds that a settlement was reached.
     ECF No. 35.

3

1    In August 2019, Defendant informed Plaintiff that it could only pay a small portion

2    of the Debt Waiver ($1,479,023) because the remaining balance belonged to one of

3    Defendant's affiliates in receivership.  Id. ¶ 13.  As a result, Defendant wanted to modify

4    the terms of the settlement agreement to reflect this change, but Plaintiff declined and

5    requested Defendant provide information regarding the receivership.  Id. ¶¶ 13–14.

6    Defendant failed to provide the requested information and on October 4, 2019, Plaintiff

7    served Defendant with written Requests for Production.  Id. ¶ 15.  A few days later,

8    Defendant contacted Plaintiff's counsel with information that the receivership ended and

9    that the settlement can move forward.  Id.  Eventually, Plaintiff learned that the total

10   amount for the Debt Waiver paid by Defendant would be $3,530,256.64, which still fell

11   below the expected $5,000,000.  Id.

12   The parties continued to negotiate over ways to provide a $5,000,000 Debt

13   Waiver, id. ¶ 16, and on February 20, 2020, the parties stipulated to Plaintiff's filing of the

14   FAC.  ECF No. 47.  Plaintiff filed the FAC on the same day, seeking to certify another

15   class ("2016 California Class") in addition to the Certified Class:[3]

16           All persons (a) in California; (b) called by or on behalf of
             Defendant; (c) between January 1, 2016 through
17           December 31, 2016; (d) regarding a purported debt owed;
             (e) using an artificial or prerecorded voice or an automatic
18           telephone dialing system as defined under the TCPA.

19   FAC ¶ 24.

20           **C.    The Terms of the Class Action Settlement Agreement and Release**

21   Under the terms of the Class Action Settlement Agreement and Release

22   ("Agreement"), executed on March 12, 2020, Defendant "shall pay $1,800,000.00 to

23   settle the Action and obtain a full release from Settlement Class Members of all

24   Released Claims."  Agreement, ECF No. 49-2, ¶ 5.01.  The relevant terms of the

25   Agreement are as follows:

26   _____

27   [3] The 2016 California Class arises from the parties' negotiations to provide a $5,000,000 Debt
     Waiver, which located 1,222 class members with an aggregate debt of $1,466,125.24 owed to Defendant
     and concluding that the collective debt for members of the Certified Class and 2016 California Class was
28   $4,996,125.24.  Krivoshey Decl., ECF No. 49-2, ¶ 16.

4

**"Settlement Costs"** means all costs and expenses incurred in the litigation by Plaintiff, including but not limited to Plaintiff's attorneys' fees, cost of suit, cost of litigation, cost of notice and claims administration, and all other costs and expenses incurred in this Action by Plaintiff or on behalf of himself, and/or the Settlement Class.

. . .

Settlement Class Members will receive a cash payment, the amount of which is dependent upon the Settlement Costs, the service award to the Class Representative, and the number of Settlement Class Members who opt-out [("Cash Fund")]. Settlement Class Members shall be paid on a pro rata basis from the amount remaining in the Settlement Fund after payment of all Settlement Costs and the service award to the Class Representative from the Settlement Fund such that the entirety of the Settlement Fund shall be exhausted.

. . .

Each Settlement Class Member who has an existing debtor account owned by [Defendant] and/or its related or affiliated entities that has an outstanding balance will receive a credit on that account equal to the amount of the outstanding balance, such that the debt of each such Settlement Class Member will be waived (the "Debt Waiver") . . . . The Parties understand and agree that not all Settlement Class Members will be eligible for Debt Waiver – only those class members who have an existing debt account owned by [Defendant] and/or its related or affiliated entities that has an outstanding balance are entitled to the Debt Waiver.  Based on [Defendant]'s records, 3,705 members (out of 3,932) of the Certified Class are eligible to receive the Debt Waiver for a total of $3,530,375.64 in waived debt and all 1,222 members of the 2016 California Class are eligible to receive the Debt Waiver for a total of $1,466,125.24 in waived debt, such that the total, aggregate amount of the Debt Waiver will be $4,996,500.88.

Id. ¶¶ 2.27, 5.02, 5.04.

## STANDARD

A court may certify a class if a plaintiff demonstrates that all of the prerequisites of

Federal Rule of Civil Procedure 23(a) have been met,[4] and that at least one of the

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1    requirements of Rule 23(b) have been met.  <u>See</u> Fed. R. Civ. P. 23; <u>see</u> <u>also</u>

2    <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996).  Before certifying a

3    class, the trial court must conduct a "rigorous analysis" to determine whether the party

4    seeking certification has met the prerequisites of Rule 23.  <u>Id.</u> at 1233.  While the trial

5    court has broad discretion to certify a class, its discretion must be exercised within the

6    framework of Rule 23.  <u>Zinser v. Accufix Research Inst., Inc.</u>, 253 F.3d 1180, 1186

7    (9th Cir. 2001).

8          Rule 23(a) provides four prerequisites that must be satisfied for class certification:

9    (1) the class must be so numerous that joinder of all members is impracticable,

10    (2) questions of law or fact exist that are common to the class, (3) the claims or defenses

11    of the representative parties are typical of the claims or defenses of the class, and

12    (4) the representative parties will fairly and adequately protect the interests of the class.

13    <u>See</u> Fed. R. Civ. P. 23(a).  Rule 23(b) requires a plaintiff to establish one of the

14    following:  (1) that there is a risk of substantial prejudice from separate actions; (2) that

15    declaratory or injunctive relief benefitting the class as a whole would be appropriate; or

16    (3) that common questions of law or fact predominate and the class action is superior to

17    other available methods of adjudication.  <u>See</u> Fed. R. Civ. P. 23(b).

18          For purposes of preliminary approval of class certification and proposed

19    settlement, a district court must evaluate the terms of the settlement to determine

20    whether they are within a range of possible judicial approval.  <u>See</u> <u>Newburg on Class</u>

21    <u>Actions</u> (5th ed. 2019) § 13.10.  The Court will have the opportunity to review evidence

22    that bears on the Rule 23 requirements for class certification and settlement approval at

23    the final approval hearing.  Accordingly, at the final approval hearing, the court may

24    consider the findings on a motion for preliminary approval of a class action settlement,

25    should additional information come to light that bears on whether the proposed

26    settlement satisfies the Rule 23 requirements.

27    ///

28    ///

**ANALYSIS**

### A.      Settlement Class Meets the Requirements of Rule 23(a)[5]

Plaintiff seeks the certification of an additional class, the 2016 California Class, for settlement purposes, and the Court must assess whether the proposed class meets the requirements of Rule 23(a).  Although Defendant does not oppose Plaintiff's Motion, in assessing whether Plaintiff's proposed settlement class fulfills the prerequisites under Rule 23(a), a court must fully examine the class according to the elements of numerosity, commonality, typicality, and adequacy of representation.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Where the parties have entered into a settlement agreement before class certification, district courts "must pay 'undiluted, even heightened, attention' to class certification requirements . . . ."  Id. (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620 (1997)).

Under Rule 23(a)(1), numerosity requires that the class be "so numerous that joinder of all members is impractical."  Although "no specific minimum number of plaintiffs asserted" is required to obtain class certification, "a proposed class of at least forty members presumptively satisfies the numerosity requirement."  Nguyen v. Radient Pharmaceuticals Corp., 287 F.R.D. 563, 569 (C.D. Cal. 2012).  Here, the class consists of 1,222 members dispersed throughout California.  Accordingly, the numerosity requirement of Rule 23(a)(1) is satisfied.

Under Rule 23(a)(2), the requirement of commonality is satisfied if "there are questions of law or fact common to the class."  This requirement is construed permissively and can be satisfied upon a finding of "shared legal issues with divergent factual predicates . . . ."  Hanlon, 150 F.3d at 1019.  Here, the case presents the common legal issue of whether Defendant used an autodialing system or artificial or prerecorded voice message to make unsolicited calls regarding a purported debt.  This

---

[5] The Court takes note of its prior Order which found the Certified Class met the certification requirements of Rules 23(a) and (b).  See ECF No. 20.  For the reasons outlined in that Order, the Certified Class remains certified for settlement purposes.

1  issue is common to all putative class members and thus, the commonality requirement is

2  met.

3      The typicality requirement of Rule 23(a)(3) is satisfied if the claims of the

4  representative parties are typical of the claims of the class.  Typicality is met where the

5  requisite claims "share a common issue of law or fact and are sufficiently parallel to

6  insure a vigorous and full presentation of all claims for relief."  Cal. Rural Legal

7  Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1175 (9th Cir. 1990).  Claims are

8  not required to be identical.  Hanlon, 150 F.3d at 1020.  Here, Plaintiff asserts the same

9  claims that could be brought by any of the other class members, specifically that

10  Defendant used an autodialing system or artificial or prerecorded voice message to

11  make unsolicited calls regarding a purported debt.  Therefore, the typicality requirement

12  is satisfied.

13      Under Rule 23(a)(4), Plaintiff must prove that "the representative parties will fairly

14  and adequately protect the interests of the class."  In Hanlon, the Ninth Circuit listed the

15  factors necessary to establish adequate representation:  (1) the named plaintiffs and

16  their counsel must not "have any conflicts of interest with other class members," and

17  (2) must show they will "prosecute the action vigorously on behalf of the class."

18  150 F.3d at 1020.  Not only did this Court previously find Class Counsel adequate to

19  represent the Certified Class, see ECF No. 10, at 8–9, but Class Counsel has actively

20  prosecuted this action and has been shown to have significant class action experience.

21  See Krivsohey Decl., ECF No. 49-2.  Accordingly, Plaintiff has properly established

22  adequacy of representation required under Rule 23(a)(4).

23      Plaintiff has established facts sufficient to meet the four factors of Rule 23(a).

24  This Court must now examine whether the circumstances of the litigation meet the

25  requirements of the second hurdle to settlement class certification set by Rule 23(b).

26      **B.      Settlement Class Meets the Requirements of Rule 23(b)**

27      As noted above, Rule 23(b) requires a plaintiff to establish one of three

28  independent conditions.  In the instant case, Plaintiff asserts that the 2016 California

1  Class qualifies under Rule 23(b)(3), which requires that common questions of law or fact

2  predominate over any individual claims and that the class action is superior to other

3  available methods of adjudication.  See Fed. R. Civ. P. 23(b).

4          The predominance analysis under Rule 23(b)(3) asks whether the settlement

5  class is "sufficiently cohesive to warrant adjudication by representation."  A finding of a

6  "common nucleus of facts and potential legal remedies" is sufficient to establish

7  predominance.  Hanlon, 150 F.3d at 1022.  Moreover, the consolidation of litigants with a

8  common, predominant issue achieves judicial economy, a policy implicit in the

9  requirement.  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

10  Here, the predominant issue common to all class members is whether Defendant used

11  an autodialing system or artificial or prerecorded voice message to make unsolicited

12  calls regarding a purported debt in violation of the TCPA.  Thus, any individualized

13  factual questions are predominated by the common question of Defendant's general

14  TCPA liability.

15          The superiority element of Rule 23(b)(3) requires Plaintiff to establish that the

16  proposed class action is superior to other alternative methods of resolving the dispute.

17  Moreover, Rule 23(b)(3) contains a list of factors to consider in determining superiority,

18  and each of the relevant factors are met in this case.  See Fed. R. Civ. P. 23(b)(3).  First,

19  because common issues predominate, class certification serves the judicial economy

20  function of Rule 23 class actions.  Valentino, 97 F.3d at 1234.  Furthermore, when the

21  parties have agreed on a proposed settlement, as here, it is desirable to concentrate the

22  litigation into one forum.  Elkins v. Equitable Life Ins. Co. of Iowa, No. 96-296-CIV-T-MB,

23  1998 WL 133741, at *20 (M.D. Fla. Jan. 28, 1998).  Given the numerous class members

24  and the common issue of Defendant's TCPA liability, a class action is the superior

25  method to resolve the current dispute.

26          Because Plaintiff has established facts sufficient to meet the requirements of

27  Rule 23(a) and (b), he has satisfied the elements essential to settlement class

28  ///

1   certification for the 2016 California Class.[6]  However, Rule 23 also requires the proposed

2   settlement meet the notice requirements of Rule 23(c)(2)(B) and the fairness

3   requirements of Rule 23(e).

4          **C.    Settlement Meets the Notice Requirements of Rule 23(c)(2)(B)**

5          Under Rule 23(e)(1), notice of the proposed settlement must be provided to all

6   class members before a final approval of a class action settlement may issue.  Where a

7   class is certified under Rule 23(b)(3), the notice must meet the requirements of

8   Rule 23(c)(2)(B), which requires the "best notice . . . practicable under the

9   circumstances . . . to all members who can be identified through reasonable effort."  See

10  Fed. R. Civ. P. 23(c)(2)(B).  However, actual notice is not required under

11  Rule 23(c)(2)(B).  See Silber v. Mabon, 18 F.3d 1449, 1454 (9th Cir. 1994).

12  Rule 23(c)(2)(B) requires that the notice must state in clear, concise, plain, and easily

13  understood language:  (1) the nature of the action; (2) the definition of the class certified;

14  (3) the class claims, issues, or defenses; (4) that a class member may enter an

15  appearance through an attorney if the member so desires; (5) that the court will exclude

16  from the class any member who requests exclusion; (6) the time and manner for

17  requesting exclusion; and (7) the binding effect of a class judgment on members under

18  Rule 23(c).

19         Here, the parties propose to send notice to members of the Settlement Class in

20  the same manner previously approved by the Court:  mailing post-card notices to class

21  members and posting the long-form class notice on a dedicated settlement website.

22  Agreement, ECF No. 49-2, ¶¶ 8.02, 8.04, 8.05.  The proposed notice includes the terms

23  of the Agreement, the scope of the classes involved, the claims against Defendant, and

24  information on how class members may enter an appearance through counsel.  Exs. B

25  and C, Wickersham Decl., ECF No. 49-4.  The proposed notice also tells class members

26  how to exercise their rights under the Agreement and informs class members that they

27

28         [6] Having certified both the Certified Class and 2016 California Class, these classes will collectively be referred to as the "Settlement Class."

1  can opt out and the settlement will not be binding on them.  Id.  It includes information

2  about Plaintiff's counsel's application for attorney's fees and costs as well.  Id.  Finally,

3  the parties have selected R/G2 Claims Administration, LLC ("R/G2") to serve as claims

4  administrator.  Agreement, ECF No. 49-2, ¶ 2.04.  This proposed notice plan is the best

5  practicable means available under the circumstances and is reasonably calculated to

6  provide notice to class members.  Accordingly, the Agreement satisfies the

7  Rule 23(c)(2)(B) notice requirements.

8       **D.**    **Settlement Meets the Requirements of Rule 23(e)**

9       Rule 23(e) "requires the district court to determine whether a proposed settlement

10  is fundamentally fair, adequate, and reasonable."  Hanlon v. Chrysler Corp., 150 F.3d

11  1011, 1026 (9th Cir. 1998).  Towards this end, the Ninth Circuit has provided a non-

12  exhaustive list of fairness factors for district courts to analyze, but the weight given to

13  each factor varies based on the unique circumstances in each case.  Officers for

14  Justice v. Civil Service Com'n of City and Cty. of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

15  The factors may include:  (1) the strength of the plaintiffs' case; (2) the risk, expense,

16  complexity, and likely duration of further litigation; (3) the risk of maintaining class action

17  status throughout the trial; (4) the amount offered in settlement; (5) the extent of

18  discovery completed and the stage of the proceedings; (6) the experience and views of

19  counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

20  members to the proposed settlement.  Id.  The Ninth Circuit has made clear that these

21  factors are not an "exhaustive list of relevant considerations" and that "[t]he relative

22  degree of importance to be attached to any particular factor will depend upon . . . the

23  unique facts and circumstances presented by each individual case."  Id.  Further, a

24  settlement agreement must not be "the product of fraud or overreaching by, or collusion

25  between, the negotiating parties."  Id.

26       Here, the Agreement is proposed after approximately a year of arms-length and

27  adversarial negotiation, during which time an impartial mediator helped the parties obtain

28  a compromise that both parties find satisfactory.  The Agreement accounts for the

1   expense, delay, and uncertainty that a trial would necessarily entail, especially given that

2   Defendant is unlikely to withstand greater liability than the proposed settlement amount.

3   See Mem. ISO Mot. Prelim. Approval, ECF No. 49-1, at 13 (discussing that Plaintiff

4   originally sought more than $12,000,000 in damages and that the Agreement seeks

5   around 50% of that amount).

6        The Agreement provides for a total settlement amount of $6,796,500.88, which

7   consists of the Cash Fund of $1,800,000 and the Debt Waiver of $4,996,500.88.

8   Regarding the Cash Fund, once attorneys' fees, expenses and costs, notice and

9   administrative expenses, and Plaintiff's incentive award have been deducted, the

10  remaining balance will be distributed to the Settlement Class members on a pro rata

11  basis.  Pl.'s Mem. ISO Mot. Prelim. Approval, ECF No. 49-1, at 13–14.  This means that

12  between 5,154 Settlement Class members, each member may receive approximately

13  $141.  Id. at 14; see also Pl.'s Supp. Briefing, ECF No. 54, at 2.  As for the Debt Waiver,

14  which 4,927 Settlement Class members are eligible to receive, each member will receive

15  approximately $1,104 in addition to the Cash Fund award.  Id.  Finally, these awards will

16  be automatic and Settlement Class members do not need to submit claims to receive

17  their awards.  Pl.'s Mem. ISO Mot. Prelim. Approval, ECF No. 49-1, at 14.

18       Also weighing in favor of preliminary approval of the settlement is that Class

19  Counsel is experienced in consumer class action litigation.  See Hanlon, 150 F.3d at

20  1026.  Class Counsel has provided adequate support showing that it is competent and

21  experienced in dealing with a variety of class actions.  See Ex. 2, Krivoshey Decl., ECF

22  No. 49-2.  Moreover, Defendant has denied liability on all causes of action, and has

23  agreed to class certification for settlement purposes only.  Should the proposed

24  settlement be dismissed, it is probable that protracted litigation over class certification,

25  discovery, and the actual claims at issue would commence.  See Agreement, ECF

26  No. 49-2, ¶ 3.01; Pl.'s Mem. ISO Mot. Prelim. Approval, ECF No. 49-1, at 12:15–16 ("If

27  the Court's default judgment and class certification orders were set aside, Plaintiff would

28  have effectively had to start the case over from scratch after more than two years of

12

1    litigation.").  These considerations also weigh in favor of finding that the Agreement is

2    fair, adequate, and reasonable.

3            Accordingly, for purposes of preliminary approval, the Court is satisfied that the

4    terms of the proposed settlement are fair, adequate, and reasonable.  The finding will be

5    further reviewed for fairness, and evidence of overreaching and/or collusion, following

6    appropriate notice to the class members and a final approval hearing.

7            **E.      Attorneys' Fees**[7]

8            Where the payment of attorneys' fees is part of the negotiated settlement, the fee

9    settlement must be evaluated for fairness in the context of the overall settlement.

10   Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002).  Courts must ensure

11   that the attorneys' fees awarded in a class action settlement are reasonable, even if the

12   parties have already agreed on an amount.  In re Bluetooth Headset Prods. Liability

13   Litig., 654 F.3d 935, 941 (9th Cir. 2011).

14          In a common fund case, like the present action, the Court has discretion to award

15   attorneys' fees according to the percentage-of-the-fund method or the lodestar method.

16   Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Under the percentage-

17   of-the-fund method, the prevailing attorneys are awarded a percentage of the common

18   fund recovered for the class.  Id.  In applying this method, courts typically set a

19   benchmark of 25% of the fund as a reasonable fee award and justify any increase or

20   decrease from this amount based on circumstances in the record.  Six (6) Mexican

21   Workers v. Az. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 2000).  Factors influencing

22   whether a percentage method is appropriate include the results achieved, the risks of

23   litigation, the contingent nature of the fee, and a showing of standard fees for similar

24   litigation.  Vizcaino, 290 F.3d at 1048–50.  The lodestar method, multiplying the number

25   of reasonable hours worked by a reasonable rate, may also be used as a cross-check on

26          _____

27          [7] Plaintiff provided supplemental briefing on the issue of attorneys' fees, costs, expenses, and
     incentive award pursuant to the Court's Order.  ECF Nos. 53, 54.  While Plaintiff provided estimated dollar
     amounts on each of these requests, he reiterates that these amounts are not final and will be discussed
28   more thoroughly in his forthcoming motion for an award of attorneys' fees, costs and expenses, and
     incentive award.  Pl.'s Supp. Briefing, ECF No. 54, at 4.

1  the reasonableness of fees awarded through a percentage method.  Vizcaino, 290 F.3d

2  at 1050–51.

3      Here, Class Counsel uses the percentage method and asks the Court to consider

4  the reasonableness of the estimated attorneys' fees in relation to the combined sum of

5  the Cash Fund and Debt Waiver.  Pl.'s Supp. Briefing, ECF No. 54, at 4.  Under this

6  method, Class Counsel proposes an estimated award of $1,019,475.13 in attorneys'

7  fees to be deducted from the $1,800,000 Cash Fund, which equates to around 15% of

8  the total settlement award of $6,769,500.88.  First, such an award is consistent with the

9  Ninth Circuit's benchmark amount of 25% under the percentage-of-the-fund method.

10  Moreover, Plaintiff's counsel brought this case on a contingency-fee basis, which in itself

11  presented considerable risk.  See Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D.

12  482, 492 (E.D. Cal. 2010).  Finally, the risks of litigation were increased given that

13  Defendant initially defaulted and is unlikely to withstand greater liability.  While the Court

14  will revisit the matter at the final approval hearing, at present the proposal appears fair

15  and reasonable for purposes of preliminary approval.

16      Plaintiff's request for an incentive award in the amount of $2,000 also appears

17  reasonable.  To determine the propriety of incentive awards to named plaintiffs, a district

18  court should consider the actions protecting class interests, the benefit provided to the

19  class based on those actions, and the amount of time and effort expended by the

20  plaintiff.  Staton v. Boeing Co., 327 F.3d 938, 961 (9th Cir. 2003) (citing Cook v. Niedert,

21  142 F.3d 1004, 1016 (7th Cir. 1998)).  Here, Plaintiff's actions in bringing the case and

22  participating in the litigation resulted in a settlement that, if approved, will provide

23  monetary relief to the Settlement Class Members.  Further, Plaintiff's requested award

24  constitutes about 0.03% of the total Settlement Award and compared to the $1,386

25  estimated award most class members will receive, such a reward seems fair.  The

26  requested payment appears reasonable in light of Plaintiff's efforts, however the Court

27  will revisit this preliminary finding following the final approval hearing.

28  ///

14

**CONCLUSION**

Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 49, is GRANTED.

The Court hereby certifies the Settlement Class preliminarily and solely for purposes of the settlement. The Settlement Class consists of the following two subclasses:

> Certified Class:   All persons within the United States who: (a) are current or former subscribers of the Call Management applications; (b) and received one or more calls; (c) on his or her cellular telephone line; (d) made by or on behalf of Defendant; (e) for whom Defendant had no record of prior express written consent; (f) and such phone call was made with the use of an artificial or prerecorded voice or with the use of an automatic telephone dialing system as defined under the TCPA; (g) at any point that begins April 21, 2012 until and including August 2, 2017.

> 2016 California Class:  All persons (a) in California; (b) called by or on behalf of Defendant; (c) between January 1, 2016 through December 31, 2016; (d) regarding a purported debt owed; (e) using an artificial or prerecorded voice or an automatic telephone dialing system as defined under the TCPA.

The Court hereby appoints Plaintiff as Class Representative and Burton & Fisher P.A. as Class Counsel.

The Court hereby appoints R/G2 Claims Administration, LLC as the Claims Administrator pursuant to the Agreement.

The Court hereby approves the proposed notice plan as set forth above and in the Agreement.  The Claims Administrator shall within fourteen (14) days following the entry of this Order activate the settlement website and provide direct notice to the Settlement Class members in accordance with the Agreement.

Settlement Class members who wish to exclude themselves from the Settlement Class may submit a request for exclusion by sending a written request to the Claims Administrator within sixty (60) days of the dissemination of the notice ("Opt-Out Deadline").  Any Settlement Class member who submits a valid and timely request for

exclusion:  (1) shall not be bound by the terms of the settlement or by the final approval order; (2) shall be deemed to have waived any rights or benefits under the settlement; and (3) may not file an objection to the settlement.  However, any Settlement Class member who fails to submit a valid and timely request for exclusion shall be bound by all terms of the settlement, the Court's Order granting class certification for settlement purposes, and the final approval order, regardless of whether he or she has requested exclusion from the Settlement Class.

Any class member who does not submit a timely request for exclusion from the settlement may appear at the final approval hearing in person or by his or her own attorney and object to the Agreement, the application of an award of attorney's fees and costs, or the application for an incentive award.  To be considered at the hearing, comments or objections from class members must be filed with the Court, and mailed to Class Counsel and Defendant's counsel, not later than sixty (60) days after the Claims Administrator mails the class notice ("Objection Deadline").

The deadline for Plaintiff to file and serve its motion for final approval and notice a date for a final approval hearing, as well as Class Counsel's motion for fees, costs and incentive award, shall be at least twenty-one (21) days before the Objection Deadline. The deadline for the parties to file and serve any response to any timely objections shall be fourteen (14) days after the Objection Deadline.

A final approval hearing will be held to determine whether the settlement should be granted final approval as fair, reasonable, and adequate.  At the final approval hearing, the Court will hear any further evidence and argument necessary to evaluate the settlement and whether to award payment of attorneys' fees, costs, and expenses to Class Counsel, and whether to award payment of the requested incentive award.

///

///

///

///

1          The Court reserves the right to continue the date of the final approval hearing

2    without further notice to class members.

3          IT IS SO ORDERED.

4    Dated:  July 6, 2020

5

6    _____
     MORRISON C. ENGLAND, JR.
7    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28