1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:    ltfisher@bursor.com
            ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE CORTES, on Behalf of Himself and all Others Similarly Situated,<br><br>                         Plaintiff,<br>    v.<br><br>NATIONAL CREDIT ADJUSTERS, L.L.C.,<br><br>                   Defendant. | Case No.  2:16-cv-00823-MCE-EFB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND ENTRY OF FINAL JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: October 29, 2020<br>Time: 2:00 p.m.<br>Courtroom: 7<br><br>Hon. Morrison C. England, Jr. |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 29, 2020 at 2:00 p.m. before Morrison C. England, United States District Court Judge for the Eastern District of California, 501 I Street, 14th Floor, Sacramento, California 95814, Plaintiff Mike Cortes, by and through the undersigned counsel of record, will move and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for entry of the [Proposed] Order Approving Class Action Settlement ("Final Approval Order") and entry of the [Proposed] Final Judgment.

This motion is based on: (1) this notice of motion and memorandum of points and authorities; (2) the Declaration of Yeremey Krivoshey[1]; (3) and the Declaration of Dana Boub on Behalf of Settlement Administrator RG/2 Claims Administration, (4) the papers and pleadings on file, and (5) other written and oral arguments that may be presented to the Court.

Dated:  August 28, 2020

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____/s/ Yeremey Krivoshey_____
          Yeremey Krivoshey

L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
              ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*

---

[1] Plaintiff submits the Declaration of Yeremey Krivoshey in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Expenses, and Service award, filed concurrently herewith, as being in support of the present motion as well.  For the sake of efficiency, the Krivoshey Declaration has not been filed twice.

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION.................................................................................................... 1

II.  TERMS OF THE SETTLEMENT ........................................................................ 2

    A.   Monetary Relief For Class........................................................................ 2

    B.   Payment Of Attorney's Fees And Expenses ............................................. 4

    C.   Compensation For The Class Representative............................................. 4

    D.   Payment Of Notice And Administration Fees ........................................... 5

III. THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS ......... 5

IV.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS........................................ 6

V.   THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE CLASS MEMBER RESPONSE HAS BEEN ENTIRELY POSITIVE ..................... 7

VI.  THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE ........... 8

    A.   The Settlement Was The Product Of Serious, Informed Litigation And Non-Collusive Negotiations.......................................................................... 8

    B.   Strength Of Plaintiff's Case And Risk Of Continuing Litigation ................... 9

    C.   Extent Of Discovery And Status Of Proceedings.......................................... 12

    D.   The Settlement Provides Exceptional Relief For The Class ......................... 12

    E.   The Response Of Class Members Has Been Universally Positive................. 13

    F.   The View Of Experienced Counsel Support Approving This Settlement..................... 14

VII. CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 7

*Blair v. CBE Grp., Inc.*,
  309 F.R.D. 621 (S.D. Cal. 2015) ................................................................. 1, 11

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................. 6

*Charvat v. Travel Servs.*,
  2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ........................................................ 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................ 6

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
  100 F.3d 1041 (1st Cir. 1996) ........................................................................... 8

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .......................................................................... 6

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015) ......................................................... 13

*Falk v. Allen*,
  739 F.2d 461 (9th Cir. 1984) .......................................................................... 10

*Fernandez v. Victoria Secret Stores, LLC*,
  2008 WL 8150856 (C.D. Cal. July 21, 2008) .................................................. 9

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................ 9

*Gehrich v. Chase Bank USA, N.A.*,
  316 F.R.D. 215 (N.D. Ill. 2016) ..................................................................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 5, 6

*Hashw v. Dep't Stores Nat'l Bank*,
  182 F. Supp. 3d 935 (D. Minn. 2016) ............................................................ 13

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................ 12

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................. 6, 7, 8, 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................ 14

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ....................................................................... 1, 13

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ........................................................................... 5, 6, 9

*Retta v. Millennium Prods., Inc.*,
  2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ......................................................... 8

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................................... 5, 9, 14

*Rose v. Bank of Am. Corp.*,
  2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................................................... 13

*Ross v. Trex Co., Inc.*,
  2013 WL 6622919 (N.D. Cal. 2013) ...................................................................... 9

*Versteeg v. Bennett, Deloney & Noyes, P.C.*,
  271 F.R.D. 668 (D. Wyo. 2011) ...................................................................... 1, 2, 3, 4

*Whitaker v. Bennett Law, PLLC*,
  2015 WL 12434306 (S.D. Cal. Jan. 26, 2015) ....................................................... 10

*Wright v. Nationstar Mortgage LLC*,
  2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................ 13

**STATUTES**

28 U.S.C. § 1715 ................................................................................................... 8

**RULES**

Fed. R. Civ. P. 23 ....................................................................................................................Passim

Fed. R. Civ. P. 55 ....................................................................................................................... 10

Plaintiff Mike Cortes ("Plaintiff" or "Class Representative") respectfully submits this memorandum in support of Plaintiff's Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Entry of Final Judgment.

## I.   INTRODUCTION

On July 6, 2020, the Court granted preliminary approval of the parties' Settlement Agreement and ordered that the Claims Administrator execute the approved Notice Plan.  ECF No. 55.  Since that time, the Claims Administrator has distributed direct notice and set up the settlement website.  Declaration of Dana Boub on Behalf of Settlement Administrator RG/2 Claims Administration, ¶¶ 5-8 (the "Boub Declaration").  No Class Members have opted out, or objected to the Settlement.  *Id*. ¶¶ 9, 10.

Simply put, the Settlement provides some of the most outstanding results ever in a Telephone Consumer Protection Act case, or any consumer class action settlement for that matter. As discussed extensively in Plaintiff's motion for preliminary approval, and herein, Class Members are set to receive roughly $1,155 in benefits *per person* - $141 in cash, and $1,014 in waived debt. Historically, where plaintiffs in TCPA cases were successful enough to receive any compensation for class members at all, class members were virtually universally limited to *well under* $100 per person.  *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class actions) (omitting quotation marks and citations).  But this was not just any TCPA class action.  Here, Plaintiff succeeded in obtaining an outstanding result against a debt collector (as opposed to a telemarketer), which have traditionally been virtually immune to TCPA class actions.  *See, e.g., Blair v. CBE Grp., Inc*., 309 F.R.D. 621, 630 (S.D. Cal. 2015) ("Courts have recognized that similar TCPA actions involving debt collections require extensive individual fact inquiries into whether each individual gave 'express consent' by providing their wireless number to the creditor during the transaction that resulted in the debt owed.") (quotations omitted); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) ("This will require an individual review of loan documents and other files related to the underlying debt obligation. These questions require individual inquiries

that would predominate over the class action.").  And, even more extraordinarily, Plaintiff

succeeded despite the fact that Defendant defaulted and did not appear in the action for over two

years after the litigation began.  The amount of relief obtained through this Settlement, in this

context, is unprecedented.

For the same reasons as recited in the Court's Order granting preliminary approval, and for

the additional reasons stated herein, the Court should now grant Final Approval to the Settlement

and enter Final Judgment.

## II.    TERMS OF THE SETTLEMENT

### A.    Monetary Relief For Class

The Settlement Agreement states that Defendant shall pay $1,800,000 into a non-

reversionary fund to pay for the settlement of all claims in this action, including the costs of notice

and administration, any attorney's fees, costs, and expenses, and incentive award for the Plaintiff.

*See* Settlement ¶ 2.28.  After accounting for notice costs, attorney's fees and expenses, and

incentive award, Settlement Class Members[2] will receive cash payments on a *pro rata* basis from

the amount remaining in the Settlement Fund, such that the entirety of the Settlement Fund shall be

exhausted.  *Id*. ¶ 5.02.  Critically, because the parties are in possession of contact information for

virtually every single Settlement Class Member, Class Members did not have to submit claims to

receive a benefit – they will receive a *pro rata* share of the Settlement *automatically*.  *Id*. ¶ 5.03.

Further, all Settlement Class Members who have an existing debtor account owned by NCA

that have an outstanding balance will receive a credit on that account equal to the amount of the

outstanding balance, such that the debt of each such Settlement Class Member will be waived (the

"Debt Waiver").  *Id*. ¶ 5.04.  4,927 out of 5,154 Settlement Class Members are eligible to receive

the Debt Waiver (the remaining 227 class members do not have any outstanding debt but will still

receive the cash award).  *Id*.  The aggregate amount of the Debt Waiver will be $4,996,500.88, or

---

[2] The Settlement Agreement is attached as Exhibit 1 to the March 23, 2020 Declaration of Yeremey Krivoshey in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 49-2.  All capitalized terms not otherwise defined herein shall have the same definitions as set out in the Settlement Agreement.

an average of $1,014 *per person*.  *Id.*  As with the cash award, Settlement Class Members eligible for the Debt Waiver will receive it *automatically* – they did not need to submit claims.  *See id*.

The actual amount of *cash* that Settlement Class Members are set to receive depends on the amount of attorney's fees, costs and expenses, service award, and costs of notice and administration approved by the Court, as Settlement Class Members will receive the remainder of any amount left over after deducting the foregoing from the $1,800,000 non-reversionary fund. *See* Settlement ¶ 6.03 (approval of Settlement not dependent on Court's approval of attorneys' fees, costs, and expenses and the incentive award).  Settlement Class Members will receive the full value of the $4,996,500.88 Debt Waiver irrespective of any award of attorney's fees, costs and expenses, service award, and costs of notice and administration.  *See id*.  The Debt Waiver will be paid *in addition* to any cash awarded under the Settlement.

Although the final, precise dollar amounts of attorney's fees, costs and expenses, service award, and costs of notice and administration are yet to be determined (as they depend on Court approval), Plaintiff provides the following figures as his best estimate of each:[3]

| Attorneys' fees | **15%** of the combined $6,796,500.88 Settlement, or **$1,019,475.13** |
|---|---|
| Costs and Expenses | **$17,658.93** in reasonable costs and expenses |
| Incentive Award | **$2,000** |
| Costs of Notice and Admin. | **~$31,000** in cost of notice and administration[4] |
| Total | **$1,070,134.06** |

As discussed herein, assuming the Court awards each of the above figures in full, Settlement Class Members will receive approximately $141.61 per person in cash, plus an average of $1,014 in Debt Waiver per person, for a total of $1,155 per person.  To calculate the expected *pro rata* cash award

---

[3] These same figures were proposed by Plaintiff at preliminary approval, and were, accordingly, reviewed by the Court prior to granting preliminary approval.  *See* Plaintiff's Supplemental Memorandum in Support of Motion for Preliminary Approval of Settlement, ECF No. 54, at 2; July 7, 2020 Memorandum and Order, ECF No. 55, at 12.  The sole difference is that Plaintiff is seeking less expenses than anticipated at preliminary approval - $17,658.93 vs an estimated $20,000 at preliminary approval.

[4] The Settlement Administrator currently estimates that the final cost will be $30,948.  *See* Boub Decl. ¶ 11.

1    for each Settlement Class Member, the Court need merely subtract $1,070,134.06 from the

2    $1,800,000 cash fund, and divide the remainder by 5,154 (the number of Settlement Class

3    Members).

4        **B.       Payment Of Attorney's Fees And Expenses**

5            The Settlement permits Class Counsel to seek fees, costs, and expenses to be paid from the

6    $1,800,000 Settlement Fund.  *See* Settlement ¶¶ 2.28, 6.01.  As addressed in Plaintiff's Motion for

7    Attorneys' Fees, Expenses, and Service Award, filed herewith, Plaintiff seeks only 15% of the

8    $6,769,500.88 million provided by the Settlement, or $1,019,475.13, far below the Ninth Circuit's

9    25% benchmark.  In granting preliminary approval, the Court noted that Plaintiff's request of

10   $1,019,475.13 "appears fair and reasonable" and is "consistent with the Ninth Circuit's benchmark

11   amount of 25% under the percentage-of-the-fund method."  *See* ECF No. 55, at 14.  The Court also

12   noted that the amount is fair because "Plaintiff's counsel brought this case on a contingency-fee

13   basis, which in itself presented considerable risk," and, further, that "the risks of litigation were

14   increased given that Defendant initially defaulted and is unlikely to withstand greater liability."

15   *See id*.  Each of these remains true today, as addressed in Plaintiff's Motion for Attorneys' Fees,

16   Expenses, and Service Award, and supports a finding that the Settlement is fair and reasonable.

17           The Settlement also provides that Plaintiff may seek reasonable costs and expenses to be

18   paid out of the $1,800,000 Settlement Fund.  *See* Settlement ¶¶ 2.28, 6.01.  At preliminary

19   approval, Plaintiff estimated that he would seek up to $20,000 in costs and expenses.  *See* ECF No.

20   54, at 4-5.  Here, Plaintiff seeks only $17,658.93 in reasonable costs and expenses.  Considering

21   that Plaintiff had to retain two experts, and already has fronted the costs of the initial class notice

22   provided after class certification, total expenses of only $17,658.93 is very reasonable and shows

23   Class Counsel's diligence in securing favorable rates for the Class.

24       **C.       Compensation For The Class Representative**

25           The Settlement provides that Plaintiff may seek up to $2,000 to be paid out of the

26   $1,800,000 Settlement Fund as an Incentive Award (referred to herein as a "service" award,

27   interchangeably) for his time and effort he personally invested in this Action.  *See* Settlement ¶

28

6.02.  Here, the requested amount of $2,000 for the Plaintiff is appropriate to compensate him for his years of efforts in bringing and maintaining this action for the benefit of Settlement Class Members.  *See* Declaration of Mike Cortes in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 49-3; Settlement ¶ 6.02.  Without Plaintiff's efforts, Settlement Class Members would have received nothing at all.  The requested award is less than .03% of the $6.8 million settlement, and is inherently reasonable.

### D.     Payment Of Notice And Administration Fees

The Settlement provides that settlement notice and administration costs are to be paid out of the $1,800,000 cash fund.  Settlement ¶ 9.02.  Although the full notice and administration costs have not yet been expended (as the Settlement has not yet been approved, and the costs of sending out checks to the class have not yet been incurred), RG/2 Claim Administration LLC (the parties' selected notice and settlement administrator) estimates that the full cost of notice and settlement administration will be $30,948.  Boub Decl. ¶ 11.

## III.    THE STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

"The claims, issues, or defenses of a certified class may be settled … only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  To assess whether a proposed settlement comports with Rule 23(e), a district court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  No single factor is the "most significant."

*Officers for Justice*, 688 F.2d at 625.  In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e).  *Hanlon*, 150 F.3d at 1025.

In evaluating the fairness of a class action settlement, courts are mindful that the law favors the compromise and settlement of class action suits.  *See, e.g.*, *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations by capable and experienced counsel."  *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).  Where, as here, the settlement negotiations were conducted at arm's-length by experienced class action counsel, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon counsel's assessment and judgment.  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); ECF No. 55, at 11 (this Court noting that the present Settlement "is proposed after approximately a year of arms-length and adversarial negotiation, during which time an impartial mediator helped the parties obtain a compromise that both parties find satisfactory").  Indeed, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  Ultimately, however, the decision to approve a settlement is committed to the sound discretion of the trial judge.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  In assessing those class certification

requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

At preliminary approval, the Court certified the following Settlement Class, consisting of two subclasses:

> <u>Certified Class</u>: All persons within the United States who: (a) are current or former subscribers of the Call Management applications; (b) and received one or more calls; (c) on his or her cellular telephone line; (d) made by or on behalf of Defendant; (e) for whom Defendant had no record of prior express written consent; (f) and such phone call was made with the use of an artificial or prerecorded voice or with the use of an automatic telephone dialing system as defined under the TCPA; (g) at any point that begins April 21, 2012 until and including August 2, 2017.

> <u>2016 California Class</u>: All persons (a) in California; (b) called by or on behalf of Defendant; (c) between January 1, 2016 through December 31, 2016; (d) regarding a purported debt owed; (e) using an artificial or prerecorded voice or an automatic telephone dialing system as defined under the TCPA.

ECF No. 55, at 15. The Court noted that the Settlement Class, and each of the subclasses, met the requirements of Rule 23(a) and Rule 23(b). *See id.* at 7-10. Notably, no objections have challenged that conclusion. The Court may rely on the same rationale as explained in its Order to find that class certification is appropriate under Fed. R. Civ. P. 23(a) and (b) in connection with final approval. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *3 (N.D. Cal. Mar. 18, 2013) ("Because the Objections do not appear to raise a viable challenge to th[e] conclusion [that certification of a settlement class is appropriate], the Court will rely on the rationale for class certification as explained in the Preliminary Approval Order.").

## V. THE SETTLEMENT NOTICE PROGRAM HAS BEEN COMPLETED AND THE CLASS MEMBER RESPONSE HAS BEEN ENTIRELY POSITIVE

In its July 6, 2020 Order granting preliminary approval, the Court reviewed the Settlement's proposed method for providing notice, appointed R/G2 Claims Administration, LLC as the Claims Administrator, and ordered that the Claims Administrator activate the settlement website and provide notice. *See* ECF No. 55, at 10-11, 15-16. The proposed notice plan consisted

of mailing post-card notices to class members, as well as posting the long-form class notice on a dedicated settlement website. *See id*. Specifically, the Court noted that the proposed method of notice here (direct notice) had already previously been approved by the Court in this case, and found that the "proposed notice plan is the best practicable means available under the circumstances and is reasonably calculated to provide notice to class members." *Id*. at 10-11. Accordingly, the Court held that the proposed notice plan met the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1). *Id*. at 10.

Each of the Settlement's notice provisions was implemented as set out in the Settlement and instructed by the Court. *See gen.* Boub Declaration. *See also* Krivoshey Decl. ¶ 22 (discussing Class Counsel's assistance with the notice process). Because the Settlement benefits will be provided automatically – *i.e.*, pro-rated checks will be sent out, and a Debt Waiver applied – Class Members did not need to submit any claim forms. Despite the fact that virtually every Class Member received direct notice,[5] to date, no class members have opted out of the settlement and none have filed objections. *See id*. Having no opt-outs or objections under the circumstances shows that Class Members universally support the Settlement. Further, the Settlement Administrator provided notice of the proposed Settlement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715, and no objections have been received. *See* Boub Decl. ¶ 4.

## VI.   THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE

### A.   The Settlement Was The Product Of Serious, Informed Litigation And Non-Collusive Negotiations

Here, there is no question that the Settlement was arrived at through genuine arm's-length bargaining after a developed factual record that allowed the parties to have a "clear view of the strengths and weaknesses of their case[]." *Retta v. Millennium Prods., Inc*., 2017 WL 5479637, at *6 (C.D. Cal. Aug. 22, 2017). Accordingly, it is entitled to a presumption of reasonableness. *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("When sufficient

---

[5] An estimated 95.6 percent of Settlement Class Members were confirmed to receive direct notice. *See* Declaration of Yeremey Krivoshey in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Award, at ¶ 22; Boub Decl. ¶¶ 6-8.

discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement."); *Ross v. Trex Co., Inc*., 2013 WL 6622919, at *3 (N.D. Cal. 2013); *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008); *see also Rodriguez v. West Publishing Corp*., 563 F. 3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution[.]).).

As addressed in great length regular case management reports, Plaintiff's motion for preliminary approval, and the Court's Order granting preliminary approval, the settlement negotiations here were extremely contentious.  *See* ECF No. 55, at 11 ("Here, the Agreement is proposed after approximately a year of arms-length and adversarial negotiation, during which time an impartial mediator helped the parties obtain a compromise that both parties find satisfactory."); *id*. at 3-4 (summarizing the parties' extensive settlement negotiations).  *See also* ECF No. 49-1, at 6-9 (summarizing the parties' 13 month settlement process).  Further, the Settlement was reached after nearly four years of litigation, during which time Plaintiff retained and worked extensively with multiple experts, conducted discovery, and briefed motions for class certification, default judgment, and Defendant's motion to set aside the class certification and default judgment.  *See* ECF No. 49-1, at 2-6 (summarizing details of litigation history and discovery).  Given the extensive and contentious litigation and settlement histories of this case, there can be no doubt that Class Counsel was fully informed about the merits of the case and that the Settlement is not the result of collusive negotiations.

**B.**     **Strength Of Plaintiff's Case And Risk Of Continuing Litigation**

In determining the likelihood of plaintiffs' success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

1        Although Plaintiff and his counsel believe that Plaintiff's claims have merit, they also

2   recognize that they would face significant risks moving forward.  Critically, this is a novel case that

3   presented a lot of uncertainty.  Plaintiff is not aware of a single case where a plaintiff was able to

4   recover (in addition to simply getting a default judgment order) a <u>single dollar</u> on behalf of a

5   certified class in a case where the defendant defaulted.  For instance, in *Whitaker v. Bennett Law,*

6   *PLLC*, 2015 WL 12434306, at *4 (S.D. Cal. Jan. 25, 2015), a case the Court relied on heavily in

7   granting Plaintiff's motion for class certification and default judgment, the plaintiff was able to

8   obtain class certification and default judgment as to liability.  *See* 8/2/17 Memorandum and Order,

9   ECF No. 10, at 5-11 (citing *Whitaker passim*).  However, when it came time to collect and

10  ascertain the amount of damages, the plaintiff discovered that the defendant liquidated its assets

11  and effectively disposed of all class member evidence.  *See Whitaker v. Bennett Law, PLLC*, Order

12  Denying Without Prejudice *Ex Parte* Application to Designate an Amount of Damages in the

13  Judgment; And Order to Show Cause, ECF No. 24 (S.D. Cal. May 27, 2016).  Given the lack of

14  evidence or available funds, Judge James Lorenz ordered the plaintiff to show cause why the class

15  should not be decertified.  *See id.*, at 3.  The plaintiff filed a notice of voluntary dismissal two

16  weeks later.  *See id.*, ECF No. 25.

17       Further, the strength of Plaintiff's case was tied to the fact that the Court entered judgment

18  as to liability due to Defendant's default.  However, final judgment <u>had not</u> been entered, as the

19  Court had not entered a damages amount.  Further, as of the time that Defendant finally filed an

20  appearance in August 2018, the Court modified its default judgment order to hold judgment as to

21  liability <u>in abeyance</u> for the duration of the notice period.  8/03/2018 Order, ECF No. 20.  Then,

22  while the judgment was in abeyance, Defendant filed a motion to set aside the default, which the

23  Court clearly had discretion to do pursuant to Fed. R. Civ. P. 55.  Although Plaintiff disagreed that

24  Defendant satisfied the "good cause" standard necessary to set aside default, Plaintiff was

25  nevertheless wary of the Ninth Circuit's statement that "judgment by default is a drastic step

26  appropriate only in extreme circumstances; a case should, whenever possible, be decided on the

27  merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

28

If the Court's default judgment and class certification orders were set aside, Plaintiff would have effectively had to start the case over from scratch after (at that time) more than two years of litigation. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement."). As discussed at length in Defendant's motion to set aside the default, Defendant would have presented vigorous defenses, contending that (1) it had prior express consent to call Plaintiff, (2) that Defendant placed its calls using a "Human Call Initiator" system, and not an ATDS pursuant to the TCPA, and that (3) Defendant's dialing system lacks the capacity to make calls using prerecorded messages or artificial voice. *See* Defendant's Memorandum of Points and Authorities in Support of Motion to Set Aside Default, ECF No. 23-1, at 9-12 (citing many cases in support of its position). A finding in Defendant's favor on any of these factors would have been a death-knell to this case – as to both the Certified Class and the 2016 California Class. Even if Plaintiff was able to show that Defendant's dialers were ATDS, that Defendant used a prerecorded message or artificial voice, and that Defendant lacked consent to call Plaintiff, Defendant would still have strenuously opposed any renewed motion for class certification. In the debt collection context, obtaining class certification is exceedingly difficult. *See, e.g., Blair v. CBE Group, Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (denying class certification in debt-collection TCPA case due to individualized issues of prior express consent). Thus, had Plaintiff taken the risk of going the distance and lost on any of these issues, class members would not have received any relief.

To be sure, there is a chance that the Court would have denied Defendant's motion to set aside default and entered damages in Plaintiff's and class members' favor. Even then, the Court's order would immediately be subject to appeal. Further, Plaintiff's sought $12,554,000 (without trebling) in damages in his motion for damages. Here, the Settlement Agreement provides for $6.8 million in benefits, or roughly 50 percent of Plaintiff's likely best-case scenario. Obtaining 50 percent of a "best case" scenario is surely an excellent outcome. And, through prolonged settlement discussions, it became clear that Plaintiff would never have been able to recover $12 million from Defendant in the first place, as it could not possibly afford to pay a judgment of that

size.  *See* Krivoshey Decl. ¶ 25.  Instead, Plaintiff would likely have been forced to fight for scraps

against other creditors in bankruptcy and may have recovered far less than the $6.8 million made

available by the Settlement Agreement.  Class Counsel is confident that, looking objectively at the

merits of the case and likelihood of recovery at trial or by order of the Court, that the Settlement

Agreement is the best outcome for class members in this instance.

**C.      Extent Of Discovery And Status Of Proceedings**

The Court must also evaluate whether Class Counsel had sufficient information to make an

informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

454, 459 (9th Cir. 2000).  As discussed above, the Settlement was reached after years of litigation,

expert discovery, and on the eve of the potential entry of default judgment on a class basis.  See

ECF No. 49-1 (discussing extensive litigation and discovery history).  Given the procedural history

of this case, there can be no doubt that Class Counsel had sufficient information to make an

informed decision about the merits of this case as compared to the benefit provided by the

proposed settlement.  *See gen*. Krivoshey Decl. ¶¶ 2-21 (discussing history of litigation and

settlement process).

**D.      The Settlement Provides Exceptional Relief For The Class**

The Settlement's benefits are outstanding.  In granting preliminary approval, the Court

recognized as such:

> The Agreement provides for a total settlement amount of $6,796,500.88,
> which consists of the Cash Fund of $1,800,000 and the Debt Waiver of
> $4,996,500.88. Regarding the Cash Fund, once attorneys' fees, expenses
> and costs, notice and administrative expenses, and Plaintiff's incentive
> award have been deducted, the remaining balance will be distributed to the
> Settlement Class members on a pro rata basis. Pl.'s Mem. ISO Mot.
> Prelim. Approval, ECF No. 49-1, at 13–14. This means that between 5,154
> Settlement Class members, each member may receive approximately
> $141. Id. at 14; see also Pl.'s Supp. Briefing, ECF No. 54, at 2. As for the
> Debt Waiver, which 4,927 Settlement Class members are eligible to
> receive, each member will receive approximately $1,104 in addition to the
> Cash Fund award. Id. Finally, these awards will be automatic and
> Settlement Class members do not need to submit claims to receive their
> awards. Pl.'s Mem. ISO Mot. Prelim. Approval, ECF No. 49-1, at 14.

ECF No. 55, at 12.  Further, as noted by the Court, "Defendant is unlikely to withstand greater

liability than the proposed settlement amount."  *Id*.  As discussed above, and in Plaintiff's motion

for preliminary approval, the $6,796,500 is roughly 50% of the $12 million Plaintiff sought in his

motion for damages.  However, a judgment for $12 million would not have necessary resulted in

more money being available for Class Members, as it would have guaranteed Defendant's

bankruptcy, and forced Class Members – as unsecured creditors – to have to negotiate a likely very

complicated bankruptcy process.  Instead, Class Members stand to receive over $1,100

automatically here, without even having to submit a claim form.

The anticipated cash and debt relief payouts are extremely high when compared with other

TCPA class settlements.  *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D.

Cal. Aug. 29, 2014) (approving $20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No.

09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each

class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016)

(approving $33.20 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d

781, 790 (N.D. Ill. 2015) ("$34.60 per claimant recovery"); *Couser v. Comenity Bank*, 125 F. Supp.

3d 1034, 1044 (S.D. Cal. 2015) ($13.75 per class member recovery); *Kolinek*, 311 F.R.D. at 493

("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class actions)

(omitting quotation marks and citations); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169,

at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also in line with other TCPA

settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per

claimant); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a "*pro

rata* settlement award distribution of $48.37").

**E.      The Response Of Class Members Has Been Universally Positive**

Although more than half of the notice period has elapsed, and virtually every single class

member has received direct notice, not a single class member has to date objected to the Settlement

or requested to opt-out of the Settlement.  Boub Decl. ¶¶ 9-10; Krivoshey Decl. ¶ 22.  The opt-out

and objection deadline is September 18, 2020.  Such an overwhelmingly positive response from

Class Members supports final approval.  *See, e.g., Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed

Settlement provides further support for final approval of the Proposed Settlement.  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### F.   The View Of Experienced Counsel Support Approving This Settlement

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).  Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Krivoshey Decl. Ex. 1 (firm resume of Bursor & Fisher, P.A.).  Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval to the Settlement Agreement, certify the Settlement Class, grant Plaintiff's Motion for Attorney's Fees, Expenses, and Service Award to the Class Representative, and enter the Final Approval Order and Final Judgment Order in the forms submitted herewith.

Dated:  August 28, 2020                         Respectfully submitted,

                                        **BURSOR & FISHER, P.A.**

                                        By*:      /s/ Yeremey Krivoshey          *
                                                   Yeremey Krivoshey

                                        L. Timothy Fisher (State Bar No. 191626)
                                        Yeremey Krivoshey (State Bar No. 295032)
                                        1990 North California Boulevard, Suite 940
                                        Walnut Creek, CA  94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*