1
2
3
4
5

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Yeremey O. Krivoshey (State Bar No.295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:    ltfisher@bursor.com
          ykrivoshey@bursor.com

6
7
8
9

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

10
11

*Class Counsel*

12

**UNITED STATES DISTRICT COURT**

13

**EASTERN DISTRICT OF CALIFORNIA**

14

15  MIKE CORTES, on Behalf of Himself and all
16  Others Similarly Situated,

                              Plaintiff,
17        v.

18  NATIONAL CREDIT ADJUSTERS, L.L.C.,

19                            Defendant.
20
21

Case No.  2:16-cv-00823-MCE-EFB

**PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, EXPENSES,
AND SERVICE AWARD**

Date: October 29, 2020
Time: 2:00 p.m.
Courtroom: 7

Hon. Morrison C. England, Jr.

22
23
24
25
26
27
28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 29, 2020 at 2:00 p.m. before Morrison C. England, United States District Court Judge for the Eastern District of California, 501 I Street, 14th Floor, Sacramento, California 95814, Plaintiff Mike Cortes, by and through the undersigned counsel of record, will move and hereby does move, by and through their undersigned counsel of record, will move, pursuant to Fed. R. Civ. P. 23(h) and 54(d)(2), and the Court's July 6, 2020 Order granting preliminary approval, for an order awarding attorney's fees, reimbursement of litigation costs and expenses, and payment of a service fee to the Class Representative.

This motion is made on the grounds that an award of attorneys' fees, reimbursement of litigation costs and expenses, and payment of service fees is proper, given that the parties have agreed that Class Counsel may make such applications in their Settlement Agreement, the work of Class Counsel has conferred substantial benefits to the Class, and that such awards are permitted under the laws of this Circuit.

This motion is based on: (1) this notice of motion and memorandum of points and authorities; (2) the Declaration of Yeremey Krivoshey; (3) the Declaration of Mike Cortes,[1] (4) the papers and pleadings on file, and (5) other written and oral arguments that may be presented to the Court.

Dated:  August 28, 2020                        Respectfully submitted,

                                               **BURSOR & FISHER, P.A.**

                                               By:      */s/ Yeremey Krivoshey*
                                                           Yeremey Krivoshey

                                               L. Timothy Fisher (State Bar No. 191626)
                                               Yeremey Krivoshey (State Bar No. 295032)
                                               1990 North California Boulevard, Suite 940
                                               Walnut Creek, CA  94596
                                               Telephone: (925) 300-4455
                                               Facsimile:  (925) 407-2700
                                               E-Mail: ltfisher@bursor.com

---

[1] The declaration of Plaintiff Mike Cortes was submitted in support of Plaintiff's Motion for Preliminary Approval and is not being resubmitted again herewith for efficiency. *See* Declaration of Mike Cortes in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 49-3.

1

ykrivoshey@bursor.com

2

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

3

701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800

4

Telephone: (305) 330-5512
Facsimile:  (305) 676-9006

5

E-Mail: scott@bursor.com

6

*Class Counsel*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

PAGE(S)

I.    INTRODUCTION...................................................................................... 1

II.   BACKGROUND AND PROCEDURAL HISTORY ...................................... 2

III.  SUMMARY OF THE PROPOSED SETTLEMENT .................................... 2

      A.    Benefits To Settlement Class Members ........................................ 2

      B.    Payment Of Attorney's Fees, Expenses, and Service Award........................ 3

IV.   CLASS COUNSEL'S REQUESTED ATTORNEY'S FEES AWARD IS FAIR AND
      REASONABLE ...................................................................................... 4

      A.    The Percentage Of The Benefit Method........................................ 4

            1.    The Total Value Of The Settlement Is $6,796,500.88 ........................ 4

            2.    15% Of The Value Of The Settlement, Well Below the Ninth Circuit's 25%
                  Benchmark, Is Fair And Reasonable In This Case................................ 6

                  a.    Class Counsel Achieved Extraordinary Results For The Class............... 7

                  b.    Plaintiff's Novel Claims Carried Substantial Litigation Risk ................. 8

                  c.    Benefits Beyond The Settlement Fund.................................... 9

                  d.    Market Rates As Reflected By Awards In Similar Cases ..................... 10

                  e.    The Contingent Nature Of The Fee And Financial Burden Borne By
                        Class Counsel ..................................................... 11

      B.    The Requested Fee Is Reasonable Under Lodestar Cross-Check, Although
            Cross-Check Not Required........................................................ 11

            1.    Class Counsel Spent A Reasonable Number Of Hours On This Litigation
                  At A Reasonable Hourly Rate ...................................... 13

            2.    All Relevant Factors Support Applying A Multiplier To Class Counsel's
                  Lodestar .......................................................... 16

V.    CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY
      INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS .. 18

VI.   THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS
      FAIR AND REASONABLE ...................................................... 18

VII.  CONCLUSION ...................................................................... 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012) ........................................................ 14

*Aguilar v. Wawona Frozen Foods*,
   2017 WL 2214936 (E.D. Cal. May 19, 2017) ...................................... 15, 17

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................... 15

*Blair v. CBE Grp., Inc.*,
   309 F.R.D. 621 (S.D. Cal. 2015) ................................................................. 9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................... 4

*Bottoni v. Sallie Mae, Inc.*,
   2013 WL 1231279 (N.D. Cal. Nov. 21, 2013) ............................................ 5

*Case v. French Quarter III LLC*,
   2015 WL 12851717 (D.S.C. July 27, 2015) ................................................ 5

*Charvat v. Travel Servs.*,
   2015 WL 76901 (N.D. Ill. Jan. 5, 2015) ...................................................... 7

*Consumer Privacy Cases*,
   175 Cal. App. 4th 545 (2009) ....................................................................... 5

*Corzine v. Whirlpool Corp.*,
   2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) .......................................... 12

*Cosgrove v. Citizens Auto. Fin., Inc.*,
   2011 WL 3740809 (E.D. Pa. Aug. 25, 2011) .............................................. 5

*Couser v. Comenity Bank*,
   125 F. Supp. 3d 1034 (S.D. Cal. 2015) ....................................................... 7

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) .................................................................. 5

*Falk v. Allen*,
   739 F.2d 461 (9th Cir. 1984) ........................................................................ 8

*Farrell v. Bank of Am., N.A.*,
   327 F.R.D. 422 (S.D. Cal. 2018) ................................................................. 5

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ................................................................................ 4, 17

*G. F. v. Contra Costa Cnty.*,
   2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ................................................... 14

*Gates v. Deukmejian*,
   987 F.2d 1393 (9th Cir. 1992) ............................................................................. 14

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ........................................................................... 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 4, 6, 11

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .................................................................................... 18

*Hartless v. Clorox Co.*,
   273 F.R.D. 630 (S.D. Cal. 2011) ..................................................................... 4, 14

*Hashw v. Dep't Stores Nat'l Bank*,
   182 F. Supp. 3d 935 (D. Minn. 2016) ................................................................... 7

*Hausfeld v. Cohen Milstein Sellers & Toll, PLLC*,
   2009 WL 4798155 (E.D. Penn. Nov. 30, 2009) ................................................. 13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................. 17

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) .................................................................... 10

*In re Animation Workers Antitrust Litig.*,
   2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ................................................... 16

*In re Anthem, Inc. v. Data Breach Litig.*,
   2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................... 11

*In re Capital One Tel. Consumer Prot. Act Litig.*,
   80 F. Supp. 3d 781 (N.D. Ill. 2015) ...................................................................... 7

*In re Equifax Inc. Customer Data Security Breach Litig.*,
   2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ....................................................... 13

*In re High-Tech Employee Antitrust Litig.*,
   2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ..................................................... 16

*In re Lithium Ion Batteries Antitrust Litig.*,
2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) .......................................................... 4

*In re Lloyd's Am. Trust Fund Litig.*,
2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......................................................... 5

*In re National Collegiate Athletic Association Grant-In-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .......................................................... 12

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......................................................... 9

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .......................................................... 4, 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods.* Liab. Litig.,
746 Fed. Appx. 655 (9th Cir. 2018) .......................................................... 12

*Johnson v. Triple Leaf Tea, Inc.*,
2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) .......................................................... 16

*Kerr v. Screen Extras Guild, Inc.*,
526 F.2d 67 (9th Cir. 1975) .......................................................... 11, 17

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015) .......................................................... 7

*Lealao v. Beneficial California, Inc*,
82 Cal. App. 4th 19 (2000) .......................................................... 5

*Loretz v. Regal Stone, Ltd.*,
756 F. Supp. 2d 1203 (N.D. Cal. 2010) .......................................................... 16

*Martin v. AmeriPride Servs., Inc.*,
2011 WL 2313604 (S.D. Cal. June 9, 2011) .......................................................... 10

*Mejia v. Sodexo, Inc.*,
2018 WL 10436222 (E.D. Cal. Aug. 1, 2018) .......................................................... 15

*Miller v. CEVA Logistics USA, Inc.*,
2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) .......................................................... 15

*Monterrubio v. Best Buy Stores, L.P.*,
2013 WL 12432761 (E.D. Cal. Nov. 20, 2013) .......................................................... 19

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996) .......................................................... 16, 17

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) .......................................................... 4, 10

*Nitsch v. DreamWorks Animation SKG Inc.*,
 2017 WL 2423161 (N.D. Cal. June 5, 2017)...................................................... 16

*Orloff v. Syndicated Office Sys., Inc.*,
 2004 WL 870691 (E.D. Pa. Apr. 22, 2004)........................................................ 6

*Perez v. Rash Curtis & Associates*,
 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020)........................................ 11, 12, 16, 17

*Rainbow Bus. Solutions v. MBF Leasing LLC*,
 2017 WL 6017844 (N.D. Cal. Dec. 5, 2017) ...................................................... 16

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
 281 F. Supp. 3d 833 (N.D. Cal. 2017).............................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009).......................................................................... 18

*Rose v. Bank of Am. Corp.*,
 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ..................................................... 7

*Singer v. Becton Dickinson & Co.*,
 2010 WL 2196104 (S.D. Cal. June 1, 2010) ..................................................... 10

*State of Florida v. Dunne*,
 915 F.2d 542 (9th Cir. 1990) ......................................................................... 4

*Staton v. Boeing*,
 327 F.3d 938 (9th Cir. 2003).................................................................... 4, 18

*Steiner v. Am. Broad. Co.*,
 248 Fed. Appx. 780 (9th Cir. 2007) ............................................................... 17

*Taylor v. FedEx Freight, Inc.*,
 2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ................................................... 15

*Torres v. Toback, Bernstein & Reiss LLP*,
 2017 WL 281878 (E.D.N.Y. Jan. 23, 2017)........................................................ 5

*Van Vranken v. Atl. Richfield Co.*,
 901 F. Supp. 294 (N.D. Cal. 1995)............................................................ 18, 19

*Vasquez v. Coast Valley Roofing, Inc.*,
 266 F.R.D. 482 (E.D. Cal. 2010) .................................................................. 10

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ................................................................. passim

*Williams v. MGM-Pathe Commc'ns Co.*,
 129 F.3d 1026 (9th Cir. 1997) .................................................................. 6, 10

*Wright v. Linkus Enterprises, Inc.*,
   259 F.R.D. 468 (E.D. Cal. July 29, 2009) ................................................................ 19

*Wright v. Nationstar Mortgage LLC*,
   2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ............................................................ 7

*Young v. Polo Retail, LLC*,
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ............................................................ 6

*Zakskorn v. American Honda Motor Co.*,
   2015 WL 3622990 (E.D. Cal. June 9, 2015) ...................................................... 14, 15

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................ 5

Fed. R. Civ. P. 23(h) ..................................................................................................... i, 4

Fed. R. Civ. P. 54(d)(2) ................................................................................................ i, 4

Fed. R. Civ. P. 55 ............................................................................................................ 8

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) ................. 17

Manual for Complex Litigation § 21.71 (4th ed. 2008) ................................................. 5

Plaintiff Mike Cortes ("Plaintiff" or "Class Representative") respectfully submits this memorandum in support of Plaintiff's Motion for an Award of Attorneys' Fees, Expenses, and Service Award.

## I.      INTRODUCTION

The Settlement Agreement provides for (1) the creation of a $1,800,000 non-reversionary fund to pay for the settlement of all claims in this action, including the costs of notice and administration, any attorney's fees, costs, and expenses, and incentive award for the Plaintiff and (2) the waiver of $4,996,500.88 in debt that Settlement Class Members allegedly owe to Defendant. *See gen*. Settlement Agreement.[2]  Combined, the value of the Settlement is $6,796,500.88.  Because Plaintiff was able to obtain direct contact information for virtually every single Settlement Class Member, class members were not required to submit claims to recover from the settlement.  Instead, Settlement Class Member will receive an estimated $1,155 per person *automatically*, consisting of $141.61 per person in cash, and $1,014 in waived debt.  As discussed at length herein, and in Plaintiff's concurrently filed motion for final approval, the relief afforded to class members individually here is amongst the highest ever in a consumer class action settlement, and certainly the highest in a Telephone Consumer Protection Act case against a debt collector.

In light of these considerations, Class Counsel requests that the Court approve an award of attorney's fees of 15% of the $6.8 million Settlement, or $1,019,475.13.  Notably, the figures cited herein – the estimate of $1,115 in benefit per class member – already accounts for the award of $1,019,475.13 in attorney's fees (as well as the award of expenses, notice costs, and the service award).  In granting preliminary approval, the Court noted that Plaintiff's request of $1,019,475.13 "appears fair and reasonable" and is "consistent with the Ninth Circuit's benchmark amount of 25% under the percentage-of-the-fund method." *See* ECF No. 55, at 14.  The Court also noted that the amount is fair because "Plaintiff's counsel brought this case on a contingency-fee basis, which

---

[2] The Settlement Agreement is attached as Exhibit 1 to the March 23, 2020 Declaration of Yeremey Krivoshey in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, ECF No. 49-2.

in itself presented considerable risk," and, further, that "the risks of litigation were increased given that Defendant initially defaulted and is unlikely to withstand greater liability." *See id.* The Court's reasoning holds equally true today.

Class Counsel also seeks reimbursement of $17,658.93 in out-of-pocket expenses. *See* Krivoshey Decl. ¶¶ 34-35; *see also id.*, Ex. 3 (an itemized listing of each out-of-pocket expense incurred by Bursor & Fisher in connection with this case). The expenses were necessary to the prosecution of this case, were carefully and reasonably expended, and should be reimbursed. *Id.*

Finally, Plaintiff Cortes requests that the Court award him a service award in the amount of $2,000 to account for the significant time and effort he invested in this case on behalf of the Settlement Class.

## II.     BACKGROUND AND PROCEDURAL HISTORY

The Declaration of Yeremey Krivoshey, submitted herewith, contains a detailed discussion of the background and procedural history of this case, including Plaintiff's investigation, the pleadings and motions, discovery, the parties' 13-month arms-length settlement negotiations, and preliminary approval and dissemination of notice. *See* Krivoshey Decl. ¶¶ 2-22.

## III.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.     Benefits To Settlement Class Members

The Settlement Agreement states that Defendant shall pay $1,800,000 into a non-reversionary fund to pay for the settlement of all claims in this action, including the costs of notice and administration, any attorney's fees, costs, and expenses, and incentive award for the Plaintiff. *See* Settlement ¶ 2.28. After accounting for notice costs, attorney's fees and expenses, and incentive award, Settlement Class Members will receive cash payments on a *pro rata* basis from the amount remaining in the Settlement Fund, such that the entirety of the Settlement Fund shall be exhausted. *Id.* ¶ 5.02. Critically, because Class Counsel obtained contact information for virtually every single Settlement Class Member, Class Members did not have to submit claims to receive a benefit – they will receive a *pro rata* share of the Settlement *automatically*. *Id.* ¶ 5.03.

Further, all Settlement Class Members who have an existing debtor account owned by NCA that have an outstanding balance will receive a credit on that account equal to the amount of the outstanding balance, such that the debt of each such Settlement Class Member will be waived (the "Debt Waiver"). *Id*. ¶ 5.04.  4,927 out of 5,154 Settlement Class Members are eligible to receive the Debt Waiver (the remaining 227 class members do not have any outstanding debt but will still receive the cash award). *Id*.  The aggregate amount of the Debt Waiver will be $4,996,500.88, or an average of $1,014 *per person*. *Id*.  As with the cash award, Settlement Class Members eligible for the Debt Waiver will receive it *automatically* – they did not need to submit claims. *See id*.

The actual amount of *cash* that Settlement Class Members are set to receive depends on the amount of attorney's fees, costs and expenses, incentive award, and costs of notice and administration approved by the Court, as Settlement Class Members will receive the remainder of any amount left over after deducting the foregoing from the $1,800,000 non-reversionary fund. *See also* Settlement ¶ 6.03 (approval of Settlement not dependent on Court's approval of attorneys' fees, costs, and expenses and the incentive award).  Settlement Class Members will receive the full value of the $4,996,500.88 Debt Waiver irrespective of any award of attorney's fees, costs and expenses, incentive award, and costs of notice and administration. *See id*.  The Debt Waiver will be paid *in addition* to any cash awarded under the Settlement.

### B. Payment Of Attorney's Fees, Expenses, and Service Award

The Settlement authorized Class Counsel to make an application to the Court for an award of attorney's fees, expenses, and a service award for the Class Representative of up to $2,000. *Id*. ¶¶ 6.01, 6.02.

Class Counsel and Defendant have no agreement as to the amount of requested fees that Defendant would oppose.  Krivoshey Decl. ¶ 45.  At no point has Class Counsel negotiated its attorney's fees with Defendant. *See id*.  There is no "clear sailing" provision. *Id*.  Defendant is free to challenge the present fee application. *Id*.

1

**IV.    CLASS COUNSEL'S REQUESTED ATTORNEY'S FEES AWARD IS FAIR AND REASONABLE**

2

"In a certified class action, the court may award reasonable attorney's fees and nontaxable

3

costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The Supreme

4

Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the

5

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

6

fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Ninth Circuit permits

7

district courts to award attorney's fees under either the "percentage-of-the-benefit" method or the

8

"lodestar" method, or to use the lodestar method as a cross-check. *Fischel v. Equitable Life Assur.*

9

*Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029

10

(9th Cir. 1998).  The percentage method, however, is nearly always employed. *See, e.g.*, *In re*

11

*Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *7 (N.D. Cal. Aug. 16, 2019) ("[T]he

12

primary basis of the fee award remains the percentage method."), quoting *Vizcaino v. Microsoft*

13

*Corp.*, 290 F.3d 1043, 1050 & n.5 (9th Cir. 2002).  Although the percentage of the benefit method

14

should be used here, Class Counsel's fee request is fair and reasonable under any method.

15

**A.    The Percentage Of The Benefit Method**

16

Under the common fund doctrine, courts typically award attorneys' fees based on a

17

percentage of the total settlement. *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.

18

1990); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming

19

attorney's fee award of 33% of the recovery); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th

20

Cir. 2003) (affirming attorney's fee award of 33% of the recovery).

21

**1.    The Total Value Of The Settlement Is $6,796,500.88**

22

23

To calculate attorneys' fees based on the percentage of the benefit, the Court must first

24

determine the value of the Settlement Fund.  In doing so, the Court must include the value of the

benefits conferred to the Class, including any attorneys' fee, expenses, and notice and claims

25

administration payments to be made. *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 972-74 (9th Cir.

26

2003); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 645 (S.D. Cal. 2011), *aff'd*, 473 F. App'x. 716 (9th

27

Cir. 2012).  Stated otherwise, California courts include the requested attorneys' fees when

28

calculating the total value of the settlement fund.  *Lealao v. Beneficial California, Inc*, 82 Cal. App. 4th 19, 33 (2000).  Thus, "the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class …."  *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 554 (2009) (quoting the Manual for Complex Litigation § 21.71 at 525 (4th ed. 2008)).

In evaluating the financial value of the Settlement Agreement, the Court should consider the combined sum of the $1.8 million cash fund and the $5 million in debt relief, or $6.8 million *See Farrell v. Bank of Am., N.A*., 327 F.R.D. 422, 430-431 (S.D. Cal. 2018) (calculating $29.1 million in debt relief as part of the $66.6 million total monetary value created by the settlement, and explaining that debt relief is not illusory); *Bottoni v. Sallie Mae, Inc*., 2013 WL 1231279, at *7 (N.D. Cal. Nov. 21, 2013) ("Other courts have recognized the value of debt relief and included it as part of the settlement fund."); *Cosgrove v. Citizens Auto. Fin., Inc*., 2011 WL 3740809, at *7 (E.D. Pa. Aug. 25, 2011) ("Other courts have included debt forgiveness as part of a settlement fund, but the Court does not consider this a non-monetary award, such as a coupon, that "deserve[s] careful scrutiny to ensure that it ha[s] actual value to the class."  The Court finds that debt forgiveness provides a valuable award to class members.") (quoting Fed. R. Civ. P. 23, Advisory Committee's Note) (citation omitted); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at * 16 (S.D.N.Y. Nov. 26, 2002) (awarding attorney's fees of 28% of the total settlement consideration, which included credit notes class members could use to reduce debt owed to defendants); *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 147 (E.D. Pa. 2000) (finding it reasonable to award fees based on the total value of the settlement, which included the forgiveness of debt for students who were delinquent in paying back their loans); *Torres v. Toback, Bernstein & Reiss LLP*, 2017 WL 281878, at *2 (E.D.N.Y. Jan. 23, 2017) ("Although approximately $2.4 million is provided in the form of debt reduction rather than cash payments, the benefit is no less worthy of consideration for it constitutes money that remains tin the pockets of the class members rather than being paid out."); *Case v. French Quarter III LLC*, 2015 WL 12851717, at *10 (D.S.C. July 27, 2015) ("Plaintiffs' Counsel obtained a beneficial result for the class members, including a settlement fund of $4,129,640, three hundred timeshare interval units at the French Quarter with an approximate value

of $3,600,000, and debt forgiveness of approximately $4,232,000.  The total value of the settlement package is estimated at $11,961,640, a substantial recovery for the class."); *Orloff v. Syndicated Office Sys., Inc.*, 2004 WL 870691, at *2, *7 (E.D. Pa. Apr. 22, 2004) (holding that the settlement provided $437,000 in economic benefit the Class, even though 100 percent of the $437,000 was in the form of debt relief).

Moreover, the Court must not consider the total monetary amount distributed to the Class; rather, the Court should only consider the amount *made available* to the Class.  As articulated in *Young v. Polo Retail, LLC*, 2007 WL 951821, at *8 (N.D. Cal. Mar. 28, 2007), Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available rather than the amount actually paid out.  *Id*. at *23 (citing  *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) (ruling that a district court abused its discretion in basing attorney fee award on actual distribution to class instead of amount being made available).  Here, however, because the Settlement creates a non-reversionary fund where both the cash and debt relief components will be applied and distributed *automatically* without a claims process, there is no difference between the amount of the amount "made available" and the amount "claimed."

Here, the total value of the Settlement is $6,796,500.88, which includes any attorney's fees that the Court may award to Class Counsel, as well as the costs of notice, expenses, and service award for the Class Representative.

### 2. 15% Of The Value Of The Settlement, Well Below the Ninth Circuit's 25% Benchmark, Is Fair And Reasonable In This Case

The Ninth Circuit established 25% of the common fund as a starting benchmark.  *Hanlon*, 150 F.3d at 1029.  Although Class Counsel believe that an upward departure from the benchmark is merited here due to the extraordinary results obtained, Class Counsel is seeking only the 15% benchmark.

The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees in a common fund case are reasonable: (a) the results achieved; (b) the

risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Each of these factors shows that the Class Counsel's request for 15% of the common fund in attorney's fees is reasonable here, and that any further downward adjustment would be manifestly unfair. Here, a fee of 15 percent is reasonable for the reasons set forth below.

a.   *Class Counsel Achieved Extraordinary Results*
*For The Class*

The anticipated relief of $1,155 per class, consisting of $141.61 per person in cash and $1,014 in waived debt, is extraordinary and virtually unprecedented. The results are extremely high when compared with other TCPA class settlements, especially considering that the settlement was made possible through more than two years of litigation following Defendant's default. *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (approving $20 to $40 per claimant); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142, dkt. 94 (N.D. Cal. Apr. 2, 2012) (providing for a $25 merchandise voucher to each class member); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 944 (D. Minn. 2016) (approving $33.20 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ("$34.60 per claimant recovery"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) ($13.75 per class member recovery); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ("[T]hirty dollars per claimant" is "within the range of recoveries" in TCPA class actions) (omitting quotation marks and citations); *Wright v. Nationstar Mortgage LLC*, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) ("And the $45 recovery per claimant is also in line with other TCPA settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Charvat v. Travel Servs.*, 2015 WL 76901, at *1 (N.D. Ill. Jan. 5, 2015) (noting a "*pro rata* settlement award distribution of $48.37"). And, the total sum of $6.8 million is extraordinary when Plaintiff sought only $12,554,000 (without trebling) in damages in his motion for damages, meaning that Class Counsel obtained over 50 percent of the size of the maximum judgment

available in this action.  *See* Plaintiff's Memorandum of Points and Authorities in Support of

Motion for Damages and Costs, ECF No. 29-1 (seeking entry of judgment in the amount of

$12,554,000).  And, as discussed through the final approval papers, the guaranteed $6.8 million

offered by the Settlement is likely far more than Class Members could have hoped to receive if the

Court actually entered judgment in the amount of $12.5 million, as Defendant would have

immediately filed for bankruptcy, and Class Members may have recovered little, if anything at all.

           b.      *Plaintiff's Novel Claims Carried Substantial*
                   *Litigation Risk*

           The second *Vizcaino* factor looks to the risk and novelty of the claims at issue.  Both are

certainly present here.  *See gen*. Krivoshey Decl. ¶¶ 23-26, 46 (discussing the risks of litigating

Plaintiff's claims).  Class Counsel undertook significant financial risk in prosecuting this case.

           Although Plaintiff and his counsel believe that Plaintiff's claims have merit, they also

recognize that Plaintiff's claims carried significant litigation risk.  Critically, this is a novel case

that presented a lot of uncertainty.  Plaintiff is not aware of a single case where a plaintiff was able

to recover (in addition to simply getting a default judgment order) a single dollar on behalf of a

certified class in a case where the defendant defaulted.  The strength of Plaintiff's case was largely

tied to the fact that the Court entered judgment as to liability due to Defendant's default.  However,

final judgment had not been entered, as the Court had not entered a damages amount.  Further, as

of the time that Defendant finally filed an appearance in August 2018, the Court modified its

default judgment order to hold judgment as to liability in abeyance for the duration of the notice

period.  8/03/2018 Order, ECF No. 20.  Then, while the judgment was in abeyance, Defendant filed

a motion to set aside the default, which the Court clearly had discretion to do pursuant to Fed. R.

Civ. P. 55.  Although Plaintiff disagreed that Defendant satisfied the "good cause" standard

necessary to set aside default, Plaintiff was nevertheless wary of the Ninth Circuit's statement that

"judgment by default is a drastic step appropriate only in extreme circumstances; a case should,

whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

           If the Court's default judgment and class certification orders were set aside, Plaintiff would

have effectively had to start the case over from scratch after more than two years of litigation.  *See*

*In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.").  As discussed at length in Defendant's motion to set aside the default, Defendant would have presented vigorous defenses, contending that (1) it had prior express consent to call Plaintiff, (2) that Defendant placed its calls using a "Human Call Initiator" system, and not an ATDS pursuant to the TCPA, and that (3) Defendant's dialing system lacks the capacity to make calls using prerecorded messages or artificial voice.  *See* Defendant's Memorandum of Points and Authorities in Support of Motion to Set Aside Default, ECF No. 23-1, at 9-12 (citing many cases in support of its position).  A finding in Defendant's favor on any of these factors would have been a death-knell to this case – as to both the Certified Class and the 2016 California Class.  Even if Plaintiff was able to show that Defendant's dialers were ATDS, that Defendant used a prerecorded message or artificial voice, and that Defendant lacked consent to call Plaintiff, Defendant would still have strenuously opposed any renewed motion for class certification.  In the debt collection context, obtaining class certification is exceedingly difficult.  *See, e.g., Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 630 (S.D. Cal. 2015) (denying class certification in debt-collection TCPA case due to individualized issues of prior express consent).  Thus, had Plaintiff taken the risk of going the distance and lost on any of these issues, class members would not have received any relief.

To be sure, there is a chance that the Court would have denied Defendant's motion to set aside default and entered damages in Plaintiff's and class members' favor.  Even then, the Court's order would immediately be subject to appeal.  Further, as discussed above, Plaintiff's sought $12,554,000 (without trebling) in damages in his motion for damages.  But, had judgment in that amount actually been entered, Defendant would have immediately filed for bankruptcy, and Plaintiff and other class members may very well have recovered nothing at all.

### c.     Benefits Beyond The Settlement Fund

The third factor cited in *Vizcaino* looks to whether "counsel's performance generated benefits beyond the cash settlement fund."  *Vizcaino*, 290 F.3d at 1049.  As discussed above, Class Counsel was able to obtain a $4,996,500.88 Debt Waiver.  While the Debt Waiver should be

considered as part of the value of the Settlement, it may not be strictly speaking "cash" pursuant to *Vizcaino*. Whether the Court views the Debt Waiver as "cash" as part of the settlement fund, or "benefits beyond the cash settlement fund," the result is the same – the Settlement is valued at $6.8 million, as discussed in detail above.

### d. Market Rates As Reflected By Awards In Similar Cases

The fourth factor cited by *Vizcaino* looks to market rates as reflected by awards in similar cases. *Vizcaino*, 290 F.3d at 1049 ("Fourth, the court found the 28% rate to be at or below the market rate."). The reasonableness of Class Counsel's 15% fee request is illustrated by numerous awards far *exceeding* the 25% benchmark where the relief obtained was far less than the relief obtained here. *See, e.g, In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378–79 (N.D. Cal. 1989); *see also In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378-79 (affirming attorney's fee of 33% of the recovery); *Williams*, 129 F.3d at 1027 (33.33% of total fund awarded); *Morris*, 54 Fed. App'x at 663 (affirming fee award of 33% of the recovery); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (citing to five recent class actions where federal district courts approved attorney fee awards ranging from 30% to 33%); *Martin v. AmeriPride Servs., Inc.*, 2011 WL 2313604, at *8 (S.D. Cal. June 9, 2011) (noting that "courts may award attorneys fees in the 30%-40% range in … class actions that result in recovery of a common fun[d] under $10 million"); *Singer v. Becton Dickinson & Co*., 2010 WL 2196104, at *8-9 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other cases where fees ranged from 33.33% to 40%); *Rippee v. Boston Mkt. Corp*., Case No. 05-CV-1359 TM (JMA), ECF No. 70, at 7 (S.D. Cal. Oct. 10, 2006) (awarding a 40% fee on a $3.75 million in a common fund settlement). For instance, in *Melgar v. Zicam LLC, et al*., Case No. 2:14-cv-00160-MCE-AC (E.D. Cal. Jan. 17, 2019), this Court awarded Bursor & Fisher 33 percent in fees out of a $16 million settlement where class members stood to make between $75-85 per claimant. Here, Class Counsel seeks only 15% of the $6.8 million settlement, even though Settlement Class Members will receive $141.61 per person in cash and $1,014 in waived debt.

There is ample authority to make an *upwards* adjustment from the 25% benchmark here. Certainly, awarding only 15% in this case is reasonable.

e.    *The Contingent Nature Of The Fee And*
*Financial Burden Borne By Class Counsel*

The fifth factor cited by *Vizcaino* was the contingent nature of the fee and the financial burden carried by the plaintiffs.  *Vizcaino*, 290 F.3d at 1050.  To date, Class Counsel has worked for roughly four and a half years with no payment, and no guarantee of payment absent a successful outcome.  Class Counsel also advanced $17,658.93 in out-of-pocket expenses, again with no guarantee of repayment.  If the case had advanced, these expenses would have increased many-fold, and Class Counsel would have been required to advance these expenses potentially for several more years to litigate this action through judgment and appeals.

**B.    The Requested Fee Is Reasonable Under Lodestar Cross-Check,**
**Although Cross-Check Not Required**

"Generally, a district court is 'not required' to conduct a lodestar cross-check to assess the reasonableness of a fee award."  *Perez v. Rash Curtis & Associates*, 2020 WL 1904533, at *18 (N.D. Cal. Apr. 17, 2020) (citing cases).  "However, courts in the Ninth Circuit sometimes examine the lodestar calculation as a crosscheck on the percentage fee award to ensure the reasonableness of the percentage award."  *Id.* (citing *Vizcaino*).  The lodestar figure is calculated by multiplying the hours spent on the case by reasonable hourly rates for the region and attorney experience.  *See, e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.  "A court then determines the multiplier required to match the lodestar to the percentage-of-the-fund request made by counsel, and determines whether the multiplier falls within an accepted range."  *Id.*

When evaluating the acceptable "range" for a lodestar multiplier, courts look to a number of factors, including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67,

70 (9th Cir. 1975).[3]  Courts typically apply a multiplier or enhancement to the lodestar to account

for the substantial risk that class counsel undertook by accepting a case where no payment would

be received if the lawsuit did not succeed.  *Vizcaino*, 290 F.3d at 1051.  "Foremost among these

considerations, however, is the benefit obtained for the class."  *In re National Collegiate Athletic*

*Association Grant-In-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017).

Here, as of August 28, 2020, a fee award of 15% of the Settlement Fund would amount to a

3.31 multiplier.  Krivoshey Decl. ¶¶ 31-33.  However, Class Counsel anticipates spending an extra

60-100 hours prior to the issuance of a Final Judgment, including handling issues that may arise

with the notice campaign, answering class member questions, responding to any objections, if any,

appearing at the final approval hearing, and handling any appeals, if applicable.  *Id.* ¶ 33.  This

future work should be considered in the initial lodestar calculation.  *See In re Volkswagen "Clean*

*Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 Fed. Appx. 655, 659 (9th Cir. 2018)

(holding that "[t]he district court did not err in including projected time in its lodestar cross-check;

the court reasonably concluded that class counsel would, among other things, defend against

appeals and assist in implementing the settlement"); *Perez*, 2020 WL 1904533, at *20 (including

future time in lodestar analysis because "[t]he Court recognizes that class counsel will indeed incur

continued fees in both the appeal of this case and the subsequent litigation"); *Reyes v. Bakery &*

*Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017)

(including, over the defendants' objection, "125 anticipated future hours" to be spent on

"communicating with the settlement administrator and responding to inquiries from class

members" in the lodestar calculation);  *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *11

(N.D. Cal. Dec. 31, 2019) (including "an estimate of 250 hours for future work to complete

---

[3] *Kerr* identifies twelve factors for analyzing reasonable attorneys' fees:

  (1) the time and labor required; (2) the novelty and difficulty of the questions
  involved; (3) the skill requisite to perform the legal service properly; (4) the
  preclusion of other employment by the attorney due to acceptance of the case; (5)
  the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
  imposed by the client or the circumstances; (8) the amount involved and the results
  obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the
  'undesirability' of the case; (11) the nature and length of the professional
  relationship with the client; and (12) awards in similar cases.

Settlement's claims process through 2026" in the lodestar calculation);  *In re Equifax Inc.*

*Customer Data Security Breach Litig.*, 2020 WL 256132, at *39-40 (N.D. Ga. Jan. 13, 2020)

(including in the lodestar calculation, over a class member's objection, class counsel's estimate of

an anticipated 10,000 hours to be spent in the future to implement and administer a class action

settlement);  *id.*, 2020 WL 256132, at *40 ("Excluding such time … would misapply

the lodestar methodology and needlessly penalize class counsel.");  *Hausfeld v. Cohen Milstein*

*Sellers & Toll, PLLC*, 2009 WL 4798155, at *17 (E.D. Penn. Nov. 30, 2009) (holding that

"[w]here attorneys provide additional services post-settlement … courts should award fees for

those services").  Taking into account the additional 60-100 extra hours at a blended rate of

$$544.89, Class Counsel anticipates that a fee award of 15% of the Settlement Fund would amount

to a 2.81 to 2.99 multiplier.  Krivoshey Decl. ¶ 33.  As discussed below, such a multiplier is

reasonable in light of the complexity and novelty of the litigation, the hours and resources devoted

to this litigation, the outstanding results achieved, and the significant risk of non-payment.

**1.     Class Counsel Spent A Reasonable Number Of Hours On This Litigation At A Reasonable Hourly Rate**

Class Counsel worked very efficiently.  A single law firm, Bursor & Fisher, P.A., served as

Class Counsel.  Class Counsel have submitted their detailed daily billing records showing what

work was done and by whom.  Krivoshey Decl., Ex. 2.  These records confirm Bursor & Fisher's

efficient billing.  For example, Bursor & Fisher strives to assign as much work as possible to less

senior lawyers who bill at lower hourly rates in order to minimize fees for the class.  More than

89% of attorney's hours were billed by attorneys billing at $550 per hour and under.  Krivoshey

Decl. ¶ 44.  However, this was a novel case that involved a lot of original work, which required

some involvement by a more experienced lawyer.  *Id.*  Only one senior partner, Mr. Fisher, billed

any time on this case.  *Id.*  Mr. Fisher billed 3.96% of the total hours (22.4 out of 564.8), primarily

on developing the litigation strategy, attending the mediation, and negotiating the settlement.  *Id.*

In total, as of August 28, 2020, Bursor & Fisher billed 564.8 hours.  *Id.*

1
2
3
4
5
6

Defendant was represented by very able counsel.  Plaintiff was able to obtain critical information through discovery, and worked with experts to put the case in the best position to succeed.  Settlement was reached only after a mediation, and extensive negotiations amongst counsel spanning 13 months.  Given the complexity of the case, the nature of the litigation and discovery, and the difficulty of the settlement negotiations, the number of hours Class Counsel spent was reasonable.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

"To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *G. F. v. Contra Costa Cnty.*, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015).  Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts."  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  However, this is not an absolute rule because "[t]o insist on awarding significantly-lower hourly rates in the Eastern District than those in the other judicial districts in California would discourage attorneys from bringing meritorious lawsuits in this district."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012); *see also Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at *14 (E.D. Cal. June 9, 2015) (same).  Further, departing from traditional rates in the Eastern District is particularly appropriate here because Plaintiff is unaware of any counsel with requisite skill in this District that would have been willing to take on this case – where Defendant defaulted and failed to appear for over two years, and considering the legal hurdles discussed above – on a purely contingency fee basis of 15 percent of the recovery.  *See Gates v. Deukmejian*, 987 F.2d 1393, 1405 (9th Cir. 1992) ("[R]ates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.").  As addressed in Plaintiff's Opposition to Defendant's Motion to Set Aside Default, ECF No. 25, at 2-3, Defendant has defaulted "in over 100 cases in federal district courts across the country," the vast majority of which concerned alleged violations of the FDCPA and the TCPA, the same statutes at issue here.  However, not one

28

attorney, in any of those more than 100 cases across the country, was able to certify a class or achieve the results that Class Counsel obtained here. Decreasing Class Counsel's customary rates purely based on the location of this Courthouse would disincentivize highly skilled attorneys from bringing meritorious, complex cases in this District and needlessly penalize Class Counsel.

Regardless, courts within this district have repeatedly held rates commensurate with Class Counsel's rates to be fair and reasonable. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Mejia v. Sodexo, Inc.*, 2018 WL 10436222, at *1 n. 1 (E.D. Cal. Aug. 1, 2018) (holding that rates up to $800 "are manifestly reasonable"); *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *6 (E.D. Cal. May 19, 2017) ("This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners."); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (finding class counsel rates of $525/hour for senior associates and $700/hour for the senior partner in this district reasonable); *Miller v. CEVA Logistics USA, Inc.*, 2015 WL 4730176, at *9 (E.D. Cal. Aug. 10, 2015) (approving hourly rates of $525/hour for associates and $700/hour for partners); *Lambert v. Buth-Na-Bodhaige, Inc.*, E.D. Cal. Case No. 2:14-cv-00514-MCE-KJN (E.D. Cal. Nov. 20, 2015), Dkt. No. 34 (order from this Court approving a fee award where plaintiffs' counsel's rates were $800/hour for partners and $450/hour for associates – *see* Dkt. Nos. 30-1 and 30-2).

Indeed, courts within this district have previously found the rates of Class Counsel fair and reasonable. *See Zakskorn*, 2015 WL 3622990, at *13–15 (2015 order from Judge Mueller approving a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and $450 per hour for associates); *Dei Rossi v. Whirlpool*, 2:12-cv-00125-TLN-CKD, Dkts. No. 181-1 and 188 (2017 order from Judge Nunley approving fee request where Bursor & Fisher submitted hourly rates of up to $875 per hour for partners and $450 per hour for associates). Just last year, this Court likewise approved Bursor & Fisher's rates when it awarded Bursor & Fisher 33% of the $16 million settlement in *Melgar v. Zicam LLC, et al.*, Case No. 2:14-cv-00160-

MCE-AC (E.D. Cal. Jan. 17, 2019).  Two other out of District judges have approved Bursor &

Fisher's current rates this year.  *See Perez*, 2020 WL 1904533, at *20 (approving Bursor &

Fisher's rates and holding that "the blended rate of $634,48 is within a reasonable range");

*Kokoszki v. Playboy Enterprises, Inc.*, Case No. 2:19-cv-10302-BAF-RSW (E.D. Mich. Aug. 19,

2020) (approving Bursor & Fisher's rates).

Further, Bursor & Fisher's rates are clearly commensurate with rates approved for counsel

in the other complex litigation contexts working in the Bay Area, where Class Counsel's office is

located and where all of the relevant legal work was performed.  *See, e.g., In re Animation Workers*

*Antitrust Litig.*, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (finding rates of senior

attorneys of between $845 to $1,200 per hour to be reasonable); *Nitsch v. DreamWorks Animation*

*SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of

between $870 to $1200 per hour to be reasonable); *Loretz v. Regal Stone, Ltd.*, 756 F. Supp. 2d

1203, 1211 (N.D. Cal. 2010) (approving billing rates ranging from $900 per hour (partners) to

$150 per hour (law clerks) for Bay Area plaintiff's counsel in complex civil litigation); *In re High-*

*Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving

billing rates of $490 to $975 for partners, $310 to $800 for non-partner attorneys, and $190 to $430

for paralegals, law clerks, and litigation support staff); *Rainbow Bus. Solutions v. MBF Leasing*

*LLC*, 2017 WL 6017844, at *1-2 (N.D. Cal. Dec. 5, 2017) (finding rates between $275 to $950 per

hour to be reasonable); *In re Anthem, Inc. v. Data Breach Litig.*, 2018 WL 3960068, at *16-17

(N.D. Cal. Aug. 17, 2018) (finding rates between $400 to $975 per hour to be reasonable).  *See*

*also, e.g., Johnson v. Triple Leaf Tea, Inc.*, 2015 WL 8943150, at *8 (N.D. Cal. Nov. 16, 2015)

(this Court approving billing rates between $290 and $745 per hour in class action settlement).

## 2.  All Relevant Factors Support Applying A Multiplier To Class Counsel's Lodestar

The lodestar analysis is not limited to the initial mathematical calculation of Class

Counsel's base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not

been "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."

*Hensley v. Eckerhart*, 461 U.S. 424, 434 n. 9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has directed district courts to consider the time and labor required, the novelty and complexity of the litigation, the skill and experience of counsel, the results obtained, and awards in similar cases. *Fischel*, 307 F.3d at 1007, n. 7; *see also Kerr*, 526 F.2d at 70.  Class Counsel discussed each of these factors above and all weigh heavily in favor of a multiplier and the requested fee award in this action.

A fee award of 15%, or $1,019,475.13, would represent a multiplier of 3.31 over the base lodestar fee of $307,757.50.  Krivoshey Decl. ¶ 33.  *See also id.* (a $1,019,475.13 award would only be a 2.81 multiplier when taking into account future anticipated time).  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at 1051 n. 6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am. Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85); *Perez*, 2020 WL 1904533, at *21 ("While the multipliers in scenarios considering future litigation hours, 13.42, 15.42, and 18.15, are on the higher-end in this Circuit, all three multiplies are still within the acceptable range in the Ninth Circuit.") (internal parentheticals omitted); *Aguilar*, 2017 WL 2214936, at *6 (noting that "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher"); Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).  Thus, even if the Court somehow finds the hours spent by Class Counsel or their hourly rates excessive, the 15% fee award would be justified by a larger multiplier within the normal range approved by the Ninth Circuit.  The Court should find that the lodestar cross-check strongly supports the requested fee award.

## V.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

To date, Class Counsel incurred out-of-pocket costs and expenses in the aggregate amount of $17,658.93 in prosecuting this litigation on behalf of the Class.  Krivoshey Decl., Ex. 3.  These expenses are attached as Exhibit 3 to the Declaration of Yeremey Krivoshey submitted herewith.

The Ninth Circuit allows recovery of litigation expenses in the context of a class action settlement.  *See Staton*, 327 F.3d at 974.  Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee paying client.  *See*, *e.g.*, *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  These expenses include court fees, expert fees, mediation fees, claims administration fees (when Class Counsel had to pay for notice after class certification), and other related expenses.  Krivoshey Decl., Ex. 3.  Each of these expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for various categories of expenses incurred.  *See id.* ¶ 34.

## VI.   THE REQUESTED SERVICE AWARD FOR THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE

In recognition of his efforts on behalf of the Class, and subject to the approval of the Court, Plaintiff Cortes seeks a $2,000 service award as appropriate compensation for his time and effort serving as the Class Representative in this litigation.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Class representative service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  Service awards are appropriate when a class representative will

not benefit beyond ordinary class members.  For example, where a class representative's claim makes up "only a tiny fraction of the common fund," a service award is justified.  *See id.* at 299.

Here, the requested amount of $2,000 for the Plaintiff is appropriate to compensate him for his years of efforts in bringing and maintaining this action for the benefit of Settlement Class Members.  *See* Declaration of Mike Cortes in Support of Motion for Preliminary Approval of Class Action Settlement, ECF No. 49-3; Settlement ¶ 6.02.  Without Plaintiff's efforts, Settlement Class Members would have received nothing at all.  The requested award is less than .03% of the $6.8 million settlement, and is inherently reasonable.  *See, e.g., Monterrubio v. Best Buy Stores, L.P.*, 2013 WL 12432761, at \*11 (E.D. Cal. Nov. 20, 2013) (this Court approving "an incentive fee of $2500, which is approximately .62% of the total settlement"); *Wright v. Linkus Enterprises, Inc.*, 259 F.R.D. 468, 477 (E.D. Cal. July 29, 2009) (this Court holding, at preliminary approval, that "Plaintiffs' request for incentive awards to the named Plaintiffs in the amount of $5,000 also appears reasonable").

## VII.   CONCLUSION

After more than four years of litigation, Class Counsel were able to obtain an exceptional and unprecedented settlement that provides significant relief to more than 5,000 class members. This Settlement is the culmination of the determined and skilled work of Class Counsel.  As a result, Plaintiff and Class Counsel respectfully request that this Court award the following:

- • $1,019,475.13 in attorneys' fees;
- • $17,658.93 in costs and expenses; and
- • $2,000 as a service award to Plaintiff Cortes.

The requests are reasonable and appropriate in light of the tremendous results achieved in this case.


Dated:  August 28, 2020                          Respectfully submitted,

                                                 **BURSOR & FISHER, P.A.**

                                                 By*:*     */s/ Yeremey Krivoshey*
                                                          Yeremey Krivoshey

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

L. Timothy Fisher (State Bar No. 191626)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         ykrivoshey@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Avenue, Suite 1420
Miami, FL 33131-2800
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Class Counsel*